## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KATHLEEN KOCH, | |
| *Plaintiff*, | |
| v. | |
| BASF CORPORATION, PPG INDUSTRIES, INC., DAVID L. VAN LEWEN, and MAC PENMAN, | Civil Action No. _____ |
| *Defendants*, | |
| and | |
| VANTAGE SPECIALTY CHEMICALS, INC., | |
| *Nominal Defendant*. | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant PPG Industries, Inc. ("PPG") files this notice of removal based on diversity jurisdiction and makes the following statement of the grounds for removal.

## SUMMARY OF THE NOTICE

This case is brand new litigation that Plaintiff is attempting to insert into the shell of a case that has been pending for years against a non-diverse defendant that recently reached a global settlement. Specifically, Plaintiff filed her initial complaint approximately five years ago, alleging that exposure to ethylene oxide emitted from a facility located in Gurnee caused her to develop cancer. Plaintiff for nearly five years proceeded in state court against Vantage Specialty Chemicals, Inc. ("Vantage") only as to the Gurnee facility, which is a non-diverse defendant.

1

Plaintiff recently announced a binding, global settlement with Vantage, and the state court for the first time last week declared it a nominal defendant. Complete diversity therefore exists between Plaintiff and all properly joined remaining defendants.

Further, this case is timely removed. While the case was pending for nearly five years against Vantage, Plaintiff only recently joined PPG—which operated the Gurnee facility before Vantage and *more than 25 years ago*—and other defendants in the litigation, and Plaintiffs have not served PPG.

## PROCEDURAL HISTORY

1. On June 13, 2024, Plaintiff filed a First Amended Complaint and Demand for Jury Trial (the "Complaint") that for the first time joined PPG to the litigation, styled *Kathleen Koch v. PPG Industries, Inc., et al.*, No. 2023L00686, in the Circuit Court of Cook County, Illinois, County Department, Law Division (the "State Action").

2. Plaintiff has asserted causes of action for negligence, willful and wanton conduct, and public nuisance. Plaintiff is seeking monetary damages.

## THIS CASE IS PROPERLY REMOVED TO THIS COURT

I. **This Court has diversity jurisdiction.**

A. **Complete diversity of citizenship exists.**

3. Under 28 U.S.C. § 1332(a)(1), this is a civil action between "citizens of different states."

4. Plaintiff is alleged to be an individual who is a citizen of Illinois.

1. **Defendants whose citizenship counts for diversity purposes.**

5. PPG is a Pennsylvania corporation with its principal place of business in Pennsylvania. PPG is not a citizen of the state where the action is brought. *See* 28 U.S.C. §§ 1332(a), 1441(b).

6.  BASF Corporation ("BASF") is a Delaware corporation with its principal place of business in New Jersey. BASF is not a citizen of the state where the action is brought. *See* 28 U.S.C. §§ 1332(a), 1441(b).

**2.  Vantage is a nominal defendant whose citizenship does not count for diversity purposes.**

7.  Vantage is a nominal defendant because it reached a binding, global settlement with Plaintiff in the State Action. As stated by the state court during a July 17, 2024, conference:

> are -- there have been, but this Court certainly
> considers Vantage and Medline to be nominal defendants
> only and named only. They're solely here for purposes
> of the settlements.

8.  "[S]ettled defendants" are "merely nominal parties," and therefore their presence "is disregarded for removal purposes." *Pulse Eng'g, Inc. v. Fed. Ins. Co.*, No. 06-1237, 2006 WL 6557899, at *3 (S.D. Ind. Dec. 5, 2006).

9.  On June 25, 2024, Plaintiffs in the State Action filed a Motion to Vacate Trial Date that for the first time disclosed that "Plaintiffs' counsel and Vantage Specialty Chemicals, Inc. ('Vantage') have just recently reached a landmark settlement that stands to resolve the hundreds of claims alleged against Vantage." Vantage is therefore a settled defendant and a nominal party whose presence is disregarded for removal purposes.[1]

---

[1] Upon information and belief, Vantage is a Delaware corporation with a principal place of business in Illinois.

3.     **Fraudulently joined defendants whose citizenship does not count for diversity purposes.**

10.     While "a plaintiff may choose her own forum, she may not join a nondiverse defendant simply to destroy diversity jurisdiction if she has no legitimate claims against that defendant." *Hoidas v. Wal-Mart Stores, Inc.*, No. 09-7409, 2010 WL 1790864, at *1 (N.D. Ill. Apr. 30, 2010) (Hibbler, J.) (internals omitted).

11.     "The fraudulent joinder doctrine therefore allows a district court considering removal to temporarily assume jurisdiction over a case to determine whether a defendant has been fraudulently joined and dismiss him if he is so joined to retain jurisdiction permanently." *Id.* (internals omitted).

12.     Where a plaintiff does not allege the factual basis for any breach of a duty owed by a defendant-employee who is sued by virtue of being an employee of a co-defendant entity, that defendant-employee is fraudulently joined. *E.g.*, *id.* (holding that non-diverse defendant-employee was fraudulently joined because there were no factual allegations to support an inference that he breached a duty owed to plaintiff).

13.     Mac Penman is named as a defendant because he is alleged to have been an Operations Manager for PPG at the Gurnee facility. The Complaint, however, contains no allegations as to what he allegedly did wrong or how any of his actions led to Plaintiff's alleged injuries. Further, Plaintiff's claims against Mr. Penman are barred by the applicable statute of limitations and laches. Therefore, Mr. Penman is a fraudulently joined defendant whose citizenship does not count for diversity purposes.[2]

---

[2] Mr. Penman is a citizen of Illinois.

14.     David L. Van Lewan is named as a defendant because he is alleged to have been an Ecology and Safety Manager for BASF at the Gurnee facility. The Complaint, however, contains no allegations as to what he allegedly did wrong or how any of his actions led to Plaintiff's alleged injuries. Further, Plaintiff's claims against Mr. Van Lewan are barred by the applicable statute of limitations and laches. Therefore, Mr. Van Lewan is a fraudulently joined defendant whose citizenship does not count for diversity purposes.[3]

*     *     *

15.     Therefore, at the time of removal, there is complete diversity between Plaintiff and all properly joined remaining defendants because the only properly joined remaining defendants in this case are citizens of different states from Plaintiff under 28 U.S.C. § 1332(a)(1).

16.     Likewise, 28 U.S.C. § 1441(b)(2) does not preclude removal because none of the properly joined and served remaining defendants are citizens of the forum state.

**B.     <u>The amount in controversy exceeds $75,000.</u>**

17.     The amount in controversy in this matter exceeds $75,000.

18.     For each of her asserted claims, Plaintiff seeks to recover an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois, which is $30,000. Accordingly, Plaintiff seeks a minimum of $90,000 and removal is proper. *See* 28 U.S.C. § 1332(a).

19.     The amount in controversy for Plaintiff's claims can be aggregated under applicable state law because she may seek to hold defendants jointly and severally liable for their alleged conduct. *See* 735 ILCS 5/2-1117; 735 ILCS 5/2-1118; *accord Am. Standard Ins. Co. v. Rogers*, 123 F. Supp. 2d 461, 466 (S.D. Ind. 2000).

---

[3] Upon information and belief, Mr. Van Lewan is a citizen of Illinois.

5

**II.**     <u>PPG timely filed this notice of removal.</u>

20.     Plaintiff has yet to serve PPG in the State Action. Therefore, under 28 U.S.C. § 1446(b)(1), this Notice of Removal is being filed within 30 days after PPG was served in the State Action and is timely filed.

**III.**     <u>This Court is the appropriate venue for removal.</u>

21.     Removal is proper to this District and this division because the Eastern Division of the Northern District of Illinois is the district and division within which the State Action is pending. 28 U.S.C. § 1441(a).

**IV.**     <u>All properly joined and served remaining defendants consent to removal.</u>

22.     PPG files this notice of removal.

23.     BASF has not been served in this action such that its consent is not required. *See* 28 U.S.C. § 1446(b)(2)(A) (requiring that only defendants properly joined *and* served must consent to removal (emphasis added)).

24.     Since it is a nominal, settled defendant, Vantage's consent to removal is not required. *Estate of Pilsnik v. Hudler*, 118 F. Supp. 2d 905, 908 (E.D. Wisc. 2000) ("Even if Mr. Hurdler is seen as a defendant, he is only a nominal defendant whose consent is not required for removal.").

25.     Since they are fraudulently joined, Mr. Penman and Mr. Van Lewan's consent to removal is not required. *See Bahalim v. Ferring Pharm., Inc.*, No. 16-8335, 2017 WL 118418, at *5 (N.D. Ill. Jan. 12, 2017) (consent to removal is not required from defendants who have been fraudulently joined). In addition, as of the date that this notice is filed, Mr. Penman and Mr. Van Lewan have not been served such that their consent is not required. *See* 28 U.S.C. § 1446(b)(2)(A)

(requiring that only defendants properly joined *and* served must consent to removal (emphasis added)).

## CONCLUSION

26.     Based on the above, this action is removable to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

27.     Pursuant to 28 U.S.C. § 1446(a), a copy of all "process, pleadings, and orders previously served on" PPG and Plaintiff's original complaint are attached to this Notice of Removal. *See DiNello v. U.S. Dep't of Ed.*, No. 06-2763, 2006 WL 3783010, at *1 n.1 (N.D. Ill. Dec. 21, 2006) (Hart, J.).

28.     In accordance with 28 U.S.C. § 1446(d), PPG will promptly provide written notice of removal of the State Action to Plaintiffs and will promptly file a copy of this Notice of Removal with the Clerk of the Circuit Court of Cook County, Illinois.

29.     PPG's Rule 7.1 Corporate Disclosure Statement and Local Rule 3.2 Notification as to Affiliates Statement will be filed promptly following this Notice of Removal.

30.     If any question arises as to the propriety of the removal of this action, PPG requests the opportunity to present a brief with supporting documentation, if applicable, and oral argument in support of its position that this case is removable.

31.     By filing this notice of removal, PPG does not waive and hereby expressly reserves the right to assert any defense or motion available in this action pursuant to state or federal law after removal to this Court, including, but not limited to, objections regarding jurisdiction, venue, sufficiency of process or service of process, and the service of discovery.

WHEREFORE, PPG respectfully removes this action from the Circuit Court of Cook County, Illinois, County Department, Law Division to the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Respectfully submitted,

**PPG INDUSTRIES, INC.**

By /s/ Vincenzo R. Chimera
    Vincenzo R. Chimera #6320435
    Kenn Brotman #6236771
    **K&L GATES LLP** - #45515
    70 West Madison Street, Suite 3100
    Chicago, IL 60602
    Telephone: (312) 807-4200
    Email: vincenzo.chimera@klgates.com
    Email: kenn.brotman@klgates.com

    David A. Fusco *Pro Hac Vice Forthcoming*
    david.fusco@klgates.com
    Wesley A. Prichard *Pro Hac Vice Forthcoming*
    wesley.prichard@klgates.com
    K&L GATES LLP
    K&L Gates Center
    210 Sixth Avenue
    Pittsburgh, Pennsylvania 15222
    Telephone: (412) 355-6500
    Facsimile: (412) 355-6501

## <u>CERTIFICATE OF SERVICE</u>

     This is to certify that on July 24, 2024, a true and correct copy of the foregoing document was served upon all known counsel of record via the Court's CM/ECF electronic filing system.


                                           *Vincenzo R. Chimera*
                                           Vincenzo R. Chimera

# **Exhibit 1**

FILED
6/13/2024 4:33 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000686
Calendar, 38
28111976

FILED DATE: 6/13/2024 4:33 PM    2023L000686

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

KATHLEEN KOCH,

    *Plaintiff*,

    v.

BASF CORPORATION, PPG INDUSTRIES, INC., MAC PENMAN, DAVID L. VAN LEWEN, and VANTAGE SPECIALTY CHEMICALS, INC.,

    *Defendants*.

Case No. 2023 L 000686

**PLAINTIFF DEMANDS TRIAL BY JURY**

*In Re: Medline ETO Release*

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kathleen Koch brings this Complaint and Demand for Jury Trial against Defendants BASF Corporation ("BASF"), PPG Industries, Inc. ("PPG"), Mac Penman ("Penman"), David Van Lewen ("Van Lewen") and Vantage Specialty Chemicals, Inc. ("Vantage") (together "Defendants"), for causing Ms. Koch to develop cancer. Plaintiff alleges that Defendants negligently polluted the air in her neighborhood with large amounts of ethylene oxide ("EtO"), a highly carcinogenic gas. Plaintiff further alleges that these carcinogenic EtO emissions caused her breast cancer. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters upon information and belief.

## INTRODUCTION

1.    Defendant Vantage is the current owner and operator of an industrial plant in Gurnee, Illinois (the "Gurnee Facility") that uses and has emitted toxic levels of ethylene oxide gas into the environment. Defendants BASF and PPG were the prior owners of the Gurnee

FILED DATE: 6/13/2024 4:33 PM    2023L000686

Facility, and, during their ownership, also used and emitted toxic levels of ethylene oxide into the environment.

2.      Defendant Van Lewen served as the Ecology and Safety Manager for Defendant BASF at the Gurnee Facility, and Defendant Penman was Operations Manager for Defendant PPG at the Gurnee Facility.

3.      While ethylene oxide ("EtO") has been classified as a human carcinogen since 1994, and its carcinogenic and mutagenic properties have been well documented in studies since at least the mid-1970s, Defendants disregarded ethylene oxide's harmful properties and continued to release it into the surrounding suburban communities—until recently entirely unbeknownst to area residents and workers.

4.      Self-reported emission estimates from the Gurnee Facility reflect levels of ethylene oxide release that have reached as high as 9,700 pounds per year. While some EtO emissions are from controlled sources, the majority of these emission estimates are "fugitive emissions" that escape the facilities as they use EtO.

5.      Initial air monitoring tests commissioned by the Lake County Health Department, and the Village of Gurnee demonstrated to the public the widespread nature of the ethylene oxide pollution taking place. The tests show the presence of toxic ethylene oxide gas as far as 4 miles from the Gurnee Facility.

6.      As a result, individuals living and working near the Gurnee Facility face some of the highest long-term cancer risks in the United States. These individuals have been inhaling ethylene oxide on a routine basis for decades. Now they are suffering from a variety of cancers, miscarriages, birth defects, and other life-altering health effects from their regular exposure to ethylene oxide.

FILED DATE: 6/13/2024 4:33 PM   2023L000686

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because they conduct business transactions in Illinois, maintain facilities in Illinois, and/or have committed tortious acts in Illinois.

8.      Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 because Defendant Vantage maintains an office in Cook County, is headquartered in Cook County, and conducts business in Cook County.  Defendants BASF and PPG conduct business in Cook County.

## THE PARTIES

9.      Plaintiff Kathleen Koch is a natural person and a citizen of the State of Illinois.

10.     Defendant Vantage Specialty Chemicals, Inc. has owned and operated the Gurnee Facility since mid-2003. Vantage Specialty Chemicals, Inc. is a privately-held company headquartered at 4650 South Racine Avenue in Chicago, Cook County Illinois. Vantage is authorized to transact business in this county and is doing business in this county.

11.     Defendant BASF Corporation owned and operated the Gurnee Facility from about 1997 through June 2003.  BASF is headquartered at 100 Campus Drive Florham Park in New Jersey.  Defendant was authorized to transact business in this county and did business in this county.

12.     Defendant PPG Industries, Inc. owned and operated the Gurnee Facility from 1970 through about 1997.  Mazer Chemicals, Inc. owned and operated the Gurnee facility from 1970 to through about the end of 1987.  Mazer Chemicals, Inc. was acquired by and merged into PPG (directly or indirectly) in about December 1987, with PPG being the merger survivor.  PPG continued to own and operate the Gurnee facility through about 1997, when the Gurnee facility

FILED DATE: 6/13/2024 4:33 PM    2023L000686

was acquired by BASF. Defendant PPG Industries, Inc., is a publicly-held company headquartered at One PPG Place in Pittsburgh, Pennsylvania.

13.    Defendant Mac Penman was the Operations Manager of Defendant PPG at the Gurnee Facility, and his responsibilities included coordinating and overseeing the operation of the facilities, directing personnel at the facilities, managing EtO emissions, implementing procedures, and ensuring overall safety at the facility. Defendant Penman is a natural person and a citizen of the State of Illinois.

14.    Defendant David L. Van Lewen was the Ecology and Safety Manager of Defendant BASF at the Gurnee Facility, and his responsibilities included managing EtO emissions and ensuring overall safety at the facility. Defendant Van Lewen is a natural person and a citizen of the State of Illinois.

15.    Defendants BASF, PPG, David Van Lewen, and Mac Penman knew or should have known that they engaged in tortious behavior, and as of 2019 knew or should have known that they should have been named in Plaintiff's complaint if Plaintiff had known the conduct of these Defendants.

## COMMON FACTUAL ALLEGATIONS

**I.    Brief Overview of the Ethylene Oxide Industry.**

16.    Ethylene oxide is a flammable gas at room temperature that is produced in large volumes for industrial uses. Defendants use and have used EtO in its chemical production process.

17.    When used in chemical production, EtO undergoes a chemical reaction to create new chemical compounds. Ethylene glycol and polysorbates are common chemicals synthesized from ethylene oxide and are often used in a wide range of products such as polyester fibers (for

FILED DATE: 6/13/2024 4:33 PM    2023L000686

use in clothing, carpets, and upholstery), industrial coolants, antifreeze, and personal care products such as cosmetics, shampoos, body washes, and other skincare products.

18.     Throughout the chemical production process used at the Gurnee Facility, EtO is emitted in both "controlled" emissions through known points of exit from the facilities (i.e., smokestacks or vents), as well as through "fugitive" emissions: unregulated escapes of EtO through leaky seals, old or malfunctioning equipment, operator error, or other untracked sources.

19.     At all times during their ownership and operation of the Gurnee Facility, Defendants have used, and continue to use, EtO in the facility's chemical production.  Through its processes, Defendants emitted EtO into the air, allowing it to disperse and be carried by wind throughout the area surrounding the Gurnee Facility. Indeed, Lake County recently conducted EtO air monitoring tests, discussed below, demonstrating that EtO emissions have traveled as far as 4 miles from the Gurnee Facility.

20.     As such, local residents and workers in the area have unknowingly been exposed to carcinogenic ethylene oxide for decades all while Defendants knew, or should have known, EtO to be dangerous, toxic, carcinogenic, mutagenic, and the cause of various illnesses.

**II.     Health Effects of Ethylene Oxide Exposure.**

21.     Ethylene oxide is dangerous, toxic, carcinogenic, and mutagenic. EtO is highly reactive, readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body. Its deleterious properties have been widely known in the industries that use it for decades.

22.     In a 1977 article, the National Institute of Occupational Safety and Health ("NIOSH") concluded that occupational exposure to ethylene oxide may increase the frequency of genetic mutations in humans. The NIOSH report also raised a concern about potential carcinogenicity of ethylene oxide.

FILED DATE: 6/13/2024 4:33 PM    2023L000686

23.     In 1981, the NIOSH released a subsequent report which recommended that EtO be regarded in the workplace as a potential occupational carcinogen. The NIOSH based its recommendation on new evidence of EtO's carcinogenic, mutagenic, and reproductive hazards including studies demonstrating that EtO induced cancer in experimental animals. Specifically, the studies showed an increase in instances of leukemia in line with the increase of EtO concentrations, in addition to other adverse effects on reproductive health. An epidemiological investigation of Swedish workers exposed to EtO also revealed an increase number of leukemia and other cancers.

24.     The 1981 NIOSH report was widely disseminated in the form of a bulletin available to users and emitters of ethylene oxide and the petrochemical industry at large. Indeed, NIOSH requested that producers, distributors, and users of EtO further disseminate the bulletin and inform others of the chemical's dangers: "[o]n the basis of this information, NIOSH requests that producers, distributors, and users of ethylene oxide, and of substances and materials containing ethylene oxide, give this information to their workers and customers, and that professional and trade associations and unions inform their members."

25.     In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as reasonably anticipated to be a human carcinogen.

26.     In the early 1990s, the NIOSH published the largest and most informative epidemiological study of ethylene oxide. The study analyzed over 18,000 employees working with EtO at 14 different industrial facilities sterilizing medical equipment and food spices. The study found sufficient evidence to support a causal link between exposure to ethylene oxide and increased mortality from lymphatic and hematopoietic cancers. Follow-up studies have additionally demonstrated an association between EtO exposure and breast cancer.

FILED DATE: 6/13/2024 4:33 PM    2023L000686

27.     As a result of these findings, the World Health Organization ("WHO") listed EtO as a Group 1 human carcinogen in 1994, the agency's highest risk classification, finding ethylene oxide to be carcinogenic to humans. In 2000, the U.S. Department of Health and Human Services revised its classification for EtO to "known to be a human carcinogen." In 2016, the U.S. Environmental Protection Agency's Integrated Risk Information System reclassified EtO as carcinogenic to humans and increased the cancer potency of EtO by 30 times. Critically, these classifications are not limited to the workplace: EtO is carcinogenic and harmful to those who ingest it even if they don't work with it on a regular basis. The draft December 2020 Toxicological Profile for Ethylene Oxide submitted for public comment by the Agency for Toxic Substances and Disease Registry, for example, recognizes that those living near facilities that use EtO may face elevated concentrations because of emissions or accidental releases. Indeed, as described below, it is precisely because EtO is carcinogenic regardless of circumstance that it is recognized as a toxic air pollutant whose emissions must be tracked and its release into the atmosphere (and consequential exposure to nearby properties) limited.

28.     Exposure to ethylene oxide has been widely studied and its negative health effects are well documented. Presently, there is evidence linking ethylene oxide exposure to increased risk of lymphohematopoietic cancer such as non-Hodgkin's lymphoma, myeloma, and lymphocytic leukemia; breast cancer; tumors in the lungs, uterus, and the brain; and reproductive and developmental impairments including increased rate of miscarriages and infertility.

29.     Most recently, the Illinois Department of Public Health ("IDPH") conducted an assessment of cancer rates in the population surrounding the Sterigenics facility in Willowbrook, Illinois that has been using and emitting EtO in its industrial sterilization process since 1984. The findings reaffirmed the decades of studies on EtO exposure. The IDPH found elevated cases of:

▪    Hodgkin's lymphoma;

FILED DATE: 6/13/2024 4:33 PM   2023L000686

- Pediatric lymphoma;

- Breast cancer;

- Prostate cancer;

- Pancreatic cancer;

- Ovarian cancer; and

- Bladder cancer.

30.     Worst of all, ethylene oxide exposure affects the most vulnerable members of the population. The U.S. Environmental Protection Agency ("U.S. EPA") states that "for a single year of exposure to ethylene oxide, the cancer risk is greater for children than for adults. That is because ethylene oxide can damage DNA."

## III.     Defendants Knew That EtO Emissions Were Harmful.

31.     By the early 1970s, ethylene oxide's negative health effects were widely disseminated to industrial users and emitters of the chemical. This means that when each Defendant operated its facility—PPG beginning in 1970, BASF beginning in 1997, and Vantage beginning in 2003—they knew or should have known that ethylene oxide is and was always dangerous to human health and that its emissions posed (and continue to pose) a serious risk to area residents.

32.     In October 1985—when Vantage was operating its facility and even before the Waukegan Facility began operations—the U.S. EPA issued a Notice of Intent to list EtO as a hazardous air pollutant. The Notice expressed concern over the "adverse health effects associated with ethylene oxide exposure" and cited the various studies on EtO's carcinogenic health effects. In this Notice, the U.S. EPA also stated that it performed a dispersion model to estimate the concentration levels which the public may be exposed near EtO emission sources and conducted a preliminary risk assessment. The U.S. EPA's preliminary risk assessment found that there was

FILED DATE: 6/13/2024 4:33 PM    2023L000686

a risk of an additional 47 cases of cancer per year in areas surrounding EtO sterilizers and fumigators and concluded that "ethylene oxide can exist in the ambient air for at least several hours, a sufficient length of time for a significant human exposure to occur."

33.     In July 1986, when considering adding "ethylene oxide (EO) to the list of hazardous air pollutants" the U.S. EPA issued a letter to ethylene oxide users requesting "information about E[t]O sterilization processes, E[t]O emission levels from sterilizers, and emission controls on E[t]O sterilizers at each of your facilities that uses E[t]O for sterilization or fumigation." This request came in light of the NIOSH study showing evidence of EtO's carcinogenic, mutagenic, and reproductive hazards and the U.S. EPA's concern with "significant quantities of EO [being emitted] to the atmosphere" and, consequently, affecting individuals living and working near ethylene oxide facilities. The U.S. EPA sent the July 1986 letter to various EtO users and emitters, including Medline Industries. Ultimately, ethylene oxide was included on the original list of hazardous air pollutants identified in the 1990 Amendment to the Clean Air Act.

34.     By 1985 then, ethylene oxide users and emitters were well aware of the dangers of the chemical and legal consequences of emissions. Indeed, in 1990 California Attorney General Van de Kamp brought a lawsuit against four emitters of ethylene oxide alleging that the EtO emitters had exposed an estimated 3 million people living near emissions sites to the potent carcinogen.

35.     In 1996, the U.S. EPA issued its first model of EtO exposure concentrations for areas surrounding emitters. The 1996 model revealed that Lake County, Illinois residents had significantly greater EtO concentration exposure ($0.0085$ $\mu g/m^3$) than the national average ($0.00295$ $\mu g/m^3$), or over 2.8 times the average nationwide concentration. The 95th percentile of

modeled ethylene oxide exposure in Lake County (0.02176 µg/m$^3$) was also *double* that of the national 95th percentile (0.01051µg/m$^3$) of human exposure concentration.

36.     The U.S. EPA repeated its exposure concentration modeling by using reported emissions from 1999. The 1999 air modeling revealed that Lake County residents are at an increased risk of cancer from ethylene oxide and had a risk greater than 1.5 times the national cancer risk from ethylene oxide exposure.

37.     Thus, the potential dangers EtO emissions posed to nearby residents was known, or should have been known, to Defendants by the time they operated their facilities, and years in advance of the Plaintiff's diagnoses.

**IV.     Lake County Facilities Emit Harmful Ethylene Oxide.**

**a.     The U.S. EPA Estimates High Risks of Cancer in Lake County.**

38.     On August 22, 2018, the U.S. EPA released the 2014 National Air Toxics Assessment ("NATA"). The NATA is a screening tool that estimates cancer risks based on emission data in 76,727 census tracts across the United States.

39.     The 2014 NATA revealed 109 census tracts in the United States with cancer risk scores greater than what the U.S. EPA considers "acceptable" limits: 100 cases for every 1 million people exposed to toxic air pollution during their lifetime. Of the 109 census tracts, the 2014 NATA identified four tracts in northern Illinois as having potential cancer risks of 100 in 1 million or greater from exposure to air toxics:

- Tract 17097862605/8626.05 (1.1 mi² near Waukegan, Park City): **157 per million**;

- Tract 17097862800/8628.00 (1.2 mi² near Waukegan, North Chicago): **131 per million**;

- Tract 17097861504/8615.04 (2.8 mi² near Gurnee, Park City): **123 per million**; and

- Tract 17097862604/8626.04 (1 mi² near Waukegan, Park City): **100 per million**.

FILED DATE: 6/13/2024 4:33 PM    2023L000686

FILED DATE: 6/13/2024 4:33 PM    2023L000686

40. The U.S. EPA released a statement that it believes that "largest sources of ethylene oxide emissions in Lake County are Medline, a commercial sterilizer located in Waukegan, and Vantage, a chemical production facility in Gurnee."

41. The U.S. EPA estimates the lifetime risk of developing cancer due to air toxics in one of these four Lake County tracts near the Waukegan Facility and Vantage facility to be up to five times higher than average the national cancer risk across the U.S. population. Fewer than one percent of the census tracts in the United States have an estimated cancer risk due to air toxics of greater than or equal to 100 in one million.

**b.** **The U.S. EPA's Cancer Risk Assessments are Understated.**

42. While the 2014 NATA reveals shockingly high risks of cancer across a large area near the Medline and Vantage facilities, these risks are understated.

43. The U.S. EPA warns that the NATA is *only* a screening tool that local municipalities can use in order to further investigate the emission sources and potential public health risks. It notes several NATA shortcomings such as the lack of direct measurements of pollutants and data gaps.

44. The lifetime risk of developing cancer in the aforementioned census tracts is likely significantly higher than what the U.S. EPA estimated in the 2014 NATA. That is because Vantage's 2014 EtO emissions were actually *omitted* from the 2014 NATA. According to the U.S. EPA, this was due to a clerical "error" in the National Emissions Inventory which caused Vantage's 2014 EtO emissions to be calculated as zero for purposes of the 2014 NATA.[1] That is, the finding that cancer risk levels were up to five times the national average were based on the assumption that Vantage did not emit a single pound of EtO in 2014. Adding in the thousands of

---

[1] https://www.epa.gov/il/ethylene-oxide-emissions-lake-county-illinois#vantage

FILED DATE: 6/13/2024 4:33 PM    2023L000686

pounds that Vantage actually emitted would only result in ever higher cancer risk levels for the areas surrounding the plant. In short, without the Vantage emissions in its calculations, the cancer risks identified in the 2014 NATA for people living and working in the area were and continue to be dramatically underestimated.

45.     Most importantly, the 2014 NATA is only a model created on an assumed exposure to a facility's reported emissions from a single year: 2014. But the emissions from the Vantage facility and Waukegan Facility have historically been much higher than their reported emissions in 2014.

46.     The U.S. EPA maintains a Toxics Release Inventory ("TRI") which includes annual self-reported emissions data from industrial facilities using EtO and other toxic chemicals which pose a threat to human health and the environment.

47.     A review of TRI data from the U.S. EPA shows EtO emissions from the Vantage facility over the past three plus decades, with a prominent increase of emissions beginning in 2010. *See* Figure 1.



**(Figure 1.)**

48.     While Vantage ultimately reported 2,723 pounds of EtO emissions in 2014, that figure is overshadowed by its nearly 20,000 pounds emissions of EtO during a two-year period in

FILED DATE: 6/13/2024 4:33 PM    2023L000686

2010 and 2011. Similarly, Vantage reports emitting EtO in smaller, albeit significant quantities throughout the years:

- 2010: 9,649 pounds
- 2011: 9,709 pounds
- 2012: 3,425 pounds
- 2013: 2,832 pounds

- 2014: 2,723 pounds
- 2015: 1,277 pounds
- 2016: 1,127 pounds
- 2017: 1,547 pounds

49.     It is important to note that majority of Vantage's reported total emissions, as shown above, are the result of estimated "fugitive" emissions. To illustrate, Vantage's fugitive emissions constituted more than 80% of its total emissions in 2010 and 2011. In 2010, Vantage reported 9,649 pounds of total EtO emissions with 8,073 pounds of fugitive emissions and in 2011 Vantage reported 9,709 pounds of total EtO emissions with 7,984 pounds of fugitive emissions. Vantage's fugitive EtO emissions constitute a significant portion of its total emissions:

- 2010: 8,073 pounds
- 2011: 7,984 pounds
- 2012: 2,704 pounds
- 2013: 2,110 pounds

- 2014: 2,003 pounds
- 2015: 551 pounds
- 2016: 414 pounds
- 2017: 810 pounds

50.     Because of the elusive nature of these fugitive emissions, they are difficult to calculate, and are likely an underestimation. In fact, Vantage entered into a compliance agreement with the Illinois EPA regarding allegations that Vantage failed to test and maintain EtO-filtration equipment—which may have failed to achieve the required reduction in overall uncontrolled EtO emissions—in 2016.

51.     And although Vantage reported reductions in emissions after 2012, the facility's self-reported regulatory data is difficult to independently verify. For example, Vantage reported to another office at the U.S. EPA that during 2014 it released 6,412 pounds of EtO—**not 2,723 pounds as has been recently reported to the U.S. EPA**.

13

FILED DATE: 6/13/2024 4:33 PM    2023L000686

52.     Unfortunately, none of these emissions were used in calculating the cancer risks in the 2014 NATA, as mentioned above.

**c.     Lake County Begins Air Monitoring.**

53.     On August 21, 2018, the U.S. Department of Health and Human Services, Agency for Toxic Substances and Disease Registry ("ATSDR") released a report of health risks related to the chemical release of EtO by Sterigenics, a commercial sterilizer 40 miles southwest in Willowbrook, Illinois. The ATSDR concluded that an elevated cancer risk existed for residents and off-site workers in the Willowbrook community surrounding the Sterigenics facility due to EtO.

54.     In the following months, Lake County officials, health departments, state and national elected representatives, and concerned residents repeatedly pleaded with the U.S. EPA and Illinois Environmental Protection Agency ("IEPA") to conduct ambient air monitoring surrounding the Medline and Vantage facilities. Despite these requests, the U.S. EPA and IEPA refused to conduct ambient air monitoring anywhere in Lake County, much less near the Medline and Vantage facilities.

55.     Finally, on May 20, 2019, local community officials approved an intergovernmental agreement between the Village of Gurnee, City of Waukegan, and Lake County to conduct air monitoring.

56.     The air monitoring began on June 3, 2019 by placing cannisters at four sites near Medline, four sites near Vantage, and two remote locations in Lake County. The Lake County Health Department released partial test results on June 21, 2019 that revealed the presence of EtO in almost every sample. The test results also showed the presence of EtO as far as 4.5 miles from the Medline facility and 4 miles from the Vantage facility. The air monitoring cannisters

surrounding Medline and Vantage facilities registered elevated levels of EtO with the highest

twenty-four hour reading at ten micrograms of ethylene oxide per cubic meter of air (10 ug/m$^3$).

57. For reference, the U.S. EPA associates a concentration of ethylene oxide of 0.02

ug/m$^3$ with a 100-in-a-million cancer risk for a lifetime of exposure. The highest recorded EtO

concentration surrounding the Medline and Vantage facilities corresponds with a cancer risk as

high as 500 times the EPA's 100-in-a-million cancer risk.

58. On November 26, 2019 the Lake County Health Department received the first set

of air monitoring test results from the second phase of air testing that took place between

October 26, 2019 and November 2, 2019.

59. Air test results confirm the June 2019 findings. That is, ethylene oxide has been

detected in high concentration in communities around the Gurnee Facility, and in remote

locations away from both facilities.

60. Lake County's final phase of air monitoring started in April 2020. The air

monitoring canisters registered EtO levels over 53 times the EPA's 100-in-a-million cancer risk

in remote locations and as high as 5.49 μg/m$^3$ near the Gurnee Facility—representing EtO levels

over 274 times the EPA's 100-in-a-million cancer risk.

61. The full extent of EtO emissions throughout Lake County was unknown to those

living and working in the area until Lake County released the air monitoring test results. Indeed,

the local air monitoring tests revealed a more accurate picture of EtO concentrations and the

distance EtO has traveled than the U.S. EPA's NATA report. And the air monitoring tests

revealed areas in Lake County with high EtO concentrations that were previously not indicated

by the 2014 NATA report.

15

FILED DATE: 6/13/2024 4:33 PM  2023L000886

62.     Even still, the full health impact on those who live and work near the Gurnee Facility is still not entirely known. The Lake County Health Department has requested that the Illinois Department of Public Health conduct a cancer incidence assessment in Lake County.

## FACTS SPECIFIC TO PLAINTIFF KOCH

63.     Plaintiff Kathleen Koch has been a resident of Gurnee since her birth in 1964. She lived in home located less than a mile from the Gurnee Facility between 2005 and 2021. And between 1970 and 2005 lived in homes that were near the facility including in homes that were less than 2 miles from the facility.

64.     Kathleen consistently inhaled contaminated air in and around her home, and in the Lake County area.

65.     As a result, Kathleen was diagnosed with triple negative breast cancer in October 2014.

66.     At the time of her diagnosis, Kathleen did not have notice that her medical condition was wrongfully caused or that it was caused by the Defendants' emissions of ethylene oxide.

### COUNT I
### Negligence
### (On Behalf of Plaintiff and Against All Defendants)

67.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

68.     At all times relevant, Defendants BASF and PPG owed a duty to exercise reasonable care in the operation of its facility, including in its emission of EtO, to prevent harm to neighboring Plaintiff. It was reasonably foreseeable that nearby property owners would be exposed to elevated levels of Defendants' EtO emissions, and would face the health risks associated with EtO exposure.

16

FILED DATE: 6/13/2024 4:33 PM    2023L000886

69.     At all relevant times, Defendant Van Lewen, as the Ecology and Safety Manager of Defendant BASF at the Gurnee Facility, was responsible for the management of EtO emissions and for ensuring overall safety at the facility.  In that capacity, Van Lewen knew or should have known that ethylene oxide posed a danger to the surrounding community and owed a duty to exercise reasonable care to the people living and working in that community.

70.     At all relevant times, Defendant Penman, as the Operations Manager of Defendant PPG at the Gurnee Facility, was responsible for coordinating and overseeing the operation of the facility, directing personnel at the facility, managing EtO emissions, and implementing procedures to ensure overall safety at the facility.  In that capacity, Penman knew or should have known that ethylene oxide posed a danger to the surrounding community and owed a duty to exercise reasonable care to the people living and working in that community.

71.     Defendants breached their duty in one or more of the following ways:

    a.     Emitting dangerous volumes of EtO into the air from its facility;

    b.     Disregarding safe methods to adequately control EtO emissions from its facility;

    c.     Failing to warn or advise those who live or work in the community, that they were being exposed to EtO;

    d.     Failing to adequately record test results of high levels of EtO;

    e.     Ignoring test results of high levels of EtO;

    f.     Underreporting EtO levels; and

    g.     Subjecting those who live and work near its facility to an elevated cancer risk.

72.     As a proximate result of one of the aforesaid negligent acts or omissions Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

FILED DATE: 6/13/2024 4:33 PM    2023L000686

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendants in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

### COUNT II
**Willful and Wanton Conduct**
**(On Behalf of Plaintiff and Against All Defendants)**

73.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

74.    At all times relevant, Defendants BASF and PPG owed a duty to refrain from willful and wanton conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of the Plaintiff and those living and working in the area surrounding its facility.

75.    At all relevant times, Defendant Van Lewen, as the Ecology and Safety Manager of Defendant BASF at the Gurnee Facility, was responsible for the management of EtO emissions and for ensuring overall safety at the facility.  In that capacity, Van Lewen knew or should have known that ethylene oxide posed a danger to the surrounding community and owed a duty to refrain from willful and wanton conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of the Plaintiff and those living and working in the area surrounding its facility.

76.    At all relevant times, Defendant Penman, as the Operations Manager of Defendant PPG at the Gurnee Facility, was responsible for coordinating and overseeing the operation of the facility, directing personnel at the facility, managing the facility's EtO emissions, and implementing procedures to ensure the overall safety at the facility.  In that capacity, Penman knew or should have known that ethylene oxide posed a danger to the surrounding community and owed a duty to refrain from willful and wanton conduct and/or

18

conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of the Plaintiff and those living and working in the area surrounding its facility.

77.     Defendants breached their duty in one or more of the following ways:

    a.     Emitting dangerous volumes of EtO into the air from its facility;

    b.     Disregarding safe methods to adequately control EtO emissions from its facility;

    c.     Failing to warn or advise those who live or work in the community, that they were being exposed to EtO;

    d.     Failing to adequately record test results of high levels of EtO;

    e.     Ignoring test results of high levels of EtO;

    f.     Underreporting EtO levels; and

    g.     Subjecting those who live and work nearby its facility to an elevated cancer risk.

78.     As a proximate result of one of the aforesaid willful and wanton acts or omissions, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendants in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

### COUNT III
**Public Nuisance**
**(On Behalf of Plaintiff and Against All Defendants)**

79.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

80.     At all relevant times, Defendants knew EtO to be hazardous and harmful to humans.

81.     The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO. The Illinois Constitution guarantees these rights to its citizens.

19

FILED DATE: 6/13/2024 4:33 PM    2023L000686

Article XI of the Illinois Constitution of 1970, Environment, Section 1, Public Policy -

Legislative Responsibility, provides that:

> The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Article XI of the Illinois Constitution of 1970, Environment, Section 2, Rights of Individuals,

provides that:

> Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law.

82.     Defendants' use and emission of EtO from its facility substantially and

unreasonably infringes upon and/or transgresses this public right.

83.     Defendants knew and should have known that the levels of EtO gas emitted from

their facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and

well-being of people living and working in the community.

84.     Defendants' operation, maintenance, management, and use of their facility caused

those who live and work in the area surrounding the facility to breathe air containing high levels

of EtO on a routine basis, causing a substantially elevated risk of cancer.

85.     As a proximate result of Defendants' operation, maintenance, management and

use of their facility, Plaintiff's and the general public's common right to breathe clean air without

dangerous levels of carcinogens such as EtO was eliminated and/or severely diminished.

86.     As a proximate result of Defendants' operation, maintenance, management, and

use of their facility, EtO invaded and caused to be contaminated the areas immediately

surrounding and on Plaintiff's residences.

FILED DATE: 6/13/2024 4:33 PM    2023L000686

87.     As a proximate result of Defendants' use and emission of EtO, Plaintiff was exposed to and inhaled significant quantities of EtO.

88.     As a proximate result of Defendants' use and emission of EtO, Plaintiff sustained and will continue to sustain severe and permanent damage to their health due to the emission of EtO.

89.     As a proximate result of Plaintiff's inhalation of EtO from the Gurnee Facility, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendants in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

Respectfully submitted,

**KATHLEEN KOCH,**

Date: June 13, 2024

By: */s/ Julien Adams*
One of Plaintiff's Attorneys

Julien Adams*
julien@dovel.com
Gregory Dovel*
greg@dovel.com
Alexander Erwig*
alexander@dovel.com
Susan Posluszny
susanp@dovel.com
DOVEL & LUNER
201 Santa Monica Boulevard, Suite 600
Santa Monica, CA 90401

Bryce T. Hensley
bryce@sgghlaw.com
Stinar Gould Grieco & Hensley
101 N. Wacker Drive, Suite 100
Chicago, IL 60606
(312) 748-7338

21

FILED DATE: 6/13/2024 4:33 PM    2023L000686

Benjamin H. Richman
brichman@edelson.com
Nicholas Rosinia
nrosinia@edelson.com
Amy B. Hausmann
abhausmann@edelson.com
Edelson PC
300 North LaSalle Street, 14th Floor
Chicago, IL 60654
(312) 589-6370
Firm ID: 62075

Todd Logan*
tlogan@edelson.com
Brandt Silver-Korn
bsilverkorn@edelson.com
Edelson PC
150 California Street, 18th Floor
San Francisco, CA 94111
(415) 212-9300

*Admitted *Pro Hac Vice*

Counsel for Plaintiff Kathleen Koch

FILED DATE: 6/13/2024 4:33 PM   2023L000686

## <u>CERTIFICATE OF SERVICE</u>

I, Julien Adams, hereby certify that on June 13, 2024, I caused the foregoing **Plaintiff's First Amended Complaint** to be served by transmitting such document via the Court's electronic filing system to all counsel of record.

<u>*/s/ Julien Adams*</u>

# **<u>Exhibit 2</u>**

FILED
1/23/2023 7:49 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000686
Calendar, H
21162842

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| KATHLEEN KOCH, | No. 2023L000686 |
| *Plaintiff,* | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| v. | *In Re: Medline ETO Release* |
| MEDLINE INDUSTRIES, INC., ISOMEDIX OPERATIONS, INC., and VANTAGE SPECIALTY CHEMICALS, INC., | |
| *Defendants.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kathleen Koch brings this Complaint and Demand for Jury Trial against Defendants Medline Industries, Inc. ("Medline"), Isomedix Operations, Inc. ("Isomedix"), and Vantage Specialty Chemicals, Inc. ("Vantage") (together "Defendants"), for the harm they caused to individuals, like Ms. Kathleen Koch, living and working in the vicinity of these facilities, as a result of the Defendants' emissions of toxic ethylene oxide into the community. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters upon information and belief.

## INTRODUCTION

1.      Defendants Medline, Isomedix, and Vantage are industrial users and polluters of ethylene oxide gas in Illinois. Medline, Isomedix, and Cosmed are industrial medical device sterilizers and Vantage is a chemical producer.

2.      While ethylene oxide ("EtO") has been classified as a human carcinogen since 1994, and its carcinogenic and mutagenic properties have been well documented in studies since at least the mid-1980s, Medline, Isomedix, Cosmed, and Vantage disregarded ethylene oxide's

FILED DATE: 1/23/2023 7:49 PM   2023L000686

harmful properties and continued to release it into the surrounding suburban communities—until recently entirely unbeknownst to area residents and workers.

3.    Self-reported emission estimates from these facilities reflect high levels of ethylene oxide release. The combined ethylene oxide emissions from these facilities have reached as high as 13,000 pounds per year. While some EtO emissions are from controlled sources, the majority of these emission estimates are "fugitive emissions" that escape the facilities as they use EtO.

4.    Initial air monitoring tests commissioned by the Lake County Health Department, the Village of Gurnee, and the City of Waukegan demonstrated to the public the widespread nature of the ethylene oxide pollution taking place. The tests show the presence of toxic ethylene oxide gas as far as 4.8 miles from the Medline facility and 4 miles from the Vantage facility, much further than previously suspected.

5.    As a result, individuals living and working near these EtO-emitting facilities face some of the highest long-term cancer risks in the United States. These individuals have been inhaling ethylene oxide on a routine basis for decades. Now they are suffering from a variety of cancers, miscarriages, birth defects, and other life-altering health effects from their regular exposure to ethylene oxide.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because they conduct business transactions in Illinois, maintain facilities in Illinois, and/or have committed tortious acts in Illinois.

7.    Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 because Defendants Medline and Vantage maintain offices in Cook County, are each headquartered in Cook County, and conduct business in Cook County.

FILED DATE: 1/23/2023 7:49 PM    2023L000686

## THE PARTIES

8.    Plaintiff Kathleen Koch is a natural person and a citizen of the State of Illinois.

9.    Defendant Vantage Specialty Chemicals, Inc. and its predecessors have operated and continue to operate a chemical production facility in Gurnee, Illinois since 1985. Vantage Specialty Chemicals, Inc. is a privately-held company headquartered at 4650 South Racine Avenue in Chicago, Cook County Illinois. Defendant is authorized to transact business in this county and is doing business in this county.

10.    Defendant Medline Industries, Inc. operates a sterilization facility in Waukegan, Illinois (the "Waukegan Facility"). Medline Industries, Inc. is a privately-held company headquartered at 3 Lakes Drive, Northfield, Cook County, Illinois. Defendant is authorized to transact business in this county and is doing business in this county.

11.    Defendant Isomedix Operations, Inc.'s predecessors operated the Waukegan Facility between January 2005 to September 2008. Isomedix is a privately held corporation headquartered at 5960 Heisley Road, Mentor, Ohio 44060. On January 1, 2015, Steris Isomedix Services Inc. merged with and into Isomedix Operations, Inc., a wholly owned subsidiary of Steris Corporation, with Isomedix Operations, Inc. surviving the merger. Isomedix Operations, Inc. is the successor to Steris Isomedix Services Inc., which no longer exists as a legal entity.

## COMMON FACTUAL ALLEGATIONS

### I.    Brief Overview of the Ethylene Oxide Industry

12.    Ethylene oxide is a flammable gas at room temperature that is produced in large volumes for industrial uses. There are two primary known industrial uses for ethylene oxide at Defendants' facilities: medical equipment sterilization and chemical production.

FILED DATE: 1/23/2023 7:49 PM    2023L000686

13.     Commercial medical equipment sterilizers use the ethylene oxide sterilization process on over 20 billion health care products every year in the United States. The EtO sterilization process begins by placing medical equipment in a gas chamber. After air is pumped out of the room, ethylene oxide is introduced and allowed to diffuse into the products for several hours. Once the medical equipment is sterilized, the ethylene oxide is pumped out of the chamber and the remaining EtO is allowed to slowly dissipate from the equipment.

14.     Concerning chemical production, EtO undergoes a chemical reaction to create new chemical compounds. Ethylene glycol is one of the most common chemicals synthesized from ethylene oxide and is often used in a wide range of products such as polyester fibers (for use in clothing, carpets, and upholstery), industrial coolants, antifreeze, and personal care products such as cosmetics, shampoos, body washes, and other skincare products.

15.     Defendants use and/or have used ethylene oxide in their industrial processes. Between approximately 1993 and 2005, Cosmed operated the Waukegan Facility, which used EtO for industrial medical device sterilization, until Isomedix took over the facility in 2005. Isomedix operated the Waukegan Facility, which used EtO for industrial medical device sterilization, from January 2005 until 2008 when Medline ultimately took over the facility. Since 2008, Medline has used and continues to use EtO for medical device sterilization at the Waukegan Facility. Vantage and its predecessors have used, and Vantage continues to use, EtO in chemical production at its Gurnee facility since approximately 1985.

16.     Throughout the industrial processes described in Paragraphs 13-15, EtO is emitted in both "controlled" emissions through known points of exit from the facilities (i.e., smokestacks or vents), as well as through "fugitive" emissions: unregulated escapes of EtO through leaky seals, old or malfunctioning equipment, operator error, or other untracked sources.

FILED DATE: 1/23/2023 7:49 PM    2023L000686

17.     Through their processes, these plants emitted (and Medline and Vantage continue to emit) EtO into the air, allowing it to disperse and be carried by wind throughout the area surrounding the facilities. Indeed, Lake County recently conducted EtO air monitoring tests, discussed below, demonstrating that EtO emissions have traveled as far as 4.8 miles from the Waukegan Facility and 4 miles from the Vantage facility.

18.     As such, local residents and workers in the area have unknowingly been exposed to carcinogenic ethylene oxide for decades all while Medline, Isomedix, Cosmed, and Vantage knew, or should have known, EtO to be dangerous, toxic, carcinogenic, mutagenic, and the cause of various illnesses.

## II.     Health Effects of Ethylene Oxide Exposure

19.     Ethylene oxide is dangerous, toxic, carcinogenic, and mutagenic. EtO is highly reactive, readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body. Its deleterious properties have been widely known in the industries that use it for decades.

20.     In a 1977 article, the National Institute of Occupational Safety and Health ("NIOSH") concluded that occupational exposure to ethylene oxide may increase the frequency of genetic mutations in humans. The NIOSH report also raised a concern about potential carcinogenicity of ethylene oxide.

21.     In 1981, the NIOSH released a subsequent report which recommended that EtO be regarded in the workplace as a potential occupational carcinogen. The NIOSH based its recommendation on new evidence of EtO's carcinogenic, mutagenic, and reproductive hazards including studies demonstrating that EtO induced cancer in experimental animals. Specifically, the studies showed an increase in instances of leukemia in line with the increase of EtO concentrations,

in addition to other adverse effects on reproductive health. An epidemiological investigation of Swedish workers exposed to EtO also revealed an increase number of leukemia and other cancers.

22.     The 1981 NIOSH report was widely disseminated in the form of a bulletin available to users and emitters of ethylene oxide and the petrochemical industry at large. Indeed, NIOSH requested that producers, distributors, and users of EtO further disseminate the bulletin and inform others of the chemical's dangers: "[o]n the basis of this information, NIOSH requests that producers, distributors, and users of ethylene oxide, and of substances and materials containing ethylene oxide, give this information to their workers and customers, and that professional and trade associations and unions inform their members."

23.     In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as reasonably anticipated to be a human carcinogen.

24.     In the early 1990s, the NIOSH published the largest and most informative epidemiological study of ethylene oxide. The study analyzed over 18,000 employees working with EtO at 14 different industrial facilities sterilizing medical equipment and food spices. The study found sufficient evidence to support a causal link between exposure to ethylene oxide and increased mortality from lymphatic and hematopoietic cancers. Follow-up studies have additionally demonstrated an association between EtO exposure and breast cancer.

25.     As a result of these findings, the World Health Organization ("WHO") listed EtO as a Group 1 human carcinogen in 1994, the agency's highest risk classification, finding ethylene oxide to be carcinogenic to humans. In 2000, the U.S. Department of Health and Human Services revised its classification for EtO to "known to be a human carcinogen." In 2016, the U.S. Environmental Protection Agency's Integrated Risk Information System reclassified EtO as carcinogenic to humans and increased the cancer potency of EtO by 30 times. Critically, these

6

FILED DATE: 1/23/2023 7:49 PM    2023L000686

FILED DATE: 1/23/2023 7:49 PM    2023L000686

classifications are not limited to the workplace: EtO is carcinogenic and harmful to those who ingest it even if they don't work with it on a regular basis. The draft December 2020 Toxicological Profile for Ethylene Oxide submitted for public comment by the Agency for Toxic Substances and Disease Registry, for example, recognizes that those living near facilities that use EtO may face elevated concentrations because of emissions or accidental releases. Indeed, as described below, it is precisely because EtO is carcinogenic regardless of circumstance that it is recognized as a toxic air pollutant whose emissions must be tracked and its release into the atmosphere (and consequential exposure to nearby properties) limited.

26. Exposure to ethylene oxide has been widely studied and its negative health effects are well documented. Presently, there is evidence linking ethylene oxide exposure to increased risk of lymphohematopoietic cancer such as non-Hodgkin's lymphoma, myeloma, and lymphocytic leukemia; breast cancer; tumors in the lungs, uterus, and the brain; and reproductive and developmental impairments including increased rate of miscarriages and infertility.

27. Most recently, the Illinois Department of Public Health ("IDPH") conducted an assessment of cancer rates in the population surrounding the Sterigenics facility in Willowbrook, Illinois that has been using and emitting EtO in its industrial sterilization process since 1984. The findings reaffirmed the decades of studies on EtO exposure. The IDPH found elevated cases of:

- Hodgkin's lymphoma;

- Pediatric lymphoma;

- Breast cancer;

- Prostate cancer;

- Pancreatic cancer;

- Ovarian cancer; and

- Bladder cancer.

FILED DATE: 1/23/2023 7:49 PM   2023L000686

28.     Worst of all, ethylene oxide exposure affects the most vulnerable members of the population. The U.S. Environmental Protection Agency ("U.S. EPA") states that "for a single year of exposure to ethylene oxide, the cancer risk is greater for children than for adults. That is because ethylene oxide can damage DNA."

### III.     Defendants Knew That EtO Emissions Were Harmful

29.     By the early 1980s, ethylene oxide's negative health effects were widely disseminated to industrial users and emitters of the chemical. This means that, by the time each Defendant operated its facility—Vantage in 1985, Cosmed in 1993, Isomedix in 2005, and Medline in 2008—it knew or should have known that ethylene oxide is and was always dangerous to human health and that its emissions posed (and continue to pose) a serious risk to area residents.

30.     In October 1985—when Vantage was operating its facility and even before the Waukegan Facility began operations—the U.S. EPA issued a Notice of Intent to list EtO as a hazardous air pollutant. The Notice expressed concern over the "adverse health effects associated with ethylene oxide exposure" and cited the various studies on EtO's carcinogenic health effects. In this Notice, the U.S. EPA also stated that it performed a dispersion model to estimate the concentration levels which the public may be exposed near EtO emission sources and conducted a preliminary risk assessment. The U.S. EPA's preliminary risk assessment found that there was a risk of an additional 47 cases of cancer per year in areas surrounding EtO sterilizers and fumigators and concluded that "ethylene oxide can exist in the ambient air for at least several hours, a sufficient length of time for a significant human exposure to occur."

31.     In July 1986, when considering adding "ethylene oxide (EO) to the list of hazardous air pollutants" the U.S. EPA issued a letter to ethylene oxide users requesting "information about E[t]O sterilization processes, E[t]O emission levels from sterilizers, and emission controls on E[t]O sterilizers at each of your facilities that uses E[t]O for sterilization or fumigation." This

FILED DATE: 1/23/2023 7:49 PM    2023L000686

request came in light of the NIOSH study showing evidence of EtO's carcinogenic, mutagenic, and reproductive hazards and the U.S. EPA's concern with "significant quantities of EO [being emitted] to the atmosphere" and, consequently, affecting individuals living and working near ethylene oxide facilities. The U.S. EPA sent the July 1986 letter to various EtO users and emitters, including Medline Industries. Ultimately, ethylene oxide was included on the original list of hazardous air pollutants identified in the 1990 Amendment to the Clean Air Act.

32.     By 1990 then, ethylene oxide users and emitters were well aware of the dangers of the chemical and legal consequences of emissions. Indeed, in 1990 California Attorney General Van de Kamp brought a lawsuit against four emitters of ethylene oxide alleging that the EtO emitters had exposed an estimated 3 million people living near emissions sites to the potent carcinogen.

33.     The Defendants in this action, however, continued to emit large quantities of ethylene oxide (as discussed below) notwithstanding these known dangers. Cosmed Group, for example, agreed to pay $1.5 million in 2005 for Clean Air Act violations arising from six of its eight facilities, including the Waukegan Facility. According to the U.S. EPA, Cosmed's "violations are thought to have occurred from at least 1998 until 2003" for its 30 tons of *excess* emissions across three facilities combined, including its Waukegan Facility. This violation led Cosmed to sell the Waukegan Facility to Defendant Isomedix. On information and belief, Defendant Isomedix was aware of the previous Clean Air Act violations at the Waukegan Facility at the time it purchased that facility from Cosmed Group.

34.     Prior to taking over the Waukegan Facility, Isomedix merged with American Sterilizer Company ("AMSCO") which had itself already been subject to multiple product liability lawsuits related to EtO. Isomedix's SEC filings state that "[a]s of December 31, 1996, 11 product liability lawsuits related to AMSCO ethylene oxide ("EtO") sterilizers were pending." Many of

the product liability lawsuits alleged that AMSCO was responsible for the plaintiffs' personal injuries resulting from toxic exposure to EtO.

35.     In 1996, the U.S. EPA issued its first model of EtO exposure concentrations for areas surrounding emitters. The 1996 model revealed that Lake County, Illinois residents had significantly greater EtO concentration exposure (0.0085 $\mu g/m^3$) than the national average (0.00295 $\mu g/m^3$), or over 2.8 times the average nationwide concentration. The 95th percentile of modeled ethylene oxide exposure in Lake County (0.02176 $\mu g/m^3$) was also *double* that of the national 95th percentile (0.01051$\mu g/m^3$) of human exposure concentration.

36.     The U.S. EPA repeated its exposure concentration modeling by using reported emissions from 1999. The 1999 air modeling revealed that Lake County residents are at an increased risk of cancer from ethylene oxide and had a risk greater than 1.5 times the national cancer risk from ethylene oxide exposure.

37.     Thus, the potential dangers EtO emissions posed to nearby residents was known, or should have been known, to the Defendants by the time they operated their facilities, and years in advance of the Plaintiff's diagnoses.

**IV.     Lake County Facilities Emit Harmful Ethylene Oxide**

      **a.     The U.S. EPA Estimates High Risks of Cancer in Lake County**

38.     On August 22, 2018, the U.S. EPA released the 2014 National Air Toxics Assessment ("NATA"). The NATA is a screening tool that estimates cancer risks based on emission data in 76,727 census tracts across the United States.

39.     The 2014 NATA revealed 109 census tracts in the United States with cancer risk scores greater than what the U.S. EPA considers "acceptable" limits: 100 cases for every 1 million people exposed to toxic air pollution during their lifetime. Of the 109 census tracts, the 2014

FILED DATE: 1/23/2023 7:49 PM    2023L000686

NATA identified four tracts in northern Illinois as having potential cancer risks of 100 in 1 million or greater from exposure to air toxics:

- Tract 17097862605/8626.05 (1.1 mi² near Waukegan, Park City): **157 per million**;

- Tract 17097862800/8628.00 (1.2 mi² near Waukegan, North Chicago): **131 per million**;

- Tract 17097861504/8615.04 (2.8 mi² near Gurnee, Park City): **123 per million**; and

- Tract 17097862604/8626.04 (1 mi² near Waukegan, Park City): **100 per million**.

40.     The U.S. EPA released a statement that it believes that "largest sources of ethylene oxide emissions in Lake County are Medline, a commercial sterilizer located in Waukegan, and Vantage, a chemical production facility in Gurnee."

41.     The U.S. EPA estimates the lifetime risk of developing cancer due to air toxics in one of these four Lake County tracts near the Waukegan Facility and Vantage facility to be up to five times higher than average the national cancer risk across the U.S. population. Fewer than one percent of the census tracts in the United States have an estimated cancer risk due to air toxics of greater than or equal to 100 in one million.

**b.      The U.S. EPA's Cancer Risk Assessments are Understated**

42.     While the 2014 NATA reveals shockingly high risks of cancer across a large area near the Medline and Vantage facilities, these risks are understated.

43.     The U.S. EPA warns that the NATA is *only* a screening tool that local municipalities can use in order to further investigate the emission sources and potential public health risks. It notes several NATA shortcomings such as the lack of direct measurements of pollutants and data gaps.

44.     The lifetime risk of developing cancer in the aforementioned census tracts is likely significantly higher than what the U.S. EPA estimated in the 2014 NATA. That is because Vantage's 2014 EtO emissions were actually *omitted* from the 2014 NATA. According to the U.S.

FILED DATE: 1/23/2023 7:49 PM   2023L000686

EPA, this was due to a clerical "error" in the National Emissions Inventory which caused Vantage's 2014 EtO emissions to be calculated as zero for purposes of the 2014 NATA.[1] That is, the finding that cancer risk levels were up to five times the national average were based on the assumption that Vantage did not emit a single pound of EtO in 2014. Adding in the thousands of pounds that Vantage actually emitted would only result in ever higher cancer risk levels for the areas surrounding the plant. In short, without the Vantage emissions in its calculations, the cancer risks identified in the 2014 NATA for people living and working in the area were and continue to be dramatically underestimated.

45.     Most importantly, the 2014 NATA is only a model created on an assumed exposure to a facility's reported emissions from a single year: 2014. But the emissions from the Vantage facility and Waukegan Facility have historically been much higher than their reported emissions in 2014.

46.     The U.S. EPA maintains a Toxics Release Inventory ("TRI") which includes annual self-reported emissions data from industrial facilities using EtO and other toxic chemicals which pose a threat to human health and the environment.

47.     A review of TRI data from the U.S. EPA shows EtO emissions from the Vantage facility over the past three plus decades, with a prominent increase of emissions beginning in 2010. *See* Figure 1.

---

[1]     https://www.epa.gov/il/ethylene-oxide-emissions-lake-county-illinois#vantage

FILED DATE: 1/23/2023 7:49 PM    2023L000686



(**Figure 1.**)

48.     While Vantage ultimately reported 2,723 pounds of EtO emissions in 2014, that figure is overshadowed by its nearly 20,000 pounds emissions of EtO during a two-year period in 2010 and 2011. Similarly, Vantage reports emitting EtO in smaller, albeit significant quantities throughout the years:

- 2010: 9,649 pounds
- 2011: 9,709 pounds
- 2012: 3,425 pounds
- 2013: 2,832 pounds

- 2014: 2,723 pounds
- 2015: 1,277 pounds
- 2016: 1,127 pounds
- 2017: 1,547 pounds

49.     It is important to note that majority of Vantage's reported total emissions, as shown above, are the result of estimated "fugitive" emissions. To illustrate, Vantage's fugitive emissions constituted more than 80% of its total emissions in 2010 and 2011. In 2010, Vantage reported 9,649 pounds of total EtO emissions with 8,073 pounds of fugitive emissions and in 2011 Vantage reported 9,709 pounds of total EtO emissions with 7,984 pounds of fugitive emissions. Vantage's fugitive EtO emissions constitute a significant portion of its total emissions:

- 2010: 8,073 pounds
- 2011: 7,984 pounds
- 2012: 2,704 pounds
- 2013: 2,110 pounds

- 2014: 2,003 pounds
- 2015: 551 pounds
- 2016: 414 pounds
- 2017: 810 pounds

FILED DATE: 1/23/2023 7:49 PM    2023L000686

50.     Because of the elusive nature of these fugitive emissions, they are difficult to calculate, and are likely an underestimation. In fact, Vantage entered into a compliance agreement with the Illinois EPA regarding allegations that Vantage failed to test and maintain EtO-filtration equipment—which may have failed to achieve the required reduction in overall uncontrolled EtO emissions—in 2016.

51.     And although Vantage reported reductions in emissions after 2012, the facility's self-reported regulatory data is difficult to independently verify. For example, Vantage reported to another office at the U.S. EPA that during 2014 it released 6,412 pounds of EtO—**not 2,723 pounds as has been recently reported to the U.S. EPA**.

52.     Unfortunately, none of these emissions were used in calculating the cancer risks in the 2014 NATA, as mentioned above.

53.     The U.S. EPA's TRI data shows that emissions from the Waukegan Facility consistently exceeded 4,000 pounds of EtO between 1996 and 2001, including approximately 17,000 pounds between 1999 and 2001. *See* Figure 2.



(**Figure 2.**)

FILED DATE: 1/23/2023 7:49 PM   2023L000686

54.     The TRI data does not display any emissions from the Waukegan Facility after 2005. Nonetheless, according to self-reported emissions data submitted to the Illinois EPA, the Waukegan Facility reported significant EtO emissions:

- 2006: 5,484 pounds
- 2007: 4,980 pounds
- 2008: 3,297 pounds
- 2009: 3,784 pounds
- 2010: 3,750 pounds
- 2011: 3,437 pounds

- 2012: 3,512 pounds
- 2013: 3,069 pounds
- 2014: 3,526 pounds
- 2015: 3,115 pounds
- 2016: 2,993 pounds
- 2017: 2,863 pounds

55.     These self-reported emissions to the Illinois EPA from the Waukegan Facility are *only* controlled emissions and do not include any estimates for fugitive emissions whatsoever.

56.     While Medline, Isomedix, Cosmed, and Vantage have been knowingly releasing EtO for decades, people living and working in the surrounding community were unaware that the Defendants routinely exposed them to a dangerous, toxic, carcinogenic, and mutagenic gas.

### c.     Lake County Begins Air Monitoring

57.     On August 21, 2018, the U.S. Department of Health and Human Services, Agency for Toxic Substances and Disease Registry ("ATSDR") released a report of health risks related to the chemical release of EtO by Sterigenics, a commercial sterilizer 40 miles southwest in Willowbrook, Illinois. The ATSDR concluded that an elevated cancer risk existed for residents and off-site workers in the Willowbrook community surrounding the Sterigenics facility due to EtO.

58.     In the following months, Lake County officials, health departments, state and national elected representatives, and concerned residents repeatedly pleaded with the U.S. EPA and Illinois Environmental Protection Agency ("IEPA") to conduct ambient air monitoring surrounding the Medline and Vantage facilities. Despite these requests, the U.S. EPA and IEPA

15

FILED DATE: 1/23/2023 7:49 PM    2023L000686

refused to conduct ambient air monitoring anywhere in Lake County, much less near the Medline and Vantage facilities.

59.     Finally, on May 20, 2019, local community officials approved an intergovernmental agreement between the Village of Gurnee, City of Waukegan, and Lake County to conduct air monitoring.

60.     The air monitoring began on June 3, 2019 by placing cannisters at four sites near Medline, four sites near Vantage, and two remote locations in Lake County. The Lake County Health Department released partial test results on June 21, 2019 that revealed the presence of EtO in almost every sample. The test results also showed the presence of EtO as far as 4.5 miles from the Medline facility and 4 miles from the Vantage facility. The air monitoring cannisters surrounding Medline and Vantage facilities registered elevated levels of EtO with the highest twenty-four hour reading at ten micrograms of ethylene oxide per cubic meter of air (10 ug/m$^3$).

61.     For reference, the U.S. EPA associates a concentration of ethylene oxide of 0.02 ug/m$^3$ with a 100-in-a-million cancer risk for a lifetime of exposure. The highest recorded EtO concentration surrounding the Medline and Vantage facilities corresponds with a cancer risk as high as 500 times the EPA's 100-in-a-million cancer risk.

62.     On November 26, 2019 the Lake County Health Department received the first set of air monitoring test results from the second phase of air testing that took place between October 26, 2019 and November 2, 2019.

63.     Air test results confirm the June 2019 findings. That is, ethylene oxide has been detected in high concentration in communities around the Medline and Vantage plants, and in remote locations away from both facilities.

64.     Lake County's final phase of air monitoring started in April 2020 and after Medline supposedly installed new air emission controls. The air monitoring canisters registered EtO levels

16

FILED DATE: 1/23/2023 7:49 PM   2023L000686

over 53 times the EPA's 100-in-a-million cancer risk in remote locations and as high as 0.92 μg/m$^3$ near Medline—representing EtO levels 43 times the EPA's 100-in-a-million cancer risk—and as high as 5.49 μg/m$^3$ near Vantage—representing EtO levels over 274 times the EPA's 100-in-a-million cancer risk.

65.     The full extent of EtO emissions throughout Lake County was unknown to those living and working in the area until Lake County released the air monitoring test results. Indeed, the local air monitoring tests revealed a more accurate picture of EtO concentrations and the distance EtO has traveled than the U.S. EPA's NATA report. And the air monitoring tests revealed areas in Lake County with high EtO concentrations that were previously not indicated by the 2014 NATA report.

66.     Even still, the full health impact on those who live and work near the Medline and Vantage facilities is still not entirely known. The Lake County Health Department has requested that the Illinois Department of Public Health conduct a cancer incidence assessment in Lake County.

### FACTS SPECIFIC TO PLAINTIFF KOCH

67.     Plaintiff Kathleen Koch has been a resident of Gurnee since 2005. Her home is located less than a mile from the Vantage facility and 3.6 miles from the Waukegan Facility.

68.     Kathleen consistently inhaled contaminated air in and around her home, and in the Lake County area.

69.     As a result, Kathleen was diagnosed with triple negative breast cancer in October 2014.

70.     At the time of her diagnosis, Kathleen did not have notice that her medical condition was wrongfully caused or that it was caused by the Defendants' emissions of ethylene oxide.

FILED DATE: 1/23/2023 7:49 PM    2023L000686

## COUNT I
### Negligence
### (On Behalf of Plaintiff and Against Defendant Medline)

71.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72.     At all times relevant, Defendant Medline owed a duty to exercise reasonable care in the operation of its facility, including in its emission of EtO, to prevent harm to neighboring Plaintiff. It was reasonably foreseeable that nearby property owners would be exposed to elevated levels of Defendant's EtO emissions, and would face the health risks associated with EtO exposure.

73.     Notwithstanding its duty, Defendant Medline breached its duty in one or more of the following ways:

      a.    Emitting dangerous volumes of EtO into the air from its facility;

      b.    Disregarding safe methods to adequately control EtO emissions from its facility;

      c.    Failing to warn or advise those who live or work in the community, that they were being exposed to EtO;

      d.    Failing to adequately record test results of high levels of EtO;

      e.    Ignoring test results of high levels of EtO;

      f.    Underreporting EtO levels; and

      g.    Subjecting those who live and work near its facility to an elevated cancer risk.

74.     As a proximate result of one of the aforesaid negligent acts or omissions Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Medline Industries, Inc. in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

FILED DATE: 1/23/2023 7:49 PM    2023L000686

## COUNT II
### Willful and Wanton Conduct
### (On Behalf of Plaintiff and Against Defendant Medline)

75.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

76.     At all times relevant, Defendant Medline owed a duty to refrain from willful and wanton conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of the Plaintiff and those living and working in the area surrounding its facility.

77.     Notwithstanding its duty, Defendant Medline breached its duty in one or more of the following ways:

      a.     Emitting dangerous volumes of EtO into the air from its facility;

      b.     Disregarding safe methods to adequately control EtO emissions from its facility;

      c.     Failing to warn or advise those who live or work in the community, that they were being exposed to EtO;

      d.     Failing to adequately record test results of high levels of EtO;

      e.     Ignoring test results of high levels of EtO;

      f.     Underreporting EtO levels; and

      g.     Subjecting those who live and work nearby its facility to an elevated cancer risk.

78.     As a proximate result of one of the aforesaid willful and wanton acts or omissions, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Medline Industries, Inc. in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

FILED DATE: 1/23/2023 7:49 PM    2023L000686

## COUNT III
### Public Nuisance
### (On Behalf of Plaintiff and Against Defendant Medline)

79.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

80.     By the time it began operating the Waukegan Facility in 2008, Defendant Medline knew EtO to be hazardous and harmful to humans.

81.     The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO. The Illinois Constitution guarantees these rights to its citizens. Article XI of the Illinois Constitution of 1970, Environment, Section 1, Public Policy - Legislative Responsibility, provides that:

> The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Article XI of the Illinois Constitution of 1970, Environment, Section 2, Rights of Individuals, provides that:

> Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law.

82.     Defendant Medline's use and emission of EtO from its facility substantially and unreasonably infringes upon and/or transgresses this public right.

83.     Defendant Medline knew that the levels of EtO gas emitted from its facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and well-being of people living and working in the community.

84.     Defendant Medline should have known that the levels of EtO gas emitting from its facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and well-being of persons breathing it.

FILED DATE: 1/23/2023 7:49 PM   2023L000686

85.     Medline's operation, maintenance, and use of its sterilizing facility caused those who live and work in the area surrounding its facility to breathe air containing high levels of EtO on a routine basis, causing a substantially elevated risk of cancer.

86.     As a proximate result of Medline's operation, maintenance, and use of its sterilizing facility, Plaintiff's and the general public's common right to breathe clean air without dangerous levels of carcinogens such as EtO was eliminated and/or severely diminished.

87.     As a proximate result of Medline's operation, maintenance, and use of its sterilizing facility, EtO invaded and caused to be contaminated the areas immediately surrounding and on Plaintiff's residences.

88.     As a proximate result of Medline's use and emission of EtO, Plaintiff was exposed to and inhaled significant quantities of EtO.

89.     As a proximate result of Medline's use and emission of EtO, Plaintiff sustained and will continue to sustain severe and permanent damage to their health due to the emission of EtO.

90.     As a proximate result of Plaintiff's inhalation of EtO from the Medline facility, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Medline Industries, Inc. in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

### COUNT IV
**Ultrahazardous Activity/Strict Liability**
**(On Behalf of Plaintiff and Against Defendant Medline)**

91.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

92.     Medline's use and emission of EtO from its Waukegan Facility constitutes an ultra-hazardous activity.

93. Medline's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. As EtO is carcinogenic, exposure to it at any level is inherently dangerous, and Defendant emitted tons of it into the air around its property.

94. Medline's use and emission of EtO is especially inappropriate given the densely populated residential and commercial area in which its facility is located. Medical device sterilization is not an activity regularly undertaken by individuals in the population.

95. The activities conducted by Medline are exceedingly dangerous as described herein and offer little to no value to the surrounding community.

96. Because the activities of Medline are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

97. As a direct and proximate result of Medline's ultrahazardous activities, Plaintiff was exposed to and inhaled significant quantities of EtO.

98. As a proximate result of Plaintiff's inhalation of EtO from the Medline facility, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Medline Industries, Inc. in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

<u>**COUNT V**</u>
**Negligence**
**(On Behalf of Plaintiff and Against Defendant Isomedix)**

99. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

100. At all times relevant, Defendant Isomedix owed a duty to exercise reasonable care in the operation of its facility, including in its emission of EtO, to prevent harm to neighbors, like Plaintiff. It was reasonably foreseeable that nearby property owners would be exposed to elevated

FILED DATE: 1/23/2023 7:49 PM    2023L000686

FILED DATE: 1/23/2023 7:49 PM   2023L000686

levels of Defendant's EtO emissions, and would face the health risks associated with EtO exposure.

101.    Notwithstanding its duty, Defendant Isomedix breached its duty in one or more of the following ways:

a.    Emitting dangerous volumes of EtO into the air from its facility;

b.    Disregarding safe methods to adequately control EtO emissions from its facility;

c.    Failing to warn or advise those who live or work in the community, that they were being exposed to EtO;

d.    Ignoring test results of high levels of EtO;

e.    Underreporting EtO levels; and

f.    Subjecting those who live and work nearby its facility to an elevated cancer risk.

102.    As a proximate result of one of the aforesaid negligent acts or omissions, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Isomedix Operations, Inc., in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT VI
### Willful and Wanton Conduct
### (On Behalf of Plaintiff and Against Defendant Isomedix)

103.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

104.    At all times relevant, Defendant Isomedix owed a duty to refrain from willful and wanton conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of the Plaintiff and those living and working in the area surrounding its facility.

23

105. Notwithstanding its duty, Defendant Isomedix breached its duty in one or more of the following ways:

    a.    Emitting dangerous volumes of EtO into the air from its facility;

    b.    Disregarding safe methods to adequately control EtO emissions from its facility;

    c.    Failing to warn or advise those who live or work in the community, that they were being exposed to EtO;

    d.    Ignoring test results of high levels of EtO;

    e.    Underreporting EtO levels; and

    f.    Subjecting those who live and work nearby its facility to an elevated cancer risk.

106. As a proximate result of one of the aforesaid willful and wanton acts or omissions, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Isomedix Operations, Inc. in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT VII
### Public Nuisance
### (On Behalf of Plaintiff and Against Defendant Isomedix)

107. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

108. By the time it began operating the Waukegan Facility, Defendant Isomedix knew EtO to be hazardous and harmful to humans.

109. The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO. The Illinois Constitution guarantees these rights to its citizens. Article XI of the Illinois Constitution of 1970, Environment, Section 1, Public Policy - Legislative Responsibility, provides that:

24

FILED DATE: 1/23/2023 7:49 PM    2023L000686

> The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Article XI of the Illinois Constitution of 1970, Environment, Section 2, Rights of Individuals, provides that:

> Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law.

110.    Defendant Isomedix's use and emission of EtO from its facility substantially and unreasonably infringes upon and/or transgresses this public right.

111.    Defendant Isomedix knew that the levels of EtO gas emitted from its facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and well-being of people living and working in the community.

112.    Defendant Isomedix should have known that the levels of EtO gas emitting from its facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and well-being of persons breathing it.

113.    Isomedix's operation, maintenance, and use of its sterilizing facility caused those who live and work in the area surrounding its facility to breathe air containing high levels of EtO on a routine basis, causing a substantially elevated risk of cancer.

114.    As a proximate result of Isomedix's operation, maintenance, and use of its sterilizing facility, Plaintiff's and the general public's common right to breathe clean air without dangerous levels of carcinogens such as EtO was eliminated and/or severely diminished.

115.    As a proximate result of Isomedix's operation, maintenance, and use of its sterilizing facility, EtO invaded and caused to be contaminated the areas immediately surrounding and on Plaintiff's residences.

FILED DATE: 1/23/2023 7:49 PM    2023L000686

116.    As a proximate result of Isomedix's use and emission of EtO, Plaintiff was exposed to and inhaled significant quantities of EtO.

117.    As a proximate result of Isomedix's use and emission of EtO, Plaintiff sustained severe and permanent damage to their health due to the emission of EtO.

118.    As a proximate result of Plaintiff's inhalation of EtO from the Isomedix facility, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Isomedix Operations, Inc. in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

<u>**COUNT VIII**</u>
**Ultrahazardous Activity/Strict Liability**
**(On Behalf of Plaintiff and Against Defendant Isomedix)**

119.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

120.    Isomedix's use and emission of EtO from its Waukegan Facility constitutes an ultra-hazardous activity.

121.    Isomedix's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. As EtO is carcinogenic, exposure to it at any level is inherently dangerous, and Defendant emitted tons of it into the air around its property.

122.    Isomedix's use and emission of EtO is especially inappropriate given the densely populated residential and commercial area in which its facility is located. Medical device sterilization is not an activity regularly undertaken by individuals in the population.

123.    The activities conducted by Isomedix are exceedingly dangerous as described herein and offer little to no value to the surrounding community.

124.    Because the activities of Isomedix are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

FILED DATE: 1/23/2023 7:49 PM   2023L000686

125.    As a direct and proximate result of Isomedix's ultrahazardous activities, Plaintiff was exposed to and inhaled significant quantities of EtO.

126.    As a proximate result of Plaintiff's inhalation of EtO from the Isomedix facility, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Isomedix Operations, Inc. in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

**COUNT IX**
**Negligence**
**(On Behalf of Plaintiff and Against Defendant Vantage)**

127.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

128.    At all times relevant, Defendant Vantage owed a duty to exercise reasonable care in the use of its Gurnee facility, including in its emission of EtO, to prevent harm to neighbors, like the Plaintiff. It was reasonably foreseeable that nearby property owners would be exposed to elevated levels of Defendant's EtO emissions, and would face the health risks associated with EtO exposure.

129.    Notwithstanding its duty, Defendant Vantage breached its duty in one or more of the following ways:

a.    Emitting dangerous volumes of EtO into the air from its facility;

b.    Disregarding safe methods to adequately control EtO emissions from its facility;

c.    Failing to warn or advise those who live or work in the community, that they were being exposed to EtO;

d.    Failing to adequately record test results of high levels of EtO;

e.    Ignoring test results of high levels of EtO;

27

FILED DATE: 1/23/2023 7:49 PM    2023L000686

f.  Underreporting EtO levels; and

g.  Subjecting those who live and work nearby its facility to an elevated cancer risk.

130.  As a proximate result of one of the aforesaid negligent acts or omissions, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Vantage Specialty Chemicals, Inc. in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

<u>**COUNT X**</u>
**Willful and Wanton Conduct**
**(On Behalf of Plaintiff and Against Defendant Vantage)**

131.  Plaintiff incorporates the foregoing allegations as if fully set forth herein.

132.  At all times relevant, Defendant Vantage owed a duty to refrain from willful and wanton conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of the Plaintiff and those living and working in the area surrounding its facility.

133.  Notwithstanding its duty, Defendant Vantage breached its duty in one or more of the following ways:

a.  Emitting dangerous volumes of EtO into the air from its facility;

b.  Disregarding safe methods to adequately control EtO emissions from its facility;

c.  Failing to warn or advise those who live or work in the community, that they were being exposed to EtO;

d.  Failing to adequately record test results of high levels of EtO;

e.  Ignoring test results of high levels of EtO;

f.  Underreporting EtO levels; and

FILED DATE: 1/23/2023 7:49 PM   2023L000686

g.    Subjecting those who live and work nearby its facility to an elevated cancer risk.

134.    As a proximate result of one of the aforesaid willful and wanton acts or omissions, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Vantage Specialty Chemicals, Inc. in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT XI
### Public Nuisance
### (On Behalf of Plaintiff and Against Defendant Vantage)

135.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

136.    By the time it began operations, Defendant Vantage knew EtO to be hazardous and harmful to humans.

137.    The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO. The Illinois Constitution guarantees these rights to its citizens. Article XI of the Illinois Constitution of 1970, Environment, Section 1, Public Policy - Legislative Responsibility, provides that:

> The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Article XI of the Illinois Constitution of 1970, Environment, Section 2, Rights of Individuals, provides that:

> Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law.

FILED DATE: 1/23/2023 7:49 PM   2023L000686

138. Defendant Vantage's use and emission of EtO from its facility substantially and unreasonably infringes upon and/or transgresses this public right.

139. Defendant Vantage knew that the levels of EtO gas emitted from its facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and well-being of people living and working in the community.

140. Defendant Vantage should have known that the levels of EtO gas emitting from its facility would have a toxic, poisonous, and deleterious effect upon the health, safety, and well-being of persons breathing it.

141. Vantage's operation, maintenance, and use of its facility caused those who live and work in the area surrounding its facility to breathe air containing high levels of EtO on a routine basis, causing a substantially elevated risk of cancer.

142. As a proximate result of Vantage's operation, maintenance, and use of its facility, Plaintiff's and the general public's common right to breathe clean air without dangerous levels of carcinogens such as EtO was eliminated and/or severely diminished.

143. As a proximate result of Vantage's operation, maintenance, and use of its facility, EtO invaded and caused to be contaminated the areas immediately surrounding and on Plaintiff's residences.

144. As a proximate result of Vantage's use and emission of EtO, Plaintiff was exposed to and inhaled significant quantities of EtO.

145. As a proximate result of Vantage's use and emission of EtO, Plaintiff sustained and will continue to sustain severe and permanent damage to health due to the emission of EtO.

146. As a proximate result of Plaintiff's inhalation of EtO from the Vantage facility, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

FILED DATE: 1/23/2023 7:49 PM    2023L000686

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Vantage Specialty Chemicals, Inc. in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

## COUNT XII
### Ultrahazardous Activity/Strict Liability
### (On Behalf of Plaintiff and Against Defendant Vantage)

147.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

148.    Vantage's use and emission of EtO from its Gurnee facility constitutes an ultra-hazardous activity.

149.    Vantage's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. As EtO is carcinogenic, exposure to it at any level is inherently dangerous, and Defendant emitted tons of it into the air around its property.

150.    Vantage's use and emission of EtO is especially inappropriate given the densely populated residential and commercial area in which its facility is located. Chemical manufacturing is not an activity regularly undertaken by individuals in the population.

151.    The activities conducted by Vantage are exceedingly dangerous as described herein and offer little to no value to the surrounding community.

152.    Because the activities of Vantage are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

153.    As a direct and proximate result of Vantage's ultrahazardous activities, Plaintiff was exposed to and inhaled significant quantities of EtO.

154.    As a proximate result of Plaintiff's inhalation of EtO from the Vantage facility, Plaintiff Kathleen Koch suffered injuries of a personal and pecuniary nature.

WHEREFORE Plaintiff Kathleen Koch demands judgment against Defendant Vantage Specialty Chemicals, Inc. in an amount in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois.

Respectfully submitted,

**KATHLEEN KOCH,**

Date: January 23, 2023

By: /s/ Angela Reilly
One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Michael Ovca
movca@edelson.com
Amy Hausmann
abhausmann@edelson.com
Angela Reilly
areilly@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312.589.6370
Firm ID: 62075

Brandt Silver-Korn
bsilverkorn@edelson.com
EDELSON PC
150 California St, 18th Floor,
San Francisco, CA 94111
415.212.9300

Daniel Kotin
dan@tkklaw.com
Shawn Kasserman
shawn@tkklaw.com
Loren Leogorreta
loren@tkklaw.com
TOMASIK KOTIN KASSERMAN, LLC
161 North Clark Street, Suite 3050
Chicago, Illinois 60601
312.605.8800
Firm ID: 56323

32

FILED DATE: 1/23/2023 7:49 PM    2023L000686

# **Exhibit 3**

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, LAW DIVISION**

KATHLEEN KOCH,

               Plaintiff,

vs.

VANTAGE SPECIALTY
CHEMICALS, INC.,

               Defendants.

Case No. 2023 L 000686

*In re Medline EtO Release*

π 4231

π 4245

**[PROPOSED] ORDER**

This matter, coming before the Court on Plaintiffs' Motion for Leave to File Under Seal Certain Exhibits to Plaintiffs' Opposition to Vantage Specialty Chemicals, Inc.'s Motion to Strike the Supplemental Expert Report By Dr. Ranajit Sahu, Ph.D.; due notice having been given, the Court being fully advised, it is hereby ordered that:

Plaintiffs are hereby permitted to file the following documents confidentially and under seal:

- Exhibit I (within Envelope #27245875 through Odyssey eFile Illinois)
- Exhibit K (within Envelope #27245876 through Odyssey eFile Illinois)
- Exhibit L (within Envelope #27245876 through Odyssey eFile Illinois)
- Exhibit M (within Envelope #27245876 through Odyssey eFile Illinois)
- Exhibit N (within Envelope #27245876 through Odyssey eFile Illinois)
- Exhibit O (within Envelope #27245876 through Odyssey eFile Illinois)
- Exhibit P (within Envelope #27245876 through Odyssey eFile Illinois)
- Exhibit Q (within Envelope #27245876 through Odyssey eFile Illinois)

Prepared by:
Julien A. Adams
**DOVEL & LUNER**
201 Santa Monica Boulevard, Suite 600
Santa Monica, CA 90401
(310) 656-7066
julien@dovel.com

The Honorable John H. Ehrlich

Judge John H Ehrlich

APR 24 2024

Circuit Court - 2075

# **Exhibit 4**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

Kathleen Koch,                                    )
                                                  )
       Plaintiff,                           )
                                                  )
    v.                                        )    No. 2023 L 686
                                                  )
Medline Industries, Inc., Medline Industries, L.P., )
Charles N. ("Charlie") Mills, James D. ("Jim")    )
Abrams, Steris Isomedix Services, Inc., Cosmed    )
Group, Inc., BASF Corporation, PPG Industries,    )
Inc., and Vantage Specialty Chemicals, Inc.,      )
                                                  )
       Defendants.                          )

## ORDER

    Cosmed Group, Inc. and Isomedix Services, Inc.[1] brought various motions to dismiss certain claims from identified complaints for failing to state a claim, 735 ILCS 5/2-615, or for want of prosecution, 735 ILCS 5/2-1008(b). In various of the plaintiffs' response briefs, they seek leave to file amended complaints. This court has reviewed the parties' submissions and issues its order as presented below.

Facts

    In 1970, Mazer Chemicals, Inc. built a chemical facility in Gurnee, Illinois and operated the facility until 1986. In 1987, PPG Industries, Inc. acquired the Gurnee facility and operated it through 1996. In 1997, BASF Corporation purchased the facility and operated it until 2003. In 2003, Vantage Specialty Chemicals, Inc. purchased the facility and continues to operate it. The plaintiffs' complaints allege serious injuries resulting from exposure to ethylene oxide released from the Gurnee facility over several decades.

Analysis

    A section 2-615 motion to dismiss attacks a complaint's legal sufficiency. *DeHart v. DeHart*, 2013 IL 114137, ¶ 18. Such a motion does not raise affirmative factual defenses but alleges only defects appearing on the face of the complaint. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484-85 (1994). All well-pleaded facts and reasonable inferences arising from the pleadings must be accepted as true,

---

[1] This court understands that sometime in 2005 Steris Isomedix Services, Inc. purchased the assets of Cosmed.

*Doe v. Chicago Bd. of Ed.*, 213 Ill. 2d 19, 28 (2004), but not conclusions unsupported by facts, *Pooh-Bah Enterps., Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). The paramount consideration is whether the complaint's allegations, construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action for which relief may be granted. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 34.

Order

As to the plaintiffs' complaints subject to Cosmed's and Isomedix's motions, this court denies the motions as to arguments based on a lack of duty and proximate causation, *e.g.*, distance from home, work, or school to the Gurnee facility, and cancer subtypes. More specifically:

2020 L 9015 — *Horn*
The motion is granted with prejudice as to Wallace Rice for failure to open an estate following the October 2022 death notice entered in the record.

2022 L 8571 — *Gonyo*
The motion is denied based on Gonyo's allegation that doctors diagnosed her breast cancer in 2017.

2022 L 8572 — *Sullivan*
The motion is denied based on Sullivan's allegation that doctors diagnosed her breast cancer in 2017.

2022 L 8578 — *Durling*
The motion is denied based on Durling's allegation that doctors diagnosed her breast cancer in 2017.

2022 L 8580 — *Wooster*
Cosmed's motion is granted without prejudice as to relevant counts based on Wooster's allegation that doctors diagnosed her breast cancer in 1993. Leave to file an amended complaint is granted if a new diagnosis date may be alleged. Wooster's claims against Isomedix are voluntarily dismissed with leave to replead according to the statute.

2022 L 8634 — *Stewart*
Leave to file an amended complaint is granted.

2022 L 8646 — *Boyer*
The motion is denied based on Boyer's allegation that doctors diagnosed her decedent with leukemia in 2004 and that he died in 2006.

2022 L 8650 — *Fields*  ¶5271  ¶4292
The motion is denied based on Fields' allegation that doctors diagnosed Claypool's pancreatic cancer in 2009. Leave to file an amended complaint is granted.

2022 L 8651 — *Martin*  ¶4292
Leave to file an amended complaint is granted.

2022 L 8670 — *Nolden*  ¶ 4292
Leave to file an amended complaint is granted.

2022 L 8676 — *Martin*  ¶4336
Martin's claims against Isomedix are voluntary dismissed with leave to replead according to the statute.

2023 L 685 — *Sefton*  ¶ 4292
Leave to file an amended complaint is granted.

2023 L 5113 — *Tangonan*  ¶4271  ¶4251
The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 8149 — *Kennedy*  ¶4271  ¶4292
The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9457 — *Barton*  ¶ 4271  ¶4292
The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9459 — *Ayala*  4271  ¶4251
The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9460 — *Carney*  ¶4271  4251
The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

3

2023 L 9465 — *Allison* Π 4271 4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9467 — *Cokley* 4271 4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9470 — *Puciata* 4271 4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9472 — *Dixon* 4271 4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9477 — *Harkim* 4271 4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9480 — *Jackle* 4271 4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9481 — *Higgs* 4271 4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9484 — *Leszczynski* 4271 4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9490 — *Ochoa* 4271 4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9492 — *Morefield*    1 4 27 | 425 |
The motion is granted without prejudice as to relevant counts for lack of a
diagnosis date. Leave to file an amended complaint is granted if a diagnosis date
can be alleged.

2023 L 9497 — *Winn*    427 |   425 |
The motion is granted without prejudice as to relevant counts for lack of a
diagnosis date. Leave to file an amended complaint is granted if a diagnosis date
can be alleged.

2023 L 9505 — *Soranno*    427 |   425 |
The motion is granted without prejudice as to relevant counts for lack of a
diagnosis date. Leave to file an amended complaint is granted if a diagnosis date
can be alleged.

2023 L 9507 — *Swanson*    427 |   425 |
The motion is granted without prejudice as to relevant counts for lack of a
diagnosis date. Leave to file an amended complaint is granted if a diagnosis date
can be alleged.

2023 L 9510 — *Strong*    427 |   425 |
The motion is granted without prejudice as to relevant counts for lack of a
diagnosis date. Leave to file an amended complaint is granted if a diagnosis date
can be alleged.

2023 L 9567 — *Satenstein*    4 27 |   425 |
The motion is granted without prejudice as to relevant counts for lack of a
diagnosis date. Leave to file an amended complaint is granted if a diagnosis date
can be alleged.

2023 L 9650 — *Collins*    427 |   425 |
The motion is granted without prejudice as to relevant counts for lack of a
diagnosis date. Leave to file an amended complaint is granted if a diagnosis date
can be alleged.

2023 L 9651 — *Bell*    427 |   425 |
The motion is granted without prejudice as to relevant counts for lack of a
diagnosis date. Leave to file an amended complaint is granted if a diagnosis date
can be alleged.

5

2023 L 9652 — *Gill*    4271    4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9704 — *Vice*    4271    4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9756 — *McClintock*    4271    4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 9951 — *Landgrebe*    4271    4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 10145 — *Goldsby*    4271    4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 10329 — *Bolden*    4271    4551

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

2023 L 10373 — *Czerwinski*    4271    4251

The motion is granted without prejudice as to relevant counts for lack of a diagnosis date. Leave to file an amended complaint is granted if a diagnosis date can be alleged.

*John H. Ehrlich*
John H. Ehrlich, Circuit Court Judge

Judge John H Ehrlich

**MAY 0 6 2024**

Circuit Court - 2075

6

# **Exhibit 5**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

Kathleen Koch,                                      )
                                                    )
              Plaintiff,                            )
                                                    )
      v.                                            )    No. 2023 L 686
                                                    )
Medline Industries, Inc., Medline Industries, L.P.,  )
Charles N. ("Charlie") Mills, James D. ("Jim")      )
Abrams, Steris Isomedix Services, Inc., Cosmed      )
Group, Inc., BASF Corporation, PPG Industries,      )
Inc., and Vantage Specialty Chemicals, Inc.,        )
                                                    )
              Defendants.                           )

## MEMORANDUM OPINION AND ORDER

A plaintiff may defeat a defendant's affirmative defense based on an affidavit by presenting a counteraffidavit or by showing there exists a fundamental question of material fact as to an essential element of the cause of action. In this instance, the plaintiffs did not supply a counteraffidavit, and their other arguments do not suggest an actual injury allegedly caused by the defendant's conduct. For those reasons, the defendant's motion to be dismissed from the identified complaints is granted with prejudice.

Facts

The motion to dismiss brought by Vantage Specialty Chemicals, Inc. concerns the following plaintiffs' cases: Mary Marquez Barrera, 2022 L 8644; Mildred Corder, 2022 L 8669; George and James Martin, 2022 L 8676; William Huston, 2022 L 8677; and Laura Wooster, 2022 L 8580. The plaintiffs' complaints allege serious injuries resulting from exposure to ethylene oxide released from a facility located in Gurnee, Illinois. On 1 December 2023, Vantage filed a motion to dismiss the five complaints because they claimed only pre-2003 injuries. Vantage argued that the plaintiffs' claims were baseless as a matter of fact and law because Vantage did not own the Gurnee facility before 30 June 2003. Rather than respond, the plaintiffs presented motions to file amended complaints, which this court granted on 8 February 2024.

Each of the plaintiffs' amended complaints added two new defendants, BASF Corporation and PPG Industries, Inc. Each amended complaint alleges that PPG acquired the Gurnee facility in 1987 and operated it through 1996. The amended

2023L686

complaints further allege that BASF operated the Gurnee facility from 1997 until 2003. It is undisputed that Vantage has operated the Gurnee facility since 2003.

Marquez Barrera's amended complaint alleges that doctors diagnosed her decedent's non-Hodgkin's lymphoma in 1996. Corder's amended complaint alleges that doctors diagnosed her decedent's breast cancer in 1995. Corder also alleges that doctors diagnosed her own stomach cancer in 2006 and breast cancer in 2008, She alleges that she lived near the Gurnee facility between 1985 and 2000 but fails to allege that she lived anywhere in Lake County between 2000 and 2013. Martin's amended complaint alleges that doctors diagnosed his decedent's leukemia in 1996. Huston's amended complaint alleges that doctors diagnosed his lymphoma in 1999. Wooster's amended complaint alleges that doctors diagnosed her breast cancer in 1993. None of the amended complaints alleges injuries diagnosed after June 2003.

On 17 June 2003, BASF Corporation entered into an asset sale and purchase agreement with Lambent Technologies Corporation and Petroferm Incorporated to become effective on 30 June 2003.[1] The agreement called for the sale of BASF's Gurnee facility in which BASF had engaged in the manufacture and shipping of chemical products. In a section entitled "Assumption of Liabilities: Costs and Obligations," the agreement explicitly provided that:

> EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED FOR . . . , PURCHASER SHALL NOT ASSUME, OR IN ANY WAY BE LIABLE OR RESPONSIBLE FOR, ANY LIABILITIES, OBLIGATIONS OR DEBTS OF BASF OR IN ANY WAY RELATED TO PURCHASED ASSETS OR EQUIPMENT INCLUDING, WITHOUT LIMITATION, THE GURNEE SITE, OF ANY TYPE OR NATURE, INCLUDING WITHOUT LIMITATION . . . LIABILITIES RELATING TO CLAIMS UNDER ANY ENVIRONMENTAL AND SAFETY LAWS OR REGULATIONS . . . [or] TORT CLAIMS ASSERTED AGAINST BASF . . . WHICH ARE BASED ON ACTS OR OMISSIONS OF BASF OCCURRING ON, BEFORE OR AFTER THE CLOSING OR RELATING TO CONDITIONS AT OR BENEATH THE GURNEE SITE PRIOR TO CLOSING.

(Agreement, ¶ 3.6(b)) In another section entitled, "Retained Liabilities," the agreement also included the following provision:

> BASF agrees to retain and pay or discharge when due all of BASF's other liabilities and obligations relation to the Gurnee Site and Purchased Assets . . . , including, without limitation: . . . any liability or obligation relating to or arising out of any violations of any Laws, prior to the Closing Date, including without limitation, any Environmental and Safety Laws; . . . any

---

[1] Lambent and Petroferm were related corporations that later changed their names to reflect ownership by Vantage Specialty Chemicals, Inc.

2023L686

liabilities or obligations of BASF arising out of existing claims or litigation whether or not set forth in the Disclosure Statement, or any other claims or litigation arising out of, or relating to, an occurrence or event happening before the Closing Date; . . . [and] any other liabilities or obligations of BASF including any liability directly or indirectly arising out of or relating to the operation of the Gurnee Site or ownership of the Purchased Assets prior to the Closing Date whether contingent or otherwise fixed or absolute, known or unknown, matured, or unmatured, present, future or otherwise, except for the Assumed Liabilities.

(Agreement, ¶ 3.7(e), (l) & (m))

Vantage's motion to dismiss is supported by Mark Valentino's affidavit, which is attested to pursuant Code of Civil Procedure section 1-109 by Vantage's counsel. 735 ILCS 5/1-109. Valentino is Vantage's chief financial officer who states that he has reviewed the asset purchase agreement and other available records. Valentino states that Lambent and Petroferm did not hold any ownership interest in the Gurnee facility before 30 June 2003. He further states that, to the best of his knowledge, BASF and the purchasers did not share officers, directors, or owners. He further explains documents related to the asset purchase agreement, including a special warranty deed, a Uniform Commercial Code financing statement, correspondence sent to the Illinois Environmental Protection Agency about the change in ownership as well as the IEPA's acknowledgment of the change, and various construction permits.

The plaintiffs did not submit a counteraffidavit.

<u>Analysis</u>

Vantage brings its motion to dismiss pursuant to the Code of Civil Procedure. 735 ILCS 5/2-619. A section 2-619 motion to dismiss authorizes the involuntary dismissal of a claim based on defects or defenses outside the pleadings. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485 (1994). A court considering a section 2-619 motion must construe the pleadings and supporting documents in a light most favorable to the nonmoving party. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). All well-pleaded facts contained in the complaint and all inferences reasonably drawn from them are to be considered true. *See Calloway v. Kinkelaar*, 168 Ill. 2d 312, 324 (1995). A court is not to accept as true those conclusions unsupported by facts. *See Patrick Eng., Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31.

One of the enumerated grounds for a section 2-619 motion to dismiss is that "affirmative matter" avoids the legal effect of or defeats the claim. 735 ILCS 5/2-619(a)(9). Affirmative matter is something in the nature of a defense negating the cause of action completely or refuting crucial conclusions of law or conclusions of

2023L686

material fact contained in or inferred from the complaint. *Illinois Graphics*, 159 Ill. 2d at 485-86. The statute requires that affirmative matter be supported by affidavit unless the affirmative matter is apparent of the face of the complaint. *Id.* A defendant satisfies its burden of going forward by presenting an affidavit supporting its position. *Hollingshead v. A.G. Edwards & Sons, Inc.*, 396 Ill. App. 3d 1095, 1101-02 (5th Dist. 2009). At that point, "the burden then shifts to the plaintiff, who must establish that the affirmative defense asserted either is 'unfounded or requires the resolution of an essential element of material fact before it is proven.'" *Epstein v. Chicago Bd. of Ed.*, 178 Ill. 2d 370, 383 (1997) (quoting *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116). A plaintiff may establish this question by presenting "affidavits or other proof." 735 ILCS 5/2-619(c). A plaintiff's failure to submit a counteraffidavit may be fatal to the plaintiff's cause of action because the failure to challenge or contradict a defendant's affidavit is an admission of the facts stated in the defendant's affidavit. *Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Serv.*, 2016 IL App (1st) 151659, ¶ 22; *Fayezi v. Illinois Cas. Co.*, 2016 IL App (1st) 150873, ¶ 44.

Vantage's central argument relies fundamentally on the legal effect of the 2003 asset purchase agreement. Generally, a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the selling corporation. *Vernon v. Schuster*, 179 Ill. 2d 338, 344-45 (1997) (citing cases). The potential harshness of this general rule is softened by four exceptions: "(1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *Id.* at 345.

The plaintiffs did not attach a counteraffidavit to their joint response brief. Absent a counteraffidavit raising a question as to the legal effect of the asset purchase agreement on Vantage's pre-2003 liability, the plaintiffs implicitly concede that they have no cause of action against Vantage for injuries diagnosed before 30 June 2003. That conclusion does not, however, end the inquiry because the plaintiffs could defeat Vantage's motion if it is necessary to resolve an essential element of material fact. *Epstein*, 178 Ill. 2d at 383. In this regard, the plaintiffs argue that their amended complaints are valid against Vantage as to post-2003 occurrences because: (1) tortfeasors are jointly and severally liable when their acts combine to produce a single injury; (2) the plaintiffs run the risk of cancer reoccurrence and have a fear of that risk; (3) the plaintiffs have future medical monitoring damages; and (4) the plaintiffs have a public nuisance cause of action.

As to the plaintiffs' first argument, it is unquestionably true that tortfeasors are jointly and severally liable if their negligence combines to produce a single, indivisible injury. *Padgett v. A & M Insulation Co.*, 266 Ill. App. 3d 320, 322 (3d

2623L686

Dist. 1994). Presently, however, the factual predicate of a single, indivisible injury is missing. The only injuries identified by the plaintiffs in their amended complaints are their or their decedents' cancer diagnoses that occurred before 30 June 2003. If the plaintiffs had pleaded a post-2003 injury they would potentially be able to argue the existence of a single, indivisible injury. Without that essential fact, the plaintiffs' first argument suggests an amended complaint that is, at this point, premature.

As to the second argument, the plaintiffs have not pleaded that they have an increased future risk of cancer reoccurrence. Further, they selectively quoted various cases to reach the conclusion that their increased risk of cancer reoccurrence is a cognizable injury. The case on which they rely, *Berry v. City of Chicago*, 2020 IL 124999, does not say that. Rather, in *Berry*, the court wrote that:

> In addition to *Williams* [*v. Manchester*, 228 Ill. 2d 404 (2008)], several other decisions from this court recognize that an increased risk of harm is not, for purposes of tort law, an injury. As we recently observed, "The wrongful or negligent act of the defendant, by itself, gives no right of action to anyone. Until the defendant's wrongful or negligent act produces injury to the plaintiff's interest by way of loss or damage, no cause of action accrues."

*Id.* at ¶ 35 (quoting *Lewis v. Lead Indus. Ass'n*, 2020 IL 124107, ¶ 29 and citing other cases). The reason is that, "[a]lmost anything that a person does while living and working in the world can create a risk of harm to others. The long-standing and primary purpose of tort law is not to punish or deter the creation of this risk but rather to compensate victims when the creation of risk tortiously manifests into harm." *Id.* at ¶ 33 (quoting Oliver Wendell Holmes Jr., *The Common Law* 144 (1881)). In sum, "[a] plaintiff who suffers bodily harm caused by a negligent defendant may recover for an increased risk of future harm as an element of damages, but the plaintiff may not recover solely for the defendant's creation of an increased risk of harm." *Id.* at ¶ 38 (citing *Williams*, 228 Ill. 2d at 425). Again, it is pertinent that the plaintiffs' argument is misdirected against Vantage. Any risk of future cancer reoccurrence lies with the only tortfeasors potentially responsible for the current cancer diagnoses—BASF and PPG—based on their ownership of the Gurnee facility before 30 June 2003. This argument is, therefore, also premature because Vantage has not yet created an identified risk that has injured the plaintiffs.

As to the related argument that the plaintiffs may recover for their present fear of future cancer reoccurrence, the plaintiffs rely on *Griffin v. Keene Corp.* 1990 U.S. Dist. LEXIS 7424, at *2 (N.D. Ill. June 18, 1990). While *Griffin* may correctly state one aspect of Illinois law, it does not tell the whole story because not all negligently caused fears are compensable. *Doe v. Northwestern Univ.*, 289 Ill. App.

2023L686

3d 39, 47 (1st Dist. 1997). Illinois courts require medically verifiable manifestations of severe emotional distress. *Id.* In *Allen v. Otis Elevator Co.*, for example, the court held that foreseeable fear and distress did not reach a degree of severity that justified tort compensation absent functional, emotional, psychiatric and behavioral disorders, extreme depression, or prolonged and continuing mental disturbances. 206 Ill. App. 3d 173, 182 (1st Dist. 1990). Even if the plaintiffs here had pleaded with greater specificity, it would not be enough. At present, their fear of cancer reoccurrence is a consequence of BASF's and PPG's alleged pre-2003 negligence.

The plaintiffs' third argument as to future medical monitoring fails for the same reason as the second argument. The plaintiffs are, once again, not entitled to damages until Vantage's wrongful or negligent act has produced injuries to the plaintiff's interests. *Williams*, 228 Ill. 2d at ¶ 35.

Finally, the plaintiffs fourth argument—the public nuisance claim—raises distinct concerns. An action for public nuisance plainly exists under certain circumstances. As explained:

> A sufficient pleading in a cause of action for public nuisance will allege a right common to the general public, the transgression of that right by the defendants, and resulting injury. *Feder v. Perry Coal Co.*, 279 Ill. App. 314, 318 (1935). Because the element of "resulting injury" requires two separate findings—actual injury and a cause creating this result—the complaint must allege four distinct elements of a public nuisance claim: the existence of a public right, defendants' substantial and unreasonable interference with that right, proximate cause, and injury.

*Young v. Bryco Arms*, 213 Ill. 2d 433, 441 (2004). Here, the plaintiffs' actual injuries and their cause arise from BASF's and PPG's pre-2003 conduct. There is no alleged actual injury yet arising from Vantage's post-2003 alleged negligence. Again, permitting the plaintiffs to file amended complaints at this time would be premature as to Vantage.

In a coda to their response brief, the plaintiffs request the opportunity to amend their amended complaints. A ruling on a request to amend a complaint is a matter within a court's discretion. *See In re Estate of Hoover*, 155 Ill. 2d 402, 416 (1993). Of course, a party's failure to present a proposed amended complaint significantly diminishes a court's ability to determine whether a proposed amendment would state a viable cause of action. *Illinois Non-Profit Risk Mgmt. Ass'n v. Human Serv. Cntr. of Southern Metro-East*, 378 Ill. App. 3d 713, 726 (4th Dist. 2008). In this instance, only Barrera and Huston provided a proposed first amended complaint.

6

2023L686

When faced with a request for an amended pleading, a court generally considers whether: (1) an amended pleading would cure the defective pleading; (2) an amended pleading would surprise or prejudice the opposing party; (3) an amendment was timely filed; and (4) the movant had previous opportunities to amend. *Loyola Academy v. S&S Roof Maint., Inc.*, 146 Ill. 2d 263, 273 (1992). Here, an amended pleading would not cure the plaintiffs' pleading defect because they cannot yet point to an injury caused by Vantage's post-2003 conduct. Further, an amended pleading at this point would prejudice Vantage by requiring it to, once again, file a motion to dismiss for the plaintiffs' lack of an actual injury and causation. The third and fourth factors are not in play because, as noted above, the plaintiffs are not foreclosed from filing suit against Vantage should an actual injury and causation arise from Vantage's post-2003 conduct.

Conclusion

For the reasons presented above, it is ordered that:

1. Vantage's motion to dismiss is granted; and
2. Vantage Specialty Chemicals, Inc. is dismissed with prejudice from the following cases:
   2022 L 8644 — *Barrera*
   2022 L 8669 — *Corder*
   2022 L 8676 — *Martin*
   2022 L 8677 — *Huston*
   2022 L 8580 — *Wooster*.

John H. Ehrlich, Circuit Court Judge

Judge John H Ehrlich

MAY 0 6 2024

Circuit Court - 2075

7

# **Exhibit 6**

(12/01/20) 351*0

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

Kcch  Cathleen

**Plaintiff,**

v.

No. 23 L 686

VANTage  Specialty

**Defendant,**

## ORAL ORDER

☒ Motion stricken or withdrawn from call.

4284 / 4384

☐ Case continued for Trial on _____, _____ at _____ a.m./p.m.   821

☐ Jury selection continued to _____, _____ at _____ a.m./p.m.   8210

☐ Jury to separate and reconvene on _____, _____ at _____ a.m./p.m. 820

**Oral Order of Court**

ENTERED:

ENTER

MAY 06 2024

KATHRYN FLANAGAN #287

_____
**Judge**

**Judge's No.**

# **Exhibit 7**

Sign Envelope ID: 70032E56-09AD-4724-A2AD-D1E56372559F

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT – LAW DIVISION

KATHLEEN KOCH et al.,

                    Plaintiffs,

vs.

COSMED GROUP, INC., et al.,

                    Defendants.

Case No. 2023-L-000686

*In re Medline EtO Litigation*

Judge John H. Ehrlich

## HIPAA QUALIFIED PROTECTIVE ORDER
## FOR MEDICAL AND MENTAL HEALTH RECORDS

4367

      This cause coming to be heard on the agreement of all parties for the entry of a Qualified

Protective Order pursuant to the Health Information Portability and Accountability Act of 1996

("HIPAA"), due notice having been given, and the Court being fully advised in the premises:

      The Court finds that this Court Order is necessary to:

1.     Protect a party's right to privacy as guaranteed by Article I, Section 6 of the Illinois constitution for each party in this lawsuit;

2.     Protect a party's right to remedy as guaranteed by Article I, Section 12 of the Illinois constitution for each party in this lawsuit;

3.     Ensure the parties' compliance with HIPAA and its accompanying rules and regulations governing the disclosure, maintenance, use, and disposal of protected health information (PHI);

4.     Specify that, for purposes of this HIPAA Protective Order, "protected health information" shall have the same scope and definition as set forth in 45 C.F.R. §160.103 and §164.501. "Protected health information" (PHI) includes, but is not limited to: health information, including demographic information, relating to either (a) the past, present or future physical or mental condition of an individual; (b) the provision of care of an individual; or (c) the payment for care provided to an individual, which identifies the individual or which reasonably could be expected to identify the individual;

5.     Require covered entities, as defined in 45 C.F.R. § 160.103, to disclose a party's PHI expressly provided in this Order as required pursuant to 45 C.F.R. § 164.512(e) for use in this litigation without a separate disclosure authorization; however, nothing in this Order relieves any

covered entity, party, their attorneys, agents, or representatives, consultants, other witnesses, and other personnel who request, receive, and/or review documents containing PHI, from complying with the additional requirements of the following statutes and regulations:

- Illinois Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1, *et. seq.;*

- AIDS Confidentiality Act, 410 ILCS 305/1, *et. seq.*;

- Alcoholism and Other Drug Abuse and Dependency Act, 20 ILCS 301/30-5, *et. seq.*;

- Federal statute or regulation protecting certain drug and alcohol records, 42 U.S.C. §§ 290dd-3, 290ee-3; 42 C.F.R. Part 2;

- Genetic Information Privacy Act, 410 ILCS 512/15;

- Medical Patient Rights Act, 410 ILCS 50/1, *et. seq.*;

- Physician and Patient, 735 ILCS 5/8-802(2) and (4);

- Any and all other applicable state and federal laws regulating or governing the request, review, or disclosure of PHI pertaining to Plaintiff, to the extent and subject to the conditions outlined herein;.

6.    Authorize the parties and their attorneys to receive, subpoena, and transmit PHI pertaining to the Plaintiff, to the extent and subject to the conditions outlined herein;

7.    Permit the parties and their attorneys to use or disclose the Plaintiff's PHI for purposes of prosecuting or defending this action, including appeals in this case. This includes, but is not necessarily limited to, disclosure to their attorneys, experts, consultants, court personnel, court reporters, copy services, trial consultants, and other entities or persons involved in the litigation process;

8.    Permit the parties and their attorneys to receive the Plaintiff's PHI from covered entities, business associates, and parties in the litigation, provided that the covered entities, business associates, and parties in this litigation disclose only the PHI expressly authorized in this Order;

9.    Prohibit the parties and any other persons or entities from using or disclosing the Plaintiff's PHI for any purpose other than the litigation or proceeding for which it was requested as required by 45 C.F.R. 164.512(e)(1)(v)(A);

10.    Require the return of the Plaintiff's PHI to the covered entity or the destruction of the information at the end of the litigation or proceeding as required by 45 C.F.R. 164.512(e)(1)(v)(B).

11.    Permit the parties and their attorneys to receive and permit the covered parties to disclose PHI that would otherwise be protected by the Illinois Mental Health and Developmental

Sign Envelope ID: 70032E56-09AD-4724-A2AD-D1E56372559F

Disabilities Confidentiality Act pursuant to 740 ILCS 110/5. In accordance with the requirements of 740 ILCS 110/5(b), a party disclosing PHI further stipulates that she or he:

a. Understands that he or she has the right to revoke this consent at any time. Such revocation must be made expressly and in writing;

b. Understands that in accordance with paragraph (7) below, this consent expires on the calendar date upon which the above captioned lawsuit concludes, as indicated by a court entered order of dismissal;

c. Understands and consents that the findings of the Court enumerated in paragraphs (1) – (11) are applicable to the disclosure of PHI that would otherwise be protected by the Illinois Mental Health and Developmental Disabilities Confidentiality Act.

**THE COURT ORDERS AS FOLLOWS:**

1. The PHI of any party in this lawsuit may not be disclosed for any reason other than as enumerated in paragraph 4 below, without that party's prior written consent or an order of this Court, specifying the scope of the PHI to be disclosed, the recipients of the disclosed PHI, and the purpose of the disclosure. No consent to disclosure shall constitute a consent to re-disclose unless so specified in detail.

2. Pursuant to 45 C.F.R. §164.512(e)(1)(i), no subpoenas for information or tangible items pertaining to the Plaintiff shall be served by Defendant(s) without this Order, unless by prior agreement of counsel.

3. Pursuant to 740 ILCS 110/10(d) of the Illinois Mental Health and Developmental Disabilities Confidentiality Act, provided such subpoenas comply with the requirements of this Order and 740 ILCS 110/1 et seq., such subpoenas shall be issued returnable directly to the party issuing the subpoena.

4. The parties to this case are hereby authorized to issue subpoenas for PHI that would otherwise be protected by the Genetic Information Privacy Act, 410 ILCS 512/15;

5. The only disclosures permitted by this Order are:

A. As ordered by this or another court or arbitral body or by subpoena with reasonable notice to the parties and their attorneys for purposes of subrogation, reimbursement, or payment of liens arising out of or related to this lawsuit;

B. To the parties to this lawsuit and their agents; and

C. As necessary to comply with any other federal or state laws, rules, or regulations, but only with the party's express consent and entry of an appropriate court order.

6. Any covered entity over which this Court has jurisdiction that fails or refuses to disclose PHI in accordance with this Order may be subject to all sanctions authorized by the Code of Civil Procedure and the Illinois Supreme Court Rules. The Law Division Notice Regarding HIPAA Authorizations is incorporated herein as "Exhibit A."

7.      A party to this lawsuit may provide PHI to an undisclosed consulting expert or controlled expert witness as defined in Illinois Supreme Court Rule 213(f)(3) but only after receiving written acknowledgment that each such expert or witness agrees to be bound by the terms of this Order. Counsel shall take all other reasonable steps to ensure that person(s) receiving Plaintiff's PHI do not use or disclose such information for any purpose other than this litigation.

8.      Within sixty (60) days after the Conclusion of the Litigation, including appeals, the party or parties, their attorneys, insurance companies and any person or entity in possession of the Plaintiff's PHI received pursuant to this Order, shall return the Plaintiff's PHI to the covered entity or entities or destroy any and all copies of PHI pertaining to the Plaintiff, including any electronically stored copies or images, except that counsel are not required to secure the return or destruction of PHI submitted to the Court. "Conclusion of the Litigation" shall be defined as the point at which final orders disposing of the entire case as to any Defendant have been entered, or the time at which all trial and appellate proceedings have been exhausted as to any Defendant.

9.      The parties are prohibited from including or attaching PHI to any document filed with the Clerk of the Circuit Court without leave of Court. PHI necessary for the Court's consideration of any matter must be provided separately.

10.     Other than the party whose PHI is at issue or that party's attorneys, no parties or their agents are permitted to request, obtain, or disclose PHI or any other type of medical bills, records or related information other than through the formal discovery procedures authorized by the Code of Civil Procedure, the Illinois Supreme Court Rules, and orders of this Court.

11.     All requests by or on behalf of any Defendant for PHI, including but not limited to subpoenas, shall be accompanied by a complete copy of this Order. The parties, including their insurers and counsel, are prohibited from using or disclosing PHI for any purpose other than this litigation. "Disclose" shall have the same scope and definition as set forth in 45 C.F.R. §106.103: "the release, transfer, provision of, access to, or divulging in any manner, of information outside the entity holding the information."

12.     If any party utilizes the services of a third party to issue any subpoena for the PHI of the Plaintiff, it shall be the requesting party's obligation to ensure that this Order is complied with by the third party, including that the issuing subpoena and any accompanying correspondence comply with this Order.

13.     This Court retains jurisdiction of the case after judgment or dismissal, for the purposes of ensuring compliance with this Order.

DocuSign Envelope ID: 70032E56-09AD-4724-A2AD-D1E56372559F

Dated: _2/9/2024_____

Kent Rouse

Plaintiff Name (Printed)

Dated: _2/9/2024_____

Plaintiff / Representative Signature

Dated: _2/9/2024_____

Plaintiff's Attorney Signature

Dated: _____

Defendant's Attorney Signature

ENTERED:

Circuit Court Judge                                              Date

Judge John H. Ehrlich

MAY 08 2024

Circuit Court 2075

# LAW DIVISION
## NOTICE REGARDING HIPAA AUTHORIZATIONS

As of November 1, 2016, all medical care providers, *i.e.*, individuals and entities, are required to comply with all validly issued subpoenas for protected health information (PHI), accompanied by a qualified protective order, entered by a court pursuant to the Health Insurance Portability and Accountability Act.

Medical care providers are **prohibited** from requiring execution of written authorizations for the release of PHI, **in addition to or in lieu of**, a court-entered qualified protective order. The federal regulation governing the disclosure of PHI in judicial proceedings does not impose such a burden. *See* 45 C.F.R. 164.512(e)(1)(i).

Medical care providers who continue to require such authorizations may be sanctioned on the motion of the court that issued the subpoena or the party that served it.

Exhibit A

# **Exhibit 8**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

KATHLEEN KOCH

     Plaintiff,

     v.

MEDLINE INDUSTRIES, INC.
STERIS ISOMEDIX SERVICES, INC.,
COSMED GROUP, INC. and
VANTAGE SPECIALTY CHEMICALS, INC.,

     Defendants.

VANTAGE SPECIALTY CHEMICALS, INC.

     Third Party Plaintiff,

     v.

PPG INDUSTRIES, INC. and
BASF CORPORATION

     Third Party Defendants.

No. 2023-L-000686

*In Re: Medline ETO Release*

Judge John H. Ehrlich

The Third-Party Complaint Concerns the
following cases:

2024L001467
2023L009454
2023L009455
2023L009562
2023L009586
2023L009641
2022L008582
2023L009950
2023L009456
2023L012048

*4371*
*4230*  *4234*
*6/11*  *4283*

| | | | | |
|---|---|---|---|---|
| 2022L008415 | 2023L009479 | 2022L008597 | 2023L009579 | 2022L008567 |
| 2023L009563 | 2023L012051 | 2024L001586 | 2022L008594 | 2023L009508 |
| 2020L011571 | 2023L012039 | 2023L002119 | 2022L008602 | 2023L012805 |
| 2023L000684 | 2022L008656 | 2023L000686 | 2023L009570 | 2023L009511 |
| 2023L001372 | 2022L008643 | 2024L000088 | 2023L009583 | 2022L008688 |
| 2023L010329 | 2024L000255 | 2023L008149 | 2022L008612 | 2023L009572 |
| 2022L008646 | 2022L008577 | 2024L002125 | 2023L012288 | 2022L008570 |
| 2019L012798 | 2023L010069 | 2023L010827 | 2023L002112 | 2022L008572 |
| 2023L009464 | 2023L009752 | 2022L008657 | 2023L009581 | 2023L009507 |
| 2022L008587 | 2023L009469 | 2022L008615 | 2023L009493 | 2023L001646 |
| 2023L009757 | 2023L000898 | 2022L008608 | 2022L008559 | 2023L009596 |
| 2023L009463 | 2023L011677 | 2023L010146 | 2024L001527 | 2023L012614 |
| 2023L009587 | 2022L008584 | 2023L010147 | 2023L009491 | 2023L010828 |
| 2022L009380 | 2023L009475 | 2023L009951 | 2023L009488 | 2023L002124 |
| 2023L009566 | 2023L010145 | 2023L009565 | 2023L009462 | 2023L009653 |
| 2022L008619 | 2022L008571 | 2023L009584 | 2023L009564 | 2020L009069 |
| 2023L009460 | 2023L009580 | 2023L012124 | 2022L008611 | 2023L003427 |
| 2023L010355 | 2023L009658 | 2023L012821 | 2023L007590 | 2023L002199 |

| | | | | |
|---|---|---|---|---|
| 2023L012667 | 2023L010093 | 2022L006655 | 2023L009482 | 2024L001175 |
| 2024L001582 | 2023L009949 | 2023L009571 | 2022L008568 | 2023L009509 |
| 2023L009754 | 2023L009483 | 2023L002182 | 2023L009577 | 2023L009704 |
| 2023L009468 | 2022L008581 | 2023L009974 | 2020L009015 | 2024L001422 |
| 2023L009573 | 2023L008152 | 2023L010144 | 2022L008604 | 2024L001529 |
| 2022L008649 | 2023L010826 | 2024L001723 | 2022L008647 | 2023L012766 |
| 2024L001228 | 2023L009477 | 2023L012290 | 2023L012285 | 2023L000899 |
| 2023L009559 | 2022L008593 | 2023L002203 | 2022L008586 | 2023L009504 |
| 2024L001495 | 2023L010160 | 2023L009699 | 2023L009694 | 2023L009952 |
| 2022L008624 | 2023L010328 | 2024L001526 | 2023L013098 | 2022L008623 |
| 2022L008642 | 2023L005926 | 2024L001172 | 2022L008678 | 2023L009500 |
| 2024L000256 | 2023L009758 | 2023L002118 | 2023L012287 | 2023L009499 |
| 2023L009474 | 2023L009648 | 2023L009756 | 2023L009590 | 2022L008613 |
| 2022L008592 | 2022L008713 | 2023L009485 | 2023L012501 | 2023L010003 |
| 2023L009560 | 2023L010094 | 2023L009575 | 2023L010834 | 2022L008661 |
| 2023L010373 | 2022L008630 | 2023L011678 | 2023L009487 | 2023L009494 |
| 2024L001525 | 2024L001577 | 2023L012178 | 2023L009489 | 2023L012291 |
| 2023L010356 | 2022L008596 | 2021L009515 | 2023L010838 | 2022L004891 |
| 2024L001461 | 2023L012053 | 2022L008601 | 2023L012768 | 2023L009467 |
| 2023L009472 | 2024L001578 | 2023L009702 | 2023L009561 | 2023L012971 |
| 2024L001462 | 2023L010833 | 2023L010452 | 2022L008607 | 2023L009486 |
| 2024L002015 | 2022L008569 | 2023L009753 | 2023L009759 | 2024L000708 |
| 2023L001641 | 2022L008717 | 2023L009848 | 2023L012822 | 2023L009498 |
| 2022L008578 | 2023L009755 | 2024L001173 | 2023L009496 | 2022L008616 |
| 2023L012177 | 2023L001650 | 2024L001229 | 2024L001580 | 2022L008600 |
| 2023L009453 | 2023L009478 | 2024L002079 | 2023L012978 | 2021L007721 |
| 2024L001967 | 2023L009574 | 2022L008632 | 2023L009582 | |
| 2023L009592 | 2022L008591 | 2023L008151 | 2023L009503 | |
| 2023L009569 | 2022L008609 | 2022L008606 | 2024L000087 | |
| 2023L009647 | 2020L009070 | 2023L009490 | 2023L010354 | |

## **AGREED ORDER**

This matter having come before the Court on the unopposed motion of Third-Party Defendant, PPG Industries, Inc., for an extension of time to answer or otherwise plead in response to Third-Party Defendant and third-party plaintiff Vantage Specialty Chemicals, Inc.'s third-party complaint, due notice having been given and the Court being fully advised in the premises:

IT IS HEREBY ORDERED that defendant PPG Industries, Inc. is granted an extension of time to file its answer or to otherwise plead in response to plaintiff's third-party complaint, on or before June 11, 2024.

IT IS HEREBY FURTHER ORDERED that any and all technical defaults applicable to PPG Industries, Inc. are vacated.

DATE: _____          ENTERED: _John H. Ehrlich_
                                              JUDGE

Vincenzo R. Chimera #6320435
K&L GATES LLP – #45515
70 West Madison Street, Suite 3100
Chicago, IL 60602
Telephone: (312) 807-4200
E-mail: vincenzo.chimera@klgates.com
Attorneys for Third-Party Defendant, *PPG Industries, Inc.*

Judge John H. Ehrlich

MAY 1 0 2024

Circuit Court 2075

# **Exhibit 9**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

**Kathleen Koch,**

    Plaintiff,

v.

**Medline Industries, Inc.,** et al.,

    Defendants.

Case No. 2023L000686

**In re Medline EtO Release**

Judge John. H. Ehrlich

This Order concerns the following cases:

| | | | | |
|---|---|---|---|---|
| 2019L012798 | 2022L008646 | 2023L009483 | 2023L009653 | 2023L012178 |
| 2020L009015 | 2022L008647 | 2023L009485 | 2023L009658 | 2023L012285 |
| 2020L009069 | 2022L008649 | 2023L009486 | 2023L009694 | 2023L012287 |
| 2020L009070 | 2022L008656 | 2023L009487 | 2023L009699 | 2023L012288 |
| 2020L011571 | 2022L008657 | 2023L009488 | 2023L009702 | 2023L012290 |
| 2021L007721 | 2022L008661 | 2023L009489 | 2023L009704 | 2023L012291 |
| 2021L009515 | 2022L008678 | 2023L009490 | 2023L009752 | 2023L012501 |
| 2022L004891 | 2022L008688 | 2023L009491 | 2023L009753 | 2023L012614 |
| 2022L006655 | 2022L008713 | 2023L009493 | 2023L009754 | 2023L012667 |
| 2022L008415 | 2022L008717 | 2023L009494 | 2023L009755 | 2023L012766 |
| 2022L008559 | 2022L009380 | 2023L009496 | 2023L009756 | 2023L012768 |
| 2022L008567 | 2023L000684 | 2023L009498 | 2023L009757 | 2023L012805 |
| 2022L008568 | 2023L000686 | 2023L009499 | 2023L009758 | 2023L012821 |
| 2022L008569 | 2023L000898 | 2023L009500 | 2023L009759 | 2023L012822 |
| 2022L008570 | 2023L000899 | 2023L009503 | 2023L009848 | 2023L012971 |
| 2022L008571 | 2023L001372 | 2023L009504 | 2023L009949 | 2023L012978 |
| 2022L008572 | 2023L001641 | 2023L009507 | 2023L009950 | 2023L013098 |
| 2022L008577 | 2023L001646 | 2023L009508 | 2023L009951 | 2024L000087 |
| 2022L008578 | 2023L001650 | 2023L009509 | 2023L009952 | 2024L000088 |
| 2022L008581 | 2023L002112 | 2023L009511 | 2023L009974 | 2024L000255 |
| 2022L008582 | 2023L002118 | 2023L009559 | 2023L010003 | 2024L000256 |
| 2022L008584 | 2023L002119 | 2023L009560 | 2023L010069 | 2024L000708 |
| 2022L008586 | 2023L002124 | 2023L009561 | 2023L010093 | 2024L001172 |
| 2022L008587 | 2023L002182 | 2023L009562 | 2023L010094 | 2024L001173 |
| 2022L008591 | 2023L002199 | 2023L009563 | 2023L010144 | 2024L001175 |
| 2022L008592 | 2023L002203 | 2023L009564 | 2023L010145 | 2024L001228 |
| 2022L008593 | 2023L003427 | 2023L009565 | 2023L010146 | 2024L001229 |
| 2022L008594 | 2023L005926 | 2023L009566 | 2023L010147 | 2024L001422 |
| 2022L008596 | 2023L007590 | 2023L009569 | 2023L010160 | 2024L001461 |
| 2022L008597 | 2023L008149 | 2023L009570 | 2023L010328 | 2024L001462 |
| 2022L008600 | 2023L008151 | 2023L009571 | 2023L010329 | 2024L001467 |

| | | | | |
|---|---|---|---|---|
| 2022L008601 | 2023L008152 | 2023L009572 | 2023L010354 | 2024L001495 |
| 2022L008602 | 2023L009453 | 2023L009573 | 2023L010355 | 2024L001525 |
| 2022L008604 | 2023L009454 | 2023L009574 | 2023L010356 | 2024L001526 |
| 2022L008606 | 2023L009455 | 2023L009575 | 2023L010373 | 2024L001527 |
| 2022L008607 | 2023L009456 | 2023L009577 | 2023L010452 | 2024L001529 |
| 2022L008608 | 2023L009460 | 2023L009579 | 2023L010826 | 2024L001577 |
| 2022L008609 | 2023L009462 | 2023L009580 | 2023L010827 | 2024L001578 |
| 2022L008611 | 2023L009463 | 2023L009581 | 2023L010828 | 2024L001580 |
| 2022L008612 | 2023L009464 | 2023L009582 | 2023L010833 | 2024L001582 |
| 2022L008613 | 2023L009467 | 2023L009583 | 2023L010834 | 2024L001586 |
| 2022L008615 | 2023L009468 | 2023L009584 | 2023L010838 | 2024L001723 |
| 2022L008616 | 2023L009469 | 2023L009586 | 2023L011677 | 2024L001967 |
| 2022L008619 | 2023L009472 | 2023L009587 | 2023L011678 | 2024L002015 |
| 2022L008623 | 2023L009474 | 2023L009590 | 2023L012039 | 2024L002079 |
| 2022L008624 | 2023L009475 | 2023L009592 | 2023L012048 | 2024L002125 |
| 2022L008630 | 2023L009477 | 2023L009596 | 2023L012051 | |
| 2022L008632 | 2023L009478 | 2023L009641 | 2023L012053 | |
| 2022L008642 | 2023L009479 | 2023L009647 | 2023L012124 | |
| 2022L008643 | 2023L009482 | 2023L009648 | 2023L012177 | |

## [PROPOSED] ORDER GRANTING THIRD-PARTY DEFENDANT BASF CORPORATION'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE PLEAD

This cause coming before the Court on Third-Party Defendant BASF Corporation's Unopposed Motion for Extension of Time to Answer or Otherwise Plead, and the Court being fully advised in the premises, IT IS HEREBY ORDERED THAT:

I.      Third-Party Defendant BASF Corporation's Unopposed Motion for Extension of Time to Answer or Otherwise Plead is GRANTED.

II.     Third-Party Defendant BASF Corporation shall have until June 11, 2024, to answer or otherwise plead in response to Defendant/Third-Party Plaintiff Vantage Specialty Chemical Inc.'s Third-Party Complaint.

ENTERED

*John H Ehrlich*

Hon. John H. Ehrlich

Prepared By:

Joseph A. Roselius (IL-6300703)
DLA Piper LLP (US) | Firm ID: 43034
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: (312) 368-7034
joseph.roselius@us.dlapiper.com

*Counsel for BASF Corporation*

Judge John H Ehrlich

MAY 1 3 2024

Circuit Court - 2075

3

# Exhibit 10

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

|  |  |
|---|---|
| **BRADFORD EVANS** )<br><br>*Plaintiff*, )<br><br>v. )<br><br>**ISOMEDIX OPERATIONS, INC., COSMED GROUP, INC., and VANTAGE SPECIALTY CHEMICALS, INC.,** )<br><br>*Defendants.* ) | **Case No. 2023 L 009452**<br><br>*In Re: Medline EtO Release*<br><br>Judge John H. Ehrlich<br><br>Consolidated with 2023 L 000686 (previously 2019 L 009502) for pre-trial and discovery purposes |

~~PROPOSED~~ **ORDER**

THIS MATTER, coming for hearing on Defendant Vantage Specialty Chemicals, Inc.'s Motion for Leave to File Third-Party Complaint and to Sever and Stay, all parties having appeared, no party having opposed the Motion, and the Court being fully advised in the premises,

**IT IS HEREBY ORDERED**:

1.    Defendant Vantage Specialty Chemicals, Inc.'s Motion for Leave to File Third-Party Complaint in the above-numbered action is **GRANTED**.

2.    The third-party claims of Defendant Vantage Specialty Chemicals, Inc. are **SEVERED** from the underlying action and are **STAYED** pending resolution of the trial scheduled for November 15, 2024.

1

ESW004452

3. The appearances of Jeffrey J. Bushofsky and Nicholas M. Berg, who previously

*4234A*

filed their Appearances in Case No. 2023 L 000686, on behalf of Defendant Vantage Specialty

Chemicals, Inc. shall be **ENTERED** in the above-numbered action.

*4. Count 2 of the third-party complaint — contribution under Delaware law — is stricken without prejudice.*

*4271A*

Prepared by:

Nicholas M. Berg
Nicholas.Berg@ropesgray.com
ROPES & GRAY LLP
Firm ID: 47644
191 N. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 845-1200

*Counsel for Vantage Specialty Chemicals, Inc.*

**ENTERED**:

*John H. Ehrlich*

Judge John H. Ehrlich
Circuit Court of Cook County, Illinois
County Department, Law Division

Judge John H Ehrlich

MAY 1 5 2024

Circuit Court - 2075

2

# Exhibit 11

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

KATHLEEN KOCH,

       Plaintiff,

vs.

VANTAGE SPECIALTY CHEMICALS,
INC.,

       Defendant.

Case No. 2023 L 000686

*In re Medline EtO Litigation*

Judge John H. Ehrlich

**BRIEFING SCHEDULE ORDER ON VANTAGE SPECIALTY
CHEMICALS, INC.'S *FRYE* MOTION TO EXCLUDE PLAINTIFF'S
EXPERT DR. RANAJIT SAHU'S SUPPLEMENTAL REPORT**

This matter coming before the Court for entry of a briefing schedule on Vantage Specialty

Chemicals, Inc.'s forthcoming *Frye* Motion to Exclude Plaintiff's Expert Dr. Ranajit Sahu's

Supplemental Report ("Motion"), the Court being fully advised in the premises, it is hereby

ORDERED:

1.    Vantage's Motion is due May 24, 2024;

2.    Koch's Opposition is due June 3, 2024;

3.    Vantage's Reply is due June 10, 2024;

Order prepared by:

Brenton A. Rogers
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
brogers@kirkland.com

*Attorneys for Defendant*
*Vantage Specialty Chemicals, Inc*

ENTERED:

2316000686

_____
Honorable Judge John H. Ehrlich
Circuit Court Judge

Dated: ___ day of _____, 2024

Judge John H. Ehrlich
MAY 22 2024
Circuit Court 2075

2

# Exhibit 12

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| Kathleen Koch, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2023 L 686 |
| | ) | |
| Vantage Specialty Chemicals, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This court has received approval to try this case as previously agreed to by the parties.

It is hereby ordered that:   ٦٦١٦٦ π

1. This case is transferred to this court for motions *in limine* and pre-trial matters beginning on **6/7/24** and for trial on June 24, 2024. ⟨ 4482
2. Any motion to continue the trial date must be presented in courtroom 2005.

_____
John H. Ehrlich, Circuit Court Judge

Judge John H. Ehrlich
MAY 22 2024
Circuit Court 2075

# Exhibit 13

DocuSign Envelope ID: BAC23BEB-E176-43C8-BC1A-D90C7F2094B0

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – LAW DIVISION**

| | |
|---|---|
| KATHLEEN KOCH et al., | |
| Plaintiffs, | Case No. 2023-L-000686 |
| vs. | *In re Medline EtO Litigation* |
| COSMED GROUP, INC., et al., | Judge John H. Ehrlich |
| Defendants. | |

## HIPAA QUALIFIED PROTECTIVE ORDER
## FOR MEDICAL AND MENTAL HEALTH RECORDS

This cause coming to be heard on the agreement of all parties for the entry of a Qualified

Protective Order pursuant to the Health Information Portability and Accountability Act of 1996

("HIPAA"), due notice having been given, and the Court being fully advised in the premises:

The Court finds that this Court Order is necessary to:

1.    Protect a party's right to privacy as guaranteed by Article I, Section 6 of the Illinois constitution for each party in this lawsuit;

2.    Protect a party's right to remedy as guaranteed by Article I, Section 12 of the Illinois constitution for each party in this lawsuit;

3.    Ensure the parties' compliance with HIPAA and its accompanying rules and regulations governing the disclosure, maintenance, use, and disposal of protected health information (PHI);

4.    Specify that, for purposes of this HIPAA Protective Order, "protected health information" shall have the same scope and definition as set forth in 45 C.F.R. §160.103 and §164.501. "Protected health information" (PHI) includes, but is not limited to:  health information, including demographic information, relating to either (a) the past, present or future physical or mental condition of an individual; (b) the provision of care of an individual; or (c) the payment for care provided to an individual, which identifies the individual or which reasonably could be expected to identify the individual;

5.    Require covered entities, as defined in 45 C.F.R. § 160.103, to disclose a party's PHI expressly provided in this Order as required pursuant to 45 C.F.R. § 164.512(e) for use in this litigation without a separate disclosure authorization; however, nothing in this Order relieves any

DocuSign Envelope ID: BAC23BEB-E176-43C8-BC1A-D9UC7F2094B0

23L000686

covered entity, party, their attorneys, agents, or representatives, consultants, other witnesses, and other personnel who request, receive, and/or review documents containing PHI, from complying with the additional requirements of the following statutes and regulations:

- Illinois Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1, *et. seq.;*

- AIDS Confidentiality Act, 410 ILCS 305/1, *et. seq.*;

- Alcoholism and Other Drug Abuse and Dependency Act, 20 ILCS 301/30-5, *et. seq.*;

- Federal statute or regulation protecting certain drug and alcohol records, 42 U.S.C. §§ 290dd-3, 290ee-3; 42 C.F.R. Part 2;

- Genetic Information Privacy Act, 410 ILCS 512/15;

- Medical Patient Rights Act, 410 ILCS 50/1, *et. seq.*;

- Physician and Patient, 735 ILCS 5/8-802(2) and (4);

- Any and all other applicable state and federal laws regulating or governing the request, review, or disclosure of PHI pertaining to Plaintiff, to the extent and subject to the conditions outlined herein;.

6.     Authorize the parties and their attorneys to receive, subpoena, and transmit PHI pertaining to the Plaintiff, to the extent and subject to the conditions outlined herein;

7.     Permit the parties and their attorneys to use or disclose the Plaintiff's PHI for purposes of prosecuting or defending this action, including appeals in this case. This includes, but is not necessarily limited to, disclosure to their attorneys, experts, consultants, court personnel, court reporters, copy services, trial consultants, and other entities or persons involved in the litigation process;

8.     Permit the parties and their attorneys to receive the Plaintiff's PHI from covered entities, business associates, and parties in the litigation, provided that the covered entities, business associates, and parties in this litigation disclose only the PHI expressly authorized in this Order;

9.     Prohibit the parties and any other persons or entities from using or disclosing the Plaintiff's PHI for any purpose other than the litigation or proceeding for which it was requested as required by 45 C.F.R. 164.512(e)(1)(v)(A);

10.     Require the return of the Plaintiff's PHI to the covered entity or the destruction of the information at the end of the litigation or proceeding as required by 45 C.F.R. 164.512(e)(1)(v)(B).

11.     Permit the parties and their attorneys to receive and permit the covered parties to disclose PHI that would otherwise be protected by the Illinois Mental Health and Developmental

DocuSign Envelope ID: BAC23BEB-E178-43C8-BC7A-D90C7F2094B0

23L000686

Disabilities Confidentiality Act pursuant to 740 ILCS 110/5. In accordance with the requirements of 740 ILCS 110/5(b), a party disclosing PHI further stipulates that she or he:

    a. Understands that he or she has the right to revoke this consent at any time. Such revocation must be made expressly and in writing;

    b. Understands that in accordance with paragraph (7) below, this consent expires on the calendar date upon which the above captioned lawsuit concludes, as indicated by a court entered order of dismissal;

    c. Understands and consents that the findings of the Court enumerated in paragraphs (1) – (11) are applicable to the disclosure of PHI that would otherwise be protected by the Illinois Mental Health and Developmental Disabilities Confidentiality Act.

**THE COURT ORDERS AS FOLLOWS:**

1.    The PHI of any party in this lawsuit may not be disclosed for any reason other than as enumerated in paragraph 4 below, without that party's prior written consent or an order of this Court, specifying the scope of the PHI to be disclosed, the recipients of the disclosed PHI, and the purpose of the disclosure. No consent to disclosure shall constitute a consent to re-disclose unless so specified in detail.

2.    Pursuant to 45 C.F.R. §164.512(e)(1)(i), no subpoenas for information or tangible items pertaining to the Plaintiff shall be served by Defendant(s) without this Order, unless by prior agreement of counsel.

3.    Pursuant to 740 ILCS 110/10(d) of the Illinois Mental Health and Developmental Disabilities Confidentiality Act, provided such subpoenas comply with the requirements of this Order and 740 ILCS 110/1 et seq., such subpoenas shall be issued returnable directly to the party issuing the subpoena.

4.    The parties to this case are hereby authorized to issue subpoenas for PHI that would otherwise be protected by the Genetic Information Privacy Act, 410 ILCS 512/15;

5.    The only disclosures permitted by this Order are:

    A. As ordered by this or another court or arbitral body or by subpoena with reasonable notice to the parties and their attorneys for purposes of subrogation, reimbursement, or payment of liens arising out of or related to this lawsuit;

    B. To the parties to this lawsuit and their agents; and

    C. As necessary to comply with any other federal or state laws, rules, or regulations, but only with the party's express consent and entry of an appropriate court order.

6.    Any covered entity over which this Court has jurisdiction that fails or refuses to disclose PHI in accordance with this Order may be subject to all sanctions authorized by the Code of Civil Procedure and the Illinois Supreme Court Rules. The Law Division Notice Regarding HIPAA Authorizations is incorporated herein as "Exhibit A."

DocuSign Envelope ID: BAC23BEB-E176-43C8-BC1A-D90C7F2094B0

23L000686

7.     A party to this lawsuit may provide PHI to an undisclosed consulting expert or controlled expert witness as defined in Illinois Supreme Court Rule 213(f)(3) but only after receiving written acknowledgment that each such expert or witness agrees to be bound by the terms of this Order. Counsel shall take all other reasonable steps to ensure that person(s) receiving Plaintiff's PHI do not use or disclose such information for any purpose other than this litigation.

8.     Within sixty (60) days after the Conclusion of the Litigation, including appeals, the party or parties, their attorneys, insurance companies and any person or entity in possession of the Plaintiff's PHI received pursuant to this Order, shall return the Plaintiff's PHI to the covered entity or entities or destroy any and all copies of PHI pertaining to the Plaintiff, including any electronically stored copies or images, except that counsel are not required to secure the return or destruction of PHI submitted to the Court. "Conclusion of the Litigation" shall be defined as the point at which final orders disposing of the entire case as to any Defendant have been entered, or the time at which all trial and appellate proceedings have been exhausted as to any Defendant.

9.     The parties are prohibited from including or attaching PHI to any document filed with the Clerk of the Circuit Court without leave of Court. PHI necessary for the Court's consideration of any matter must be provided separately.

10.     Other than the party whose PHI is at issue or that party's attorneys, no parties or their agents are permitted to request, obtain, or disclose PHI or any other type of medical bills, records or related information other than through the formal discovery procedures authorized by the Code of Civil Procedure, the Illinois Supreme Court Rules, and orders of this Court.

11.     All requests by or on behalf of any Defendant for PHI, including but not limited to subpoenas, shall be accompanied by a complete copy of this Order.  The parties, including their insurers and counsel, are prohibited from using or disclosing PHI for any purpose other than this litigation. "Disclose" shall have the same scope and definition as set forth in 45 C.F.R. §106.103: "the release, transfer, provision of, access to, or divulging in any manner, of information outside the entity holding the information."

12.     If any party utilizes the services of a third party to issue any subpoena for the PHI of the Plaintiff, it shall be the requesting party's obligation to ensure that this Order is complied with by the third party, including that the issuing subpoena and any accompanying correspondence comply with this Order.

13.     This Court retains jurisdiction of the case after judgment or dismissal, for the purposes of ensuring compliance with this Order.

DocuSign Envelope ID: BAC23BEB-E17E-43C8-BC1A-D90C7F2094B0

Dated: 2/8/2024

Bradford Evans

Plaintiff Name (Printed)

_Bradford Evans_

Plaintiff / Representative Signature

Dated: 2/8/2024

Plaintiff's Attorney Signature

Dated: 2/8/2024

Dated: _____

Defendant's Attorney Signature

ENTERED:

Circuit Court Judge

Date

Judge John H. Ehrlich

MAY 30 2024

Circuit Court 2075

DocuSign Envelope ID: BAC23BEB-E176-43C8-BC1A-D90C7F2094B0

## LAW DIVISION
## NOTICE REGARDING HIPAA AUTHORIZATIONS

As of November 1, 2016, all medical care providers, *i.e.*, individuals and entities, are required to comply with all validly issued subpoenas for protected health information (PHI), accompanied by a qualified protective order, entered by a court pursuant to the Health Insurance Portability and Accountability Act.

Medical care providers are **prohibited** from requiring execution of written authorizations for the release of PHI, **in addition to or in lieu of**, a court-entered qualified protective order. The federal regulation governing the disclosure of PHI in judicial proceedings does not impose such a burden. *See* 45 C.F.R. 164.512(e)(1)(i).

Medical care providers who continue to require such authorizations may be sanctioned on the motion of the court that issued the subpoena or the party that served it.

Exhibit A

Page 6 of 6

# Exhibit 14

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| KATHLEEN KOCH, | Case No. 2023 L 000686 |
| Plaintiff, | |
| vs. | *In re Medline EtO Litigation* |
| VANTAGE SPECIALTY CHEMICALS, INC., | |
| Defendant. | Judge John H. Ehrlich |

### PRE-TRIAL SCHEDULING ORDER

This matter coming before the Court for entry of a pre-trial schedule in the above-captioned matter, the Court being fully advised in the premises, it is hereby ORDERED:

| DATE | EVENT |
|---|---|
| May 29, 2024 (Wed) | File and Serve Motions *in Limine* |
| | Serve Final Witness Lists |
| June 5, 2024 (Wed) | Serve Exhibit Lists & Exhibits |
| June 8, 2024 (Sat) | File and Serve Oppositions to Motions *in Limine* |
| | Serve Objections to Final Witness Lists |
| | Parties to Exchange Draft Jury Questionnaires |
| June 12, 2024 (Wed) | Serve Objections to Exhibit Lists |
| June 13, 2024 (Thurs) | Deadline to Meet and Confer on Jury Questionnaires |
| June 14, 2024 (Fri) | File Joint Stipulation of Law and Facts |
| | File Joint Jury Questionnaire |
| June 17-21, 2024 (Mon-Fri) | Pre-Trial Hearings |
| | Opening Exhibits & Demonstratives |
| June 24, 2024 (Mon) | Trial Begins |

1.      The parties will use best efforts and act in good faith to exchange projected witness order for the following week on Friday at 5pm CT of the prior week.  The parties will use best efforts and act in good faith to exchange updated projected witness order two days in advance at

231000686

5pm CT. Additional notice of witnesses to be called adversely may be required to ensure witness availability.

2.      The parties will use best efforts and act in good faith to exchange exhibits and demonstratives to be used in direct examinations by 9am CT the day before intended use.

3.      Courtesy copies of all filings should be delivered to the Court as soon as they are fully briefed.

4.      Deadlines for proposed jury instructions and verdict forms will track the jury questionnaire deadlines.

5.      The parties will use best efforts and act in good faith to exchange opening exhibits and demonstratives by 9am CT two days before intended use, with any response by 9am CT the day before intended use.

6.      The parties will exchange and serve proposed deposition 206(a)(1) designations no later than May 29, 2024. The parties will exchange and serve objections and counters to designated testimony no later than 7 days after the designations are served, and objections to counters no later than 4 days after counters are served. After rulings from the court on any objections, the parties will use best efforts and act in good faith to exchange proposed final cuts of deposition designation clips (text and video) conforming to those rulings by 9am CT two days before intended use, with any response by 9am CT the day before intended use. For avoidance of doubt, under no circumstances shall the parties be permitted to play any deposition testimony at trial other than evidence deposition testimony as to which any applicable objections have been overruled and the opposing party has approved the final video cut.

7.      The parties will exchange and serve proposed treating doctor evidence deposition designations no later than 5 days after service of a final transcript of the deposition. The parties

2

will exchange and serve objections and counters to designated testimony no later than 3 days after the designations are served, and objections to counters no later than 3 days after counters are served. Deposition designations from the first evidence deposition of Dr. Nora Jaskowiak shall be served alongside the deposition designations from the second evidence deposition of Dr. Nora Jaskowiak. After rulings from the court on any objections, the parties will use best efforts and act in good faith to exchange proposed final cuts of deposition designation clips (text and video) conforming to those rulings by 9am CT two days before intended use, with any response by 9am CT the day before intended use. For avoidance of doubt, under no circumstances shall the parties be permitted to play any deposition testimony at trial other than evidence deposition testimony as to which any applicable objections have been overruled and the opposing party has approved the final video cut.

8.    The parties may supplement their exhibit lists to include no more than 100 additional exhibits. Such supplementation must occur no later than June 17, 2024.

231000686

Order prepared by:

Brenton A. Rogers
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
brogers@kirkland.com

*Attorneys for Defendant*
*Vantage Specialty Chemicals, Inc*

ENTERED:

_John H. Ehrlich_

Honorable Judge John H. Ehrlich
Circuit Court Judge

Dated: ___ day of _____, 2024

Judge John H. Ehrlich
MAY 3 0 2024
Circuit Court 2075

4

# **Exhibit 15**

DocuSign Envelope ID: D9F8D340-9F97-4A49-988E-1103B7837DD0

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – LAW DIVISION**

| | |
|---|---|
| KATHLEEN KOCH et al., | |
| Plaintiffs, | Case No. 2023-L-000686 |
| vs. | *In re Medline EtO Litigation* |
| COSMED GROUP, INC., et al., | Judge John H. Ehrlich |
| Defendants. | |

π 4369

## HIPAA QUALIFIED PROTECTIVE ORDER
## FOR MEDICAL AND MENTAL HEALTH RECORDS

This cause coming to be heard on the agreement of all parties for the entry of a Qualified

Protective Order pursuant to the Health Information Portability and Accountability Act of 1996

("HIPAA"), due notice having been given, and the Court being fully advised in the premises:

The Court finds that this Court Order is necessary to:

1.      Protect a party's right to privacy as guaranteed by Article I, Section 6 of the Illinois constitution for each party in this lawsuit;

2.      Protect a party's right to remedy as guaranteed by Article I, Section 12 of the Illinois constitution for each party in this lawsuit;

3.      Ensure the parties' compliance with HIPAA and its accompanying rules and regulations governing the disclosure, maintenance, use, and disposal of protected health information (PHI);

4.      Specify that, for purposes of this HIPAA Protective Order, "protected health information" shall have the same scope and definition as set forth in 45 C.F.R. §160.103 and §164.501. "Protected health information" (PHI) includes, but is not limited to: health information, including demographic information, relating to either (a) the past, present or future physical or mental condition of an individual; (b) the provision of care of an individual; or (c) the payment for care provided to an individual, which identifies the individual or which reasonably could be expected to identify the individual;

5.      Require covered entities, as defined in 45 C.F.R. § 160.103, to disclose a party's PHI expressly provided in this Order as required pursuant to 45 C.F.R. § 164.512(e) for use in this litigation without a separate disclosure authorization; however, nothing in this Order relieves any

covered entity, party, their attorneys, agents, or representatives, consultants, other witnesses, and other personnel who request, receive, and/or review documents containing PHI, from complying with the additional requirements of the following statutes and regulations:

- Illinois Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1, *et. seq.;*

- AIDS Confidentiality Act, 410 ILCS 305/1, *et. seq.;*

- Alcoholism and Other Drug Abuse and Dependency Act, 20 ILCS 301/30-5, *et. seq.;*

- Federal statute or regulation protecting certain drug and alcohol records, 42 U.S.C. §§ 290dd-3, 290ee-3; 42 C.F.R. Part 2;

- Genetic Information Privacy Act, 410 ILCS 512/15;

- Medical Patient Rights Act, 410 ILCS 50/1, *et. seq.;*

- Physician and Patient, 735 ILCS 5/8-802(2) and (4);

- Any and all other applicable state and federal laws regulating or governing the request, review, or disclosure of PHI pertaining to Plaintiff, to the extent and subject to the conditions outlined herein;.

6.     Authorize the parties and their attorneys to receive, subpoena, and transmit PHI pertaining to the Plaintiff, to the extent and subject to the conditions outlined herein;

7.     Permit the parties and their attorneys to use or disclose the Plaintiff's PHI for purposes of prosecuting or defending this action, including appeals in this case. This includes, but is not necessarily limited to, disclosure to their attorneys, experts, consultants, court personnel, court reporters, copy services, trial consultants, and other entities or persons involved in the litigation process;

8.     Permit the parties and their attorneys to receive the Plaintiff's PHI from covered entities, business associates, and parties in the litigation, provided that the covered entities, business associates, and parties in this litigation disclose only the PHI expressly authorized in this Order;

9.     Prohibit the parties and any other persons or entities from using or disclosing the Plaintiff's PHI for any purpose other than the litigation or proceeding for which it was requested as required by 45 C.F.R. 164.512(e)(1)(v)(A);

10.     Require the return of the Plaintiff's PHI to the covered entity or the destruction of the information at the end of the litigation or proceeding as required by 45 C.F.R. 164.512(e)(1)(v)(B).

11.     Permit the parties and their attorneys to receive and permit the covered parties to disclose PHI that would otherwise be protected by the Illinois Mental Health and Developmental

DocuSign Envelope ID: D9F8D340-9F97-4A49-968E-1103B7837DD0

Disabilities Confidentiality Act pursuant to 740 ILCS 110/5. In accordance with the requirements of 740 ILCS 110/5(b), a party disclosing PHI further stipulates that she or he:

    a. Understands that he or she has the right to revoke this consent at any time. Such revocation must be made expressly and in writing;

    b. Understands that in accordance with paragraph (7) below, this consent expires on the calendar date upon which the above captioned lawsuit concludes, as indicated by a court entered order of dismissal;

    c. Understands and consents that the findings of the Court enumerated in paragraphs (1) – (11) are applicable to the disclosure of PHI that would otherwise be protected by the Illinois Mental Health and Developmental Disabilities Confidentiality Act.

**THE COURT ORDERS AS FOLLOWS:**

1.    The PHI of any party in this lawsuit may not be disclosed for any reason other than as enumerated in paragraph 4 below, without that party's prior written consent or an order of this Court, specifying the scope of the PHI to be disclosed, the recipients of the disclosed PHI, and the purpose of the disclosure. No consent to disclosure shall constitute a consent to re-disclose unless so specified in detail.

2.    Pursuant to 45 C.F.R. §164.512(e)(1)(i), no subpoenas for information or tangible items pertaining to the Plaintiff shall be served by Defendant(s) without this Order, unless by prior agreement of counsel.

3.    Pursuant to 740 ILCS 110/10(d) of the Illinois Mental Health and Developmental Disabilities Confidentiality Act, provided such subpoenas comply with the requirements of this Order and 740 ILCS 110/1 et seq., such subpoenas shall be issued returnable directly to the party issuing the subpoena.

4.    The parties to this case are hereby authorized to issue subpoenas for PHI that would otherwise be protected by the Genetic Information Privacy Act, 410 ILCS 512/15;

5.    The only disclosures permitted by this Order are:

    A. As ordered by this or another court or arbitral body or by subpoena with reasonable notice to the parties and their attorneys for purposes of subrogation, reimbursement, or payment of liens arising out of or related to this lawsuit;

    B. To the parties to this lawsuit and their agents; and

    C. As necessary to comply with any other federal or state laws, rules, or regulations, but only with the party's express consent and entry of an appropriate court order.

6.    Any covered entity over which this Court has jurisdiction that fails or refuses to disclose PHI in accordance with this Order may be subject to all sanctions authorized by the Code of Civil Procedure and the Illinois Supreme Court Rules. The Law Division Notice Regarding HIPAA Authorizations is incorporated herein as "Exhibit A."

DocuSign Envelope ID: D9F8D340-9F97-4A49-968E-1103B7837DD0

7.      A party to this lawsuit may provide PHI to an undisclosed consulting expert or controlled expert witness as defined in Illinois Supreme Court Rule 213(f)(3) but only after receiving written acknowledgment that each such expert or witness agrees to be bound by the terms of this Order. Counsel shall take all other reasonable steps to ensure that person(s) receiving Plaintiff's PHI do not use or disclose such information for any purpose other than this litigation.

8.      Within sixty (60) days after the Conclusion of the Litigation, including appeals, the party or parties, their attorneys, insurance companies and any person or entity in possession of the Plaintiff's PHI received pursuant to this Order, shall return the Plaintiff's PHI to the covered entity or entities or destroy any and all copies of PHI pertaining to the Plaintiff, including any electronically stored copies or images, except that counsel are not required to secure the return or destruction of PHI submitted to the Court. "Conclusion of the Litigation" shall be defined as the point at which final orders disposing of the entire case as to any Defendant have been entered, or the time at which all trial and appellate proceedings have been exhausted as to any Defendant.

9.      The parties are prohibited from including or attaching PHI to any document filed with the Clerk of the Circuit Court without leave of Court. PHI necessary for the Court's consideration of any matter must be provided separately.

10.     Other than the party whose PHI is at issue or that party's attorneys, no parties or their agents are permitted to request, obtain, or disclose PHI or any other type of medical bills, records or related information other than through the formal discovery procedures authorized by the Code of Civil Procedure, the Illinois Supreme Court Rules, and orders of this Court.

11.     All requests by or on behalf of any Defendant for PHI, including but not limited to subpoenas, shall be accompanied by a complete copy of this Order. The parties, including their insurers and counsel, are prohibited from using or disclosing PHI for any purpose other than this litigation. "Disclose" shall have the same scope and definition as set forth in 45 C.F.R. §106.103: "the release, transfer, provision of, access to, or divulging in any manner, of information outside the entity holding the information."

12.     If any party utilizes the services of a third party to issue any subpoena for the PHI of the Plaintiff, it shall be the requesting party's obligation to ensure that this Order is complied with by the third party, including that the issuing subpoena and any accompanying correspondence comply with this Order.

13.     This Court retains jurisdiction of the case after judgment or dismissal, for the purposes of ensuring compliance with this Order.

DocuSign Envelope ID: D9F8D340-9F97-4A49-968E-1103B7837DD0

Dated: 2/20/2024          Don Scheffler
                          _____
                          Plaintiff Name (Printed)

Dated: 2/20/2024          *Don Scheffler*
                          _____
                          Plaintiff / Representative Signature

Dated: 2/20/2024          _____
                          Plaintiff's Attorney Signature

Dated: _____

                          _____
                          Defendant's Attorney Signature

                          ENTERED:

                          *John H. Ehrlich*
                          _____
                          Circuit Court Judge              Date

                          Judge John H. Ehrlich

                          **MAY 30 2024**

                          Circuit Court 2075

DocuSign Envelope ID: D9F8D340-9F97-4A49-968E-1103B7837DDd

## LAW DIVISION
## NOTICE REGARDING HIPAA AUTHORIZATIONS

As of November 1, 2016, all medical care providers, *i.e.*, individuals and entities, are required to comply with all validly issued subpoenas for protected health information (PHI), accompanied by a qualified protective order, entered by a court pursuant to the Health Insurance Portability and Accountability Act.

Medical care providers are **prohibited** from requiring execution of written authorizations for the release of PHI, **in addition to or in lieu of,** a court-entered qualified protective order. The federal regulation governing the disclosure of PHI in judicial proceedings does not impose such a burden. *See* 45 C.F.R. 164.512(e)(1)(i).

Medical care providers who continue to require such authorizations may be sanctioned on the motion of the court that issued the subpoena or the party that served it.

| Exhibit A |
| --- |

# Exhibit 16

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

KATHLEEN KOCH,

*Plaintiff,*

vs.

VANTAGE SPECIALTY CHEMICALS, INC.

*Defendants.*

*In re Medline EtO Release Litigation*

Case No. 2023 L 000686 (previously 2019-L-009502)

Judge John H. Ehrlich
Courtroom 2306

## JOINT STIPULATION AND [PROPOSED] ORDER FOR MOTIONS IN LIMINE

This matter having come before the Court with due and adequate notice having been given and the Court being fully advised in the premises, and upon joint stipulation of the Parties, IT IS HEREBY ORDERED:

Notwithstanding any Illinois rule or common-law principle to the contrary, any evidence of or references to the following issues shall be excluded at trial:

### A. Issues Relating to Counsel

1. No reference shall be made to the law firms or lawyers representing the parties (including, for example, their size, location, or other engagements), except that prospective jurors may be asked at *voir dire* about their knowledge of the law firms or people working at the law firms.

2. No reference shall be made to the number of lawyers, legal assistants, or other staff working for or representing either Party.

3. No reference shall be made to the lawyers' own experiences with cancer.

4. The Parties shall not compare counsel or jurors to "enforcers" or "protectors," mention movies or media concerning attorneys (*e.g.*, Erin Brockovich), or make other suggestions that counsel or jurors should be identified with the community conscience or the better part of human nature.

1

**B.      Issues Relating to Lawyer Disputes or Trial Conduct**

      1.     No Party shall address questions or comments to opposing counsel, including by requesting that the opposing counsel or party produce any discovery or stipulate to the admissibility of any document.

      2.     No reference shall be made to the fact that either party has filed any motions (including motions *in limine*) regarding what evidence can be admitted or suggesting that either Party has sought to exclude evidence.

      3.     No reference shall be made to issues or disputes relating to discovery, or to the Court's ruling on any discovery issues.

      4.     No Party or witness shall compliment the jury (*e.g.*, "this is a smart jury").

**C.      Issues Relating to Other Alleged Acts/Incidents/Harms**

      1.     Evidence of or references to verdicts or damages in other litigation, either specifically or in general, shall be excluded.

      2.     For the avoidance of doubt, neither Party seeks to preclude the Parties from impeaching an expert witness with prior testimony or conclusions offered in other litigation or eliciting testimony regarding expert compensation, provided that the Parties are precluded from referencing the nature and amount of any jury awards.[1]

**D.      Issues Relating to Damages**

      1.     Evidence of or references to the fact that recovery by Plaintiff will be shared with counsel, or that Plaintiff has been required to incur expenses in bringing suit, shall be excluded.

      2.     Evidence of or references to what Plaintiff, her family, or anyone else intends to do with any money awarded shall be excluded.

      3.     Evidence of or references to Plaintiff's or her family's financial condition or earnings shall be excluded.

**E.      Other Issues**

      1.     No reference shall be made to the "Golden Rule" (*i.e.*, asking the jury to put themselves in Plaintiff's or the community's shoes) or similar principles.

---

[1] Vantage also proposes that when using prior testimony or conclusions to impeach expert witnesses, the Parties should be precluded from naming the litigation or disclosing the number or prevalence of lawsuits. Plaintiff does not agree to this provision. Vantage will separately file motions *in limine* to preclude discussion of any other EtO litigation.

23L000686

2. No references shall be made comparing EtO to "mustard gas," comparing facilities using EtO to "gas chambers," or using similar inflammatory language to describe EtO or its use.

3. No reference, questions, or arguments regarding an explosion at a plant in the Lake County area near the Koch home.

**IT IS SO ORDERED.**

Hon. John H. Ehrlich

Order prepared by:
Brenton A. Rogers
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000
brogers@kirkland.com

*Attorneys for Defendant*
*Vantage Specialty Chemicals, Inc.*

Judge John H. Ehrlich

MAY 3 0 2024

Circuit Court 2075

3

# Exhibit 17

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT - LAW DIVISION

KATHLEEN KOCH,

                Plaintiff,

vs.

VANTAGE SPECIALTY CHEMICALS,
INC.,

                Defendants.

*In re Medline EtO Release Litigation*
Case No. 2023 L 000686

Hon. John H. Ehrlich

## ~~[PROPOSED]~~ ORDER

This matter coming before the Court on Plaintiff and Vantage Specialty Chemicals, Inc.'s Joint Motion, due and adequate notice having been given and the Court being fully advised on the premises, IT IS ORDERED:

1. All pretrial and trial deadlines in the *Koch* matter are STAYED.

2. Plaintiff and Vantage shall provide the Court with a status update by no later than June 18, 2024.

**IT IS SO ORDERED.**

Dated this _____ day of _____, 2024

_____
Hon. John H. Ehrlich

*Order Prepared by:*
Bryce Hensley
Stinar Gould Grieco & Hensley
(312) 748-7338
bryce@sgghlaw.com

*Attorney for Plaintiff*

Judge John H. Ehrlich
JUN 05 2024
Circuit Court 2075

1

# Exhibit 18

**IN THE CIRCUIT COURT OF COOK COUNTY,**
**ILLINOIS COUNTY DEPARTMENT, LAW DIVISION**

KATHLEEN KOCH,

               *Plaintiff,*

vs.

VANTAGE SPECIALTY CHEMICALS,
INC.,

               *Defendant.*

Case No. 2023 L 000686

Judge John H. Ehrlich

*In re Medline EtO Release*

**[PROPOSED] ORDER GRANTING LEAVE TO FILE**
**FIRST AMENDED COMPLAINT**

Plaintiff's Motion for Leave to File a First Amended Complaint is hereby **GRANTED**.

Plaintiff shall file her First Amended Complaint (attached as Exhibit A to the Motion) onto the

docket by June 14, 2024. *Motion granted over the objections of third-party defendants, PPG Industries, Inc. + BASF Corporation. All defenses of PPG + BASF are preserved.*

IT IS SO ORDERED.

Dated this _____ day of _____, 2024

_____
Hon. John H. Ehrlich

*Judge John H. Ehrlich*
**JUN 13 2024**
*Circuit Court 2075*

<u>*Order Prepared by:*</u>
Julien Adams
DOVEL & LUNER
Attorney ID: 6344955
201 Santa Monica Boulevard, Suite 600
Santa Monica, CA 90401
(310) 656-7066
julien@dovel.com

1

# Exhibit 19

#400

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

Koch
_____ )
Plaintiff(s) )
)
)
-v- )    NO: 23-L-686
VANTAGE, et al. )
_____ )    CALENDAR: Judge Ehrlich
Defendant(s) )    TRIAL DATE: Stricken

ORDER

This matter coming to be heard on Pl's
Motion to vacate the Trial Date; due notice
having been given and the Court advised in the
premises, it is hereby ordered the motion is GRANTED.
The trial date of 6-24-24 is stricken. The     4304
Parties are to return for trial setting    4428
on December 5, 2024 at 10:00 a.m. in
Courtroom 2005.

ENTER

JUN 18 2024

KATHY M. FLANAGAN #267

ATTY NAME: Bryce Hensley          ENTER:
ATTY ADDRESS:
101 N. Wacker Dr., #100, Chicago IL 60606
ATTY EMAIL: Bryce@566Hlaw.com
ATTY PHONE: 312 728 7444
ATTY FOR: Pl          JUDGE          NO.

# Exhibit 20

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| Kathleen Koch, | |
| Plaintiff, | Case No. 2023L000686 |
| v. | *In re Medline EtO Litigation* |
| Vantage Specialty Chemicals, Inc., | Hon. Judge John J. Ehrlich |
| Defendant. | |

## AGREED ORDER 4371

This matter, coming before the Court on the matter of entering agreed Qualified Protective Orders for the below named Plaintiffs, **IT IS HEREBY ORDERED:**

The attached Qualified Protective Order shall be entered in the corresponding case for each of the Plaintiffs listed below, all cases being consolidated for discovery purposes under the caption of *Kathleen Koch v. Vantage Specialty Chemicals, Inc.*, No. 2023-L-000686:

| Plaintiff Name | Case Number | Plaintiff Name | Case Number |
|---|---|---|---|
| James Abell | 2024L001467 | Juan Laracuente | 2023L009565 |
| Clara Abernathy | 2024L001174 | Gregory Lathan | 2023L009584 |
| Susan Adams | 2023L009454 | Marcella Laughery | 2023L012123 |
| Carol Akins | 2023L009455 | Linda Leeds | 2024L004999 |
| Blanca Alcay | 2023L009562 | Gayle Lefevers | 2023L012124 |
| John Allison | 2023L009465 | Robert Lempa | 2023L012821 |
| Martin Anderson, Independent Administrator of the Estate of Lynda Anderson | 2023L009586 | Marta Leszczynski | 2023L009484 |
| Debra Archibald | 2024L002653 | Barbara Lindberg | 2022L006655 |
| Jerry Archibald | 2024L003983 | Darlene Lipczynski | 2023L009571 |
| Denise Arive | 2023L009641 | Preston Lis | 2023L002182 |
| Vanesa Arroyo | 2022L008582 | Mary Lobue | 2023L009974 |
| Michael Arthon | 2024L004550 | Mary Locher | 2023L010144 |
| Anthony Atwater | 2023L013102 | Dragan Lojanicich | 2024L001277 |

1

| | | | |
|---|---|---|---|
| Richard Auckland | 2024L003980 | DeAngelo Lovelace | 2024L002454 |
| Stephen Auth | 2023L009950 | Mary Grace Luka | 2024L001723 |
| Karen Ayala | 2023L009459 | Jacquelyn Luna, Personal Representative of the Estate of Timothy Duncan | 2024L002511 |
| Dawn Baartz | 2023L009456 | Kelly MacDonald | 2023L012290 |
| Curtis Baker | 2023L012048 | Susan Mack | 2023L002203 |
| Jennifer Baker | 2022L008415 | Michael Maley | 2023L012973 |
| Dawn Barber | 2023L009563 | Colleen Margolis | 2023L009699 |
| Carolyn Barnett | 2024L004374 | Mary Marquez Barrera, as Independent Administrator of the Estate of Luis Marquez | 2024L005143 |
| Steven Barton | 2023L009457 | James Martin, as Independent Administrator of the Estate of Mary Martin | 2022L008676 |
| Curtis Bell | 2023L009651 | James Martin | 2024L001526 |
| Patty Bennett | 2023L000684 | James Martin, as Independent Administrator of the Estate of Anna Japuncich | 2022L008676 |
| Edgar Berlav | 2023L012824 | James Martin, as Independent Administrator of the Estate of George Martin | 2022L008676 |
| Suzanne Berner | 2022L008583 | Sandra Martin | 2022L008651 |
| Tammy Bertucci | 2023L001372 | Juliann May | 2024L001172 |
| Geraldine Blumenschein, Personal Representative of the Estate of Karl Blumenschein | 2024L004435 | James Mayberry | 2023L002118 |
| Jeffrey Bobroff | 2022L008307 | Seidy Mazariegos | 2023L002181 |
| Hallie Bolden | 2023L010329 | Dennis McClintock | 2023L009756 |
| Antionette Boraca | 2024L004992 | Cara McFeggan | 2023L009485 |
| Pamela Boyer, Independent Administrator of the Estate of Andrew Boyer | 2024L005145 | Jeana Mcrae | 2023L009486 |
| Dennis Brebner | 2019L012798 | Josephine Meincke | 2023L011678 |
| Marcus Brewton | 2023L009464 | Hope Merrill | 2023L009575 |
| Heather Brincks | 2022L008587 | Therese Meyers | 2023L012178 |
| Lucy Brock | 2022L008665 | Alex Miller | 2021L009515 |

2

| | | | |
|---|---|---|---|
| Claude Brooks | 2023L009757 | Don Miller | 2022L008601 |
| Daisy Brooks, Personal Representative of the Estate of Wadell Brooks, Sr. | 2024L005186 | Lillie Miller | 2023L009702 |
| Irene Brown | 2023L009463 | Barbara Mistele | 2023L010452 |
| Kathy Brown | 2023L009587 | Guillermo Montufar | 2022L008610 |
| Stacy Bruger | 2022L009380 | Ibrahim Moosa | 2023L009753 |
| Paul Bunnell | 2024L005108 | Margarita Morales Ramirez | 2023L009848 |
| James Bury, Personal Representative of the Estate of Roger Bury | 2024L004995 | Shanna Morefield | 2023L009492 |
| Tom Butera | 2022L008619 | Maria Moreno | 2024L001173 |
| Jeffrey Cameron | 2024L001463 | Louie Myers, Jr. | 2024L001229 |
| Frank Carney | 2023L009460 | Nick Nicketakis | 2024L002079 |
| Amy Carrillo | 2023L010355 | Carmen Nieves | 2022L008632 |
| Marjolein Castanos | 2023L012667 | Marina Nikolich | 2023L008151 |
| Eddie Castillo | 2024L001582 | Jill Nolden | 2022L008670 |
| Sharon Castillo | 2023L012767 | Paul Nudelman | 2022L008606 |
| Daniel Castro | 2023L009754 | Fabian Ochoa | 2023L009490 |
| Levon Chapman | 2023L009468 | Karina Ochoa | 2024L005051 |
| Steven Chase, Independent Administrator of the Estate of Jacqueline Chase | 2023L009573 | Julieta Olin | 2024L004844 |
| Melissa Chen | 2022L008666 | Tony Packard (Sr.) | 2024L002444 |
| Michael Christian | 2022L008649 | Doretta Parsons | 2023L009579 |
| Russell Cichy | 2024L005112 | Maria Pasillas | 2024L005053 |
| Loretta Clayborne | 2024L001228 | Susan Pate | 2022L008594 |
| Brian Cleave | 2024L002455 | Dean Payne | 2022L008602 |
| Lucille Cokley | 2023L009467 | William Peete | 2023L012617 |
| Aurora Colin | 2023L009559 | DeAnn Pennella | 2023L009570 |
| Lynette Collins | 2023L009650 | Barbara Pereira | 2023L012977 |
| Shawn Connor, Independent Administrator of the Estate of Gina Connor | 2024L001495 | Marty Pereira | 2023L009583 |

| | | | |
|---|---|---|---|
| James Lee Cooper | 2024L001581 | Irma Perez | 2022L008612 |
| Jim Cooper | 2023L012971 | Dragica Pesic | 2023L012288 |
| Melanie Copeland, As Independent Administrator of The Estate of Bertha Copeland | 2022L008624 | Scott Petersen, Personal Representative of the Estate of Lodeen Downie | 2024L005092 |
| Mildred Corder, and Mildred Corder, as Independent Administrator of the Estate of Sheryl Lynn Nelson | 2022L008669 | Jodi Peterson-Cooper | 2024L000708 |
| Mildred Corder | 2022L008669 | Jacqueline Petrovic | 2023L002112 |
| Susan Corder | 2022L008642 | Svetlana Peykova | 2023L002200 |
| Pat Cornell | 2024L000256 | Hattie Phelps | 2023L009581 |
| Dan Coughlin | 2023L009474 | Johnie Phelps | 2023L009493 |
| Jo Anne Coughlin | 2023L009474 | Christopher Pitts | 2023L009495 |
| Diane Counts | 2022L008592 | Cheryl Plencner | 2022L008559 |
| Miguel Cruz, Jr. | 2023L009560 | Dawne Pohlman | 2024L001527 |
| Diane Czerwinski | 2023L010373 | Susan Polsin, Personal Representative of the Estate of Dean Polsin | 2024L005095 |
| Deborah Daniels | 2024L001525 | Linda Polson | 2023L009491 |
| Robin Danyo | 2023L010356 | Rickey Poole | 2023L009488 |
| Yvonne Davies | 2022L008573 | Angelo Pope | 2023L009462 |
| Roger De Vito | 2022L008671 | Dena Porter | 2023L009564 |
| Michelle DeLise | 2024L001724 | Margaret Prater | 2024L005055 |
| Norman Dixon | 2023L009472 | Joanna Puciata | 2023L009470 |
| Ted Dofelmire, Personal Representative of the Estate of Catherine Dofelmire | 2024L004991 | Angela Ramirez | 2022L008611 |
| Peter Domanski | 2024L001462 | Eliseo Ramirez, Personal Representative of the Estate of Leticia Ramirez | 2024L004924 |
| David Doody | 2024L004998 | Julie Raupp | 2023L007590 |
| Andrea Draper | 2024L002015 | Donna Ray | 2023L009482 |
| Trudy Draper | 2023L001641 | Nicholas Rewis | 2022L008568 |
| Darlene Durling | 2022L008578 | Dawn Rex, on behalf of her | 2023L000687 |

| | | minor son Samuel Dolcimascolo | |
|---|---|---|---|
| John Ennis | 2023L012177 | Pamela Rhodes | 2023L009577 |
| Marina Esterkin | 2024L001460 | John Ricci | 2024L001225 |
| Veniamin Esterkin | 2023L012057 | Erin Richter | 2022L008604 |
| Bradford Evans | 2023L009452 | Ana Rivera | 2022L008647 |
| Talona Farrell | 2023L009453 | Jaquelyn Rodriguez | 2023L012285 |
| Cynthia Fields, As Independent Administrator of The Estate of Adele Claypool | 2022L008650 | Gretchen Rohr | 2022L008586 |
| Grace Figueroa | 2024L001967 | Kathleen Rossi | 2023L009694 |
| Loreto Figueroa | 2023L001870 | Debra Rostan | 2023L013098 |
| Nancy Fitzgerald | 2023L009592 | Kent Rouse | 2023L009649 |
| Christopher Flament | 2024L005113 | Patricia Rozek, on behalf of her minor son JE | 2022L008678 |
| Glenn Florkow | 2023L009647 | Andrzej Rudobielski | 2024L001275 |
| Linda Flowers | 2023L009479 | Learvin Sambrano | 2023L012287 |
| Joseph Fortunato | 2023L012051 | Lyn Sanders | 2023L009590 |
| Ilene Foster | 2023L012039 | Michael Sanfelippo | 2023L012501 |
| John Foster, Personal Representative of the Estate of Lorette Foster | 2024L004861 | Sara Santowski | 2023L010834 |
| Amy Frantz | 2022L008656 | Steven Satenstein | 2023L009567 |
| Andrea Gabriel, Personal Representative of the Estate of Anthony Gabriel | 2024L005093 | Michelle Saturno | 2023L009487 |
| Tammy Gaile | 2022L008643 | Don Scheffler | 2023L009489 |
| Michele Gallas | 2024L000255 | Todd Schmitz | 2023L010838 |
| Connie Garcia | 2022L008577 | Jeanne Schrader | 2023L012768 |
| Patricia Garcia | 2023L010069 | Mary Schutz | 2024L004720 |
| Mima Garkova | 2023L009752 | Leonard Schwalbach | 2023L009561 |
| Schereka Gayden | 2023L009469 | Deborah Scott | 2022L008607 |
| Jon Gedde | 2023L000898 | Abbey Sefton | 2023L009759 |
| William Gentes | 2023L011677 | Chandra Sefton | 2023L000685 |
| Elizabeth Gerberi | 2022L008584 | Kathy Shinners | 2023L012822 |
| Michelle Gill, o/b/o her minor granddaughter | 2023L009652 | Benjamin Shulman | 2023L009496 |

5

| | | | |
|---|---|---|---|
| Trinity Gill | | | |
| Wrenne Gillespie | 2022L008655 | Sylvia Silva | 2024L001580 |
| Chris Goetze | 2023L012829 | Gary Simmons | 2023L012978 |
| Martin Goldman | 2023L009475 | Shirley Simpson | 2023L009582 |
| Jeanetta Goldsby | 2023L010145 | Daniel Sinkovitz | 2023L009498 |
| Rose Gonyo | 2022L008571 | Kathleen Sivia | 2023L009503 |
| Boleslaw Gorczynski | 2023L009580 | Christine Skaramagos | 2024L000087 |
| James Green | 2023L009658 | Christine Slotowski | 2023L010354 |
| Keith Griffin | 2023L010093 | Tom Sokal | 2022L008567 |
| Bonnie Griffiths | 2023L009949 | Richard Solomon | 2023L012979 |
| Gary Grove | 2023L009483 | Denise Soranno | 2023L009505 |
| Federico Guardado | 2024L001223 | John Spadaro, Jr. | 2023L009508 |
| Raymond Gunter | 2022L008581 | Nina Spiegle | 2023L012805 |
| Rebecca Hacke | 2023L008152 | Aljean Springs | 2023L009511 |
| Barbara Hall | 2024L002232 | David Stewart, as Independent Administrator of the Estate of Josephine Sulentic Stewart | 2022L008634 |
| Lois Hamann | 2023L010826 | Jasmine Stewart | 2022L008688 |
| Valerie Harkim | 2023L009477 | Scott Stewart | 2023L008150 |
| Harmon Hayden | 2022L008593 | Arthur Strong | 2023L009510 |
| Ronald Hedlund | 2023L010160 | William Stuebe | 2023L009572 |
| Brian Heibner | 2023L010328 | Marilynn Sullivan | 2022L008570 |
| Nikki Henton | 2023L005926 | Susan Sullivan | 2022L008572 |
| Donald Herchenbach | 2023L009758 | Anthony Sunby | 2023L012507 |
| Michael Higgs | 2023L009481 | Susan Surdyk | 2023L012504 |
| Christine Hill | 2023L009648 | Julie Ann Swanson | 2023L009507 |
| Tamika Hobbs | 2022L008713 | Elizabeth Swoboda | 2023L001646 |
| Crystal Hogan | 2023L010094 | Ruel Tangonan | 2023L005113 |
| Richard Holben | 2022L010062 | Anna Tarasiuk | 2022L008595 |
| Joan Holland, Personal Representative of the Estate of Ann Burton | 2024L005187 | Alan Taylor | 2023L009596 |
| Christine Horn | 2022L008630 | Janice Taylor | 2024L001579 |
| Deborah Horning | 2022L008599 | Mildred Taylor, Personal Representative of the Estate of Schavonne Taylor | 2024L005106 |

| | | | |
|---|---|---|---|
| Marion Hornung | 2024L001577 | Esperanza Tellez | 2023L012614 |
| Vicky Howe-Orusa | 2022L008596 | Carol Temkin | 2023L010828 |
| Barry Humo | 2023L012053 | Robert Tesmer, Pending Personal Representative of the Estate of Dorothy Tesmer | 2024L004993 |
| William Huston | 2024L005142 | Janice Thompson | 2024L004928 |
| Elizabeth Hutchison | 2024L001578 | Leon Thompson | 2024L005054 |
| Ann Incardona | 2023L010833 | Randell Thompson | 2023L002124 |
| Peggy Ann Innes | 2022L008569 | Carmelita Torres | 2023L009653 |
| David Jackle | 2023L009480 | Kimberly Trigsted | 2023L003427 |
| Norman Jackson | 2022L008717 | Michael Troy, Independent Administrator of the Estate of Stacey Troy | 2023L002199 |
| Christa Jacobsen | 2023L009755 | Gregory Tsitiridis | 2024L004841 |
| Melissa Jasso | 2023L001650 | Paul Vaitkus, Independent Administrator of the Estate of Beverly Vaitkus | 2024L001175 |
| Pamela Jeffries | 2023L009478 | Pedro Vasquez, Pending Personal Representative of the Estate of Dora Vasquez-Gutierrez | 2024L005000 |
| James Joccheim | 2024L005188 | Kimberly Vasquez | 2023L009509 |
| Sarah Johnson | 2023L009574 | Mark Vice | 2023L009704 |
| Ronald Jones | 2022L008591 | Erika Vogler | 2024L001422 |
| Sharon Jordan | 2024L004923 | Bernard Voit | 2024L001529 |
| Sunny Joseph | 2022L008609 | Michael Wallace | 2023L012766 |
| Jennifer Jurek | 2022L008597 | Laureen Walsh | 2023L000899 |
| Michael Kachurik | 2024L001586 | Adam Weber | 2023L009504 |
| Robert Kallieris | 2023L002119 | Kelly Welch | 2023L009952 |
| Amy Keller | 2024L000088 | Kenneth Welch | 2024L004927 |
| Lona Kennedy | 2023L008149 | Ann Wells | 2022L008623 |
| Tasha Kennedy | 2024L002125 | Cathy Werner | 2023L009500 |
| Mary Kimble | 2023L010827 | Virginia White | 2024L004925 |
| Susan Klimczak | 2024L001406 | Billy Williams | 2023L009499 |
| Maureen Kmieciak | 2024L004842 | Greg Williams | 2024L001230 |
| Pamela Knobbe | 2022L008574 | Karen Williams, Pending Personal Representative of the Estate of Pagel Williams | 2024L004997 |

| | | | |
|---|---|---|---|
| Alisa Knuth | 2022L008657 | Dave Wilson | 2022L008613 |
| Kathleen Koch | 2023L000686 | Vicki Wilson | 2022L008658 |
| Alison Koehler | 2022L008615 | Jon Wiltberger II | 2023L010003 |
| Theodosia Koklamanis | 2024L005130 | Laura Kathleen Wilvert | 2024L005144 |
| Theresa Kraemer | 2022L008608 | Dexter Winn | 2023L009497 |
| Charlene Kuhler | 2024L003981 | Laura Wooster | 2022L008580 |
| Concepcion Lagunas Zagal | 2024L005190 | William Wynn | 2023L009494 |
| Alexander Lagunas | 2023L010146 | Lorne Zdenahlik | 2024L001226 |
| Elidia Lahey | 2023L010147 | Brenda Zeck | 2023L012291 |
| Jon Landgrebe | 2023L009951 | Brianna Zinkel, Independent Administrator of the Estate of Brian Zinkel | 2023L012665 |
| | | Esther Zysk | 2022L004891 |

Dated: June 20, 2024

Hon. Judge John J. Ehrlich

Judge John H. Ehrlich

JUN 2 1 2024

Circuit Court 2075

8

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – LAW DIVISION

KATHLEEN KOCH et al.,

            *Plaintiffs,*

v.

MEDLINE INDUSTRIES, INC., et al.,

            *Defendants.*

Case No. 2023-L-000686

*In re Medline EtO Litigation*

Judge John H. Ehrlich

Courtroom 2306

4367 π

## HIPAA QUALIFIED PROTECTIVE ORDER FOR MEDICAL RECORDS

    This cause coming to be heard on the agreement of all parties for the entry of a Qualified

Protective Order pursuant to the Health Information Portability and Accountability Act of 1996

("HIPAA"), due notice having been given, and the Court being fully advised in the premises:

    The Court finds that this Court Order is necessary to:

1.    Protect a party's right to privacy as guaranteed by Article I, Section 6 of the Illinois constitution for each party in this lawsuit;

2.    Protect a party's right to remedy as guaranteed by Article I, Section 12 of the Illinois constitution for each party in this lawsuit;

3.    Ensure the parties' compliance with HIPAA and its accompanying rules and regulations governing the disclosure, maintenance, use, and disposal of protected health information (PHI);

4.    Specify that, for purposes of this HIPAA Protective Order, "protected health information" shall have the same scope and definition as set forth in 45 C.F.R. §160.103 and §164.501. "Protected health information" (PHI) includes, but is not limited to: health information, including demographic information, relating to either (a) the past, present or future physical or mental condition of an individual; (b) the provision of care of an individual; or (c) the payment for care provided to an individual, which identifies the individual or which reasonably could be expected to identify the individual;

5.    Require covered entities, as defined in 45 C.F.R. § 160.103, to disclose a party's PHI expressly provided in this Order as required pursuant to 45 C.F.R. 164.512(e) for use in this litigation without a

separate disclosure authorization; however, nothing in this Order relieves any covered entity, party, their attorneys, agents, or representatives, consultants, other witnesses, and other personnel who request, receive, and/or review documents containing PHI, from complying with the additional requirements of the following statutes and regulations:

- Illinois Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1, *et. seq.;*

- AIDS Confidentiality Act, 410 ILCS 305/1, *et. seq.*;

- Alcoholism and Other Drug Abuse and Dependency Act, 20 ILCS 301/30-5, *et. seq.*;

- Federal statute or regulation protecting certain drug and alcohol records, 42 U.S.C. §§ 290dd-3, 290ee-3; 42 C.F.R. Part 2;

- Genetic Information Privacy Act, 410 ILCS 512/15;

- Medical Patient Rights Act, 410 ILCS 50/1, *et. seq.*;

- Physician and Patient, 735 ILCS 5/8-802(2) and (4);

- Any and all other applicable state and federal laws regulating or governing the request, review, or disclosure of PHI pertaining to Plaintiff, to the extent and subject to the conditions outlined herein.

6.      Authorize the parties and their attorneys to receive, subpoena, and transmit PHI pertaining to the Plaintiff, to the extent and subject to the conditions outlined herein;

7.      Permit the parties and their attorneys to use or disclose the Plaintiff's PHI for purposes of prosecuting or defending this action, including appeals in this case. This includes, but is not necessarily limited to, disclosure to their attorneys, experts, consultants, court personnel, court reporters, copy services, trial consultants, and other entities or persons involved in the litigation process;

8.      Permit the parties and their attorneys to receive the Plaintiff's PHI from covered entities, business associates, and parties in the litigation, provided that the covered entities, business associates, and parties in this litigation disclose only the PHI expressly authorized in this Order;

9.      Prohibit the parties and any other persons or entities from using or disclosing the Plaintiff's PHI for any purpose other than the litigation or proceeding for which it was requested as required by 45 C.F.R. 164.512(e)(1)(v)(A);

10.     Require the return of the Plaintiff's PHI to the covered entity or the destruction of the information at the end of the litigation or proceeding as required by 45 C.F.R. 164.512(e)(1)(v)(B).

**THE COURT ORDERS AS FOLLOWS:**

1.      The PHI of any party in this lawsuit may not be disclosed for any reason without that party's

prior written consent or an order of this Court, specifying the scope of the PHI to be disclosed, the recipients of the disclosed PHI, and the purpose of the disclosure. No consent to disclosure shall constitute a consent to re-disclose unless so specified in detail.

2.      Pursuant to 45 C.F.R. §164.512(e)(1)(1), no subpoenas for information or tangible items pertaining to the Plaintiff shall be served by Defendant(s) without this Order, unless by prior agreement of counsel.

3.      The parties to this case are hereby authorized to issue subpoenas for PHI that would otherwise be protected by the Genetic Information Privacy Act, 410 ILCS 512/15;

4.      The only disclosures permitted by this Order are:

   A.      As ordered by this or another court or arbitral body or by subpoena with reasonable notice to the parties and their attorneys for purposes of subrogation, reimbursement, or payment of liens arising out of or related to this lawsuit;

   B.      To the parties to this lawsuit and their agents; and

   C.      As necessary to comply with any other federal or state laws, rules, or regulations, but only with the party's express consent and entry of an appropriate court order.

5.      Any covered entity over which this Court has jurisdiction that fails or refuses to disclose PHI in accordance with this Order may be subject to all sanctions authorized by the Code of Civil Procedure and the Illinois Supreme Court Rules. The Law Division Notice Regarding HIPAA Authorizations is incorporated herein as "Exhibit A."

6.      A party to this lawsuit may provide PHI to an undisclosed consulting expert or controlled expert witness as defined in Illinois Supreme Court Rule 213(f)(3) but only after receiving written acknowledgment that each such expert or witness agrees to be bound by the terms of this Order. Counsel shall take all other reasonable steps to ensure that person(s) receiving Plaintiff's PHI do not use or disclose such information for any purpose other than this litigation.

7.      Within sixty (60) days after the Conclusion of the Litigation, including appeals, the party or parties, their attorneys, insurance companies and any person or entity in possession of the Plaintiff's PHI received pursuant to this Order, shall return the Plaintiff's PHI to the covered entity or entities or destroy any and all copies of PHI pertaining to the Plaintiff, including any electronically stored copies or images, except that counsel are not required to secure the return or destruction of PHI submitted to the Court. "Conclusion of the Litigation" shall be defined as the point at which final orders disposing of the entire case as to any Defendant have been entered, or the time at which all trial and appellate proceedings have been exhausted as to any Defendant.

8.      The parties are prohibited from including or attaching PHI to any document filed with the Clerk of the Circuit Court without leave of Court. PHI necessary for the Court's consideration of any matter must be provided separately.

DocuSign Envelope ID: 82BD67A7-D93D-4EAD-A160-15C517851317

9.      Other than the party whose PHI is at issue or that party's attorneys, no parties or their agents are permitted to request, obtain, or disclose PHI or any other type of medical bills, records or related information other than through the formal discovery procedures.

10.     All requests by or on behalf of any Defendant for PHI, including but not limited to subpoenas, shall be accompanied by a complete copy of this Order. The parties, including their insurers and counsel, are prohibited from using or disclosing PHI for any purpose other than this litigation. "Disclose" shall have the same scope and definition as set forth in 45 C.F.R. §106.103: "the release, transfer, provision of, access to, or divulging in any manner, of information outside the entity holding the information."

11.     If any party utilizes the services of a third party to issue any subpoena for the PHI of the Plaintiff, it shall be the requesting party's obligation to ensure that this Order is complied with by the third party, including that the issuing subpoena and any accompanying correspondence comply with this Order.

12.     This Court retains jurisdiction of the case after judgment or dismissal, for the purposes of ensuring compliance with this Order.

Dated: 2/5/2024

Andrzej Rudobielski

Plaintiff Name (Printed)

Dated: 2/5/2024

Andrzej Rudobielski

Plaintiff / Representative Signature

Dated: 2/5/2024

Plaintiff's Attorney Signature

Dated: 6|19|2024

Defendant's Attorney Signature

ENTERED:

_____     Date: _____
Circuit Court Judge

Judge John H. Ehrlich

JUN 2 1 2024

Circuit Court 2075

DocuSign Envelope ID: 82BD67A7-D93D-4EAD-A160-15C517851317

## LAW DIVISION
## NOTICE REGARDING HIPAA AUTHORIZATIONS

As of November 1, 2016, all medical care providers, *i.e.*, individuals and entities, are required to comply with all validly issued subpoenas for protected health information (PHI), accompanied by a qualified protective order, entered by a court pursuant to the Health Insurance Portability and Accountability Act.

Medical care providers are **prohibited** from requiring execution of written authorizations for the release of PHI, **in addition to or in lieu of**, a court-entered qualified protective order. The federal regulation governing the disclosure of PHI in judicial proceedings does not impose such a burden. *See* 45 C.F.R. 164.512(e)(1)(i).

Medical care providers who continue to require such authorizations may be sanctioned on the motion of the court that issued the subpoena or the party that served it.

**Exhibit A**

# Exhibit 21

add b r

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

Koch _____ )
                       )
Plaintiff(s)           )
                       )
-v-                    )   NO: 23-L-686
                       )
Medline, et al.        )   CALENDAR: M1
_____       )
                       )
Defendant(s)           )   TRIAL DATE: -

### ORDER

This matter coming to be heard on П's Amended Motion to Vacate Trial Date, due notice given and the Court being fully advised in the premises, It is hereby ordered:

П Amended Motion is Denied    5304

Δ to make their 2 bdd wether selections    4251
by July 5, 2024 and notify П's Counsel.

**ENTER**

JUN 28 2024

KATHY M. FLANAGAN #267

ATTY NAME: Bryce Hensley        ENTER:
ATTY ADDRESS:
101 N. Wacker Drive
ATTY EMAIL: Bryce@CGCHlaw.com
ATTY PHONE: 312 748 7338
ATTY FOR: П                     JUDGE               NO.

# Exhibit 22



**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| KATHLEEN KOCH,<br>                     *Plaintiff,*<br>v.<br><br>VANTAGE SPECIALTY CHEMICALS,<br>INC., et al.,<br>                   *Defendants.* | Case No. 2023L000686<br><br>Cases to be Consolidated *In Re: Medline Eto Release Litigation*<br><br>2024L004721; 2024L004841;<br>2024L004842; 2024L004844;<br>2024L004861; 2024L004923;<br>2024L004924; 2024L004925;<br>2024L004927; 2024L004928;<br>2024L004991; 2024L004992;<br>2024L004993; 2024L004995;<br>2024L004997; 2024L004998;<br>2024L004999; 2024L005000;<br>2024L005051; 2024L005053;<br>2024L005054; 2024L005055;<br>2024L005092; 2024L005093;<br>2024L005095; 2024L005106;<br>2024L005108; 2024L005109;<br>2024L005112; 2024L005113;<br>2024L005115; 2024L005130;<br>2024L005142; 2024L005143;<br>2024L005144; 2024L005145;<br>2024L005186; 2024L005187;<br>2024L005188; 2024L005190<br><br>Presiding Judge<br><br>Courtroom 2005 |

## <u>SUPPLEMENTAL SWEEP ORDER</u>

1.      On June 13, 2023, Judge James Flannery, then-Presiding Judge of the Law

Division, ordered that all cases arising out of the same incident as *Koch v. Medline et al.*, No.

2023L000686, shall be transferred to Judge John Ehrlich in Courtroom 2306 (Exhibit A).

2.      Accordingly, the matters listed below are hereby TRANSFERRED to Judge

Ehrlich, and all pending court activities for each matter, including Case Management

1

Conferences, are STRICKEN.


IT IS SO ORDERED.


Dated: _____

Judge

**ENTER**

JUL - 3 2024

KATHY M. FLANAGAN #267


Order prepared by:
Brandt Silver-Korn/EDELSON PC
bsilverkorn@edelson.com
150 California St, 18th Floor
San Francisco, California 94111
Tel: 415-212-9300
Firm ID: 62075
*Attorney for Plaintiffs*

2

To the Chambers of the Presiding Judge in Courtroom 2005: Please find below a list of the new, unswept filed cases in *In Re: Eto Release Litigation* as of July 2, 2024.

| Case Name | Case Number | CMCs (to be struck) | Current Calendar (to be transferred to LCAL 38) |
|---|---|---|---|
| Stasek-Diaz v. Vantage, et al. | 2024L004721 | 7/3/2024 at 9:30 AM | R |
| Tsitiridis v. Medline, et al. | 2024L004841 | 7/10/2024 at 9:30 AM | F |
| Kmieciak v. Medline, et al. | 2024L004842 | 7/10/2024 at 10:00 AM | B |
| Olin v. Medline, et al. | 2024L004844 | 7/17/2024 at 10:00 AM | A |
| Foster, John v. Medline, et al. | 2024L004861 | 7/9/2024 at 9:45 AM | Z |
| Jordan v. Medline, et al. | 2024L004923 | 7/11/2024 9:30 AM | H |
| Ramirez v. Medline, et al. | 2024L004924 | 7/10/2024 9:30 AM | F |
| White v. Medline, et al. | 2024L004925 | 7/11/2024 9:30 AM | H |
| Welch, Kenneth v. Medline, et al. | 2024L004927 | 7/10/2024 9:30 AM | F |
| Thompson, Janice v. Medline, et al. | 2024L004928 | 7/17/2024 10:00 AM | A |
| Dofelmire v. Medline, et al. | 2024L004991 | 7/10/2024 10:30 AM | B |
| Boraca v. Medline, et al. | 2024L004992 | 7/9/2024 9:45 AM | Z |
| Tesmer v. Medline, et al. | 2024L004993 | 7/9/2024 10:00 AM | D |
| Bury v. Medline, et al. | 2024L004995 | 7/9/2024 10:00 AM | D |

3

| | | | |
|---|---|---|---|
| *Williams, Karen v. Medline, et al.* | 2024L004997 | 7/10/2024 9:30 AM | R |
| *Doody v. Medline, et al.* | 2024L004998 | 7/11/2024 9:30 AM | H |
| *Leeds v. Medline, et al.* | 2024L004999 | 7/11/2024 9:30 AM | E |
| *Vasquez, Pedro v. Medline, et al.* | 2024L005000 | 7/24/2024 10:00 AM | A |
| *Ochoa, Karina v. Medline, et al.* | 2024L005051 | 7/10/2024 at 10:30 AM | B |
| *Pasillas v. Medline, et al.* | 2024L005053 | 7/10/2024 at 9:30 AM | R |
| *Thompson, Leon v. Medline, et al.* | 2024L005054 | 7/9/2024 at 9:45 AM | Z |
| *Prater v. Medline, et al.* | 2024L005055 | 7/11/2024 at 9:30 AM | H |
| *Petersen v. Medline, et al.* | 2024L005092 | 7/11/2024 at 9:30 AM | E |
| *Gabriel v. Medline, et al.* | 2024L005093 | 7/9/2024 at 9:30 AM | C |
| *Polsin v. Medline, et al.* | 2024L005095 | 7/10/2024 at 9:30 AM | R |
| *Taylor, Mildred, o/b/o Schavonne Taylor v. Medline, et al.* | 2024L005106 | 7/24/2024 at 10:00 AM | A |
| *Bunnell v. Medline* | 2024L005108 | 7/11/2024 at 9:30 AM | H |
| *Locher v. Medline* | 2024L005109 | 7/09/2024 at 10:15 AM | Z |
| *Cichy v. Medline, et al.* | 2024L005112 | 7/16/2024 at 9:30 AM | C |
| *Flament v. Medline* | 2024L005113 | 7/09/2024 at 10:00 AM | D |

| | | | |
|---|---|---|---|
| *Lathan v. Medline* | 2024L005115 | 7/10/2024 at 11:00 AM | B |
| *Koklamanis v. Medline, et al.* | 2024L005130 | 7/10/2024 at 10:00 AM | R |
| *Huston v. Medline* | 2024L005142 | 7/24/2024 at 10:00 AM | A |
| *Barrera v. Medline* | 2024L005143 | 7/10/2024 at 10:00 | F |
| *Wilvert v. Medline* | 2024L005144 | 7/9/2024 at 10:00 AM | D |
| *Boyer v. Medline* | 2024L005145 | 7/11/2024 at 9:30 AM | H |
| *Brooks v. Medline, et al.* | 2024L005186 | 7/18/2024 at 9:00 AM | H |
| *Holland v. Medline, et al.* | 2024L005187 | 7/18/2024 at 9:00 AM | H |
| *Jochheim v. Medline, et al.* | 2024L005188 | 7/24/2024 at 10:00 AM | A |
| *Zagal v. Medline, et al.* | 2024L005190 | 7/10/2024 at 11:00 AM | B |

# EXHIBIT A

M1 # 6

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

Koch,                                    )
                                         )
                   Plaintiff,            )
                                         )      No. 23 L 686
         v.                              )
                                         )      In Re: ETO Release
                                         )
Medline, et.al.                          )
                                         )
                   Defendants.           )

### ORDER

This matter coming before the court on its own motion, the Court determining that there being a need for continuity in case management for these complex cases and the cases having previously been assigned to Judge Israel Desierto,

**IT IS HEREBY ORDERED:**

Due to the necessity for extensive pretrial activity, the requirement for intensive judicial supervision, and the need to manage these cases in an organized and uniform fashion, this case, the previously consolidated cases and all future cases filed in the Law Division of the Circuit Court of Cook County, arising out of the above captioned incident, are 8282 assigned to Judge John Ehrlich. The assignment to Judge Desierto is stricken due to 2075 Judge Desierto's pending retirement.

These assignments will be for all pretrial matters excluding trial.

All previous assignments of any case pending in the Law Division arising from the above captioned incident are stricken.

E N T E R E D
Presiding Judge James P. Flannery-1505

JUN 13 2023

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

JUDGE JAMES P. FLANNERY
Presiding Judge, Law Division

To the Chambers of the Honorable James P. Flannery, Jr. in Courtroom 2005: Please find below a list of the filed cases in the *In re: Medline EtO Release* Litigation, as of June 13, 2023.

| Case Name | Case Number | Original Case Number (if applicable) |
|---|---|---|
| Troy v. Medline et al. | 2023L002199 | |
| Trigsted v. Medline et al. | 2023L003427 | |
| Henton v. Medline et al. | 2023L005926 | |
| Thompson v. Medline et al. | 2023L002124 | |
| Petrovic v. Medline et al. | 2023L002112 | |
| Kallieris v. Medline et al. | 2023L002119 | |
| Tangonan v. Medline et al. | 2023L005113 | |
| Mazariegos v. Medline et al. | 2023L002181 | |
| Lis v. Medline et al. et al. | 2023L002182 | |
| Mack v. Medline et al. et al. | 2023L002203 | |
| Mayberry v. Medline et al. | 2023L002118 | |
| Peykova v. Medline et al. | 2023L002200 | |
| Figueroa v. Medline et al. | 2023L001870 | |
| Gedde v. Medline et al. | 2023L000898 | |
| Walsh v. Medline et al. | 2023L000899 | |
| Swoboda v. Medline et al. | 2023L001646 | |
| Draper v. Medline et al. | 2023L001641 | |
| Jasso v. Medline et al. | 2023L001650 | |
| Bertucci v. Medline et al. | 2023L001372 | |
| Huston v. Cosmed et al. | 2022L008677 | FKA 2020L009015 |
| Rozek v. Medline et al. | 2022L008678 | FKA 2020L009014 |
| Durling v. Medline et al. | 2022L008578 | FKA 2020L008754 |
| Payne v. Medline et al. | 2022L008602 | FKA 2020L008763 |
| Corder, Susan v. Medline et al. | 2022L008642 | FKA 2020L009232 |
| Barrera v. Cosmed et al. | 2022L008644 | FKA 2020L009234 |
| Fields v. Medline et al. | 2022L008650 | FKA 2020L009234 |
| Knuth v. Medline et al. | 2022L008657 | FKA 2020L011700 |
| Miller, Alex v. Medline et al. | 2021L009515 | |
| Gonyo v. Medline et al. | 2022L008571 | FKA 2020L008760 |
| De Vito v. Medline et al. | 2022L008671 | FKA 2020L008763 |
| Horn v. Medline et al. | 2022L008630 | FKA 2020L009015 |
| Wilvert v. Cosmed et al. | 2022L008661 | FKA 2020L009014 |
| Scott v. Medline et al. | 2022L008607 | FKA 2020L008763 |
| Chen v. Medline et al. | 2022L008666 | FKA 2020L009014 |
| Wells v. Medline et al. | 2022L008623 | FKA 2020L009232 |
| Copeland v. Medline et al. | 2022L008624 | FKA 2020L009234 |
| Stewart, Jasmine v. Medline et al. | 2022L008688 | FKA 2020L009234 |
| Bruger v. Medline et al. | 2022L009380 | |
| Holben v. Medline et al. | 2022L010062 | |
| Jurek v. Medline et al. | 2022L008597 | FKA 2020L008763 |

| Garcia v. Medline et al. | 2022L008577 | FKA 2020L008767 |
|---|---|---|
| Koehler v. Medline et al. | 2022L008615 | FKA 2020L009015 |
| Wilson, Dave v. Medline et al. | 2022L008613 | FKA 2020L009015 |
| Stewart, David v. Medline et al. | 2022L008643 | FKA 2020L009234 |
| Nolden v. Medline et al. | 2022L008670 | FKA 2020L009015 |
| Wooster v. Medline et al. | 2022L008580 | FKA 2020L008754 |
| Cress v. Medline et al. | 2022L008600 | FKA 2020L008760 |
| Nieves v. Medline et al. | 2022L008632 | FKA 2020L009015 |
| Hamann v. Medline et al. | 2021L007721 | |
| Bobroff v. Medline et al. | 2022L008307 | |
| Olk v. Medline et al. | 2022L008624 | FKA 2020L009234 |
| Brock v. Medline et al. | 2022L008665 | FKA 2020L007537 |
| Koch v. Medline et al. | 2023L000686 | FKA 2019L009502 |
| Sefton v. Medline et al. | 2023L000685 | FKA 2019L009503 |
| Bennett v. Medline et al. | 2023L000684 | FKA 2019L009504 |
| Rex v. Medline et al. | 2023L000687 | FKA 2019L009505 |
| Gerberi v. Medline et al. | 2022L008584 | FKA 2020L008754 |
| Gunter v. Medline et al. | 2022L008581 | FKA 2020L008754 |
| Knobbe v. Medline et al. | 2022L008574 | FKA 2020L008754 |
| Rewis v. Medline et al. | 2022L008568 | FKA 2020L008754 |
| Sullivan, Susan v. Medline et al. | 2022L008572 | FKA 2020L008754 |
| Counts v. Medline et al. | 2022L008592 | FKA 2020L008760 |
| Howe-Oruse v. Medline et al. | 2022L008596 | FKA 2020L008760 |
| Innes v. Medline et al. | 2022L008569 | FKA 2020L008760 |
| Jones v. Medline et al. | 2022L008591 | FKA 2020L008760 |
| Martin, Sandra v. Medline et al. | 2022L008651 | FKA 2020L008760 |
| Rohr v. Medline et al. | 2022L008586 | FKA 2020L008760 |
| Sullivan, Marilynn v. Medline et al. | 2022L008570 | FKA 2020L008760 |
| Joseph v. Medline et al. | 2022L008609 | FKA 2020L008763 |
| Kraemer v. Medline et al. | 2022L008608 | FKA 2020L008763 |
| Miller, Don v. Medline et al. | 2022L008601 | FKA 2020L008763 |
| Nudelman v. Medline et al. | 2022L008606 | FKA 2020L008763 |
| Richter v. Medline et al. | 2022L008604 | FKA 2020L008763 |
| Sokal v. Medline et al. | 2022L008567 | FKA 2020L008763 |
| Arroyo v. Medline et al. | 2022L008582 | FKA 2020L008767 |
| Davies v. Medline et al. | 2022L008573 | FKA 2020L008767 |
| Hayden v. Medline et al. | 2022L008593 | FKA 2020L008767 |
| Horning v. Medline et al. | 2022L008599 | FKA 2020L008767 |
| Pate v. Medline et al. | 2022L008594 | FKA 2020L008767 |
| Plencner v. Medline et al. | 2022L008559 | FKA 2020L008767 |
| Montufar v. Medline et al. | 2022L008610 | FKA 2020L009014 |
| Butera v. Medline et al. | 2022L008619 | FKA 2020L009015 |
| Corder, Mildred v. Medline et al. | 2022L008669 | FKA 2020L009015 |
| Jackson v. Medline et al. | 2022L008717 | FKA 2020L009015 |

2

| | | |
|---|---|---|
| *Perez v. Medline et al.* | 2022L008612 | FKA 2020L009015 |
| *Ramirez v. Medline et al.* | 2022L008611 | FKA 2020L009015 |
| *Boyer v. Isomedix et al.* | 2022L008646 | FKA 2020L009234 |
| *Christian v. Medline et al.* | 2022L008649 | FKA 2020L009234 |
| *Gillespie v. Medline et al.* | 2022L008655 | FKA 2020L009234 |
| *Hobbs v. Medline et al.* | 2022L008713 | FKA 2020L009234 |
| *Martin, James v. Medline et al.* | 2022L008676 | FKA 2020L009234 |
| *Martin, James v. Medline et al.* | 2022L008676 | FKA 2020L009234 |
| *Martin, George v. Medline et al.* | 2022L008676 | FKA 2020L008760 |
| *Rivera v. Medline et al.* | 2022L008647 | FKA 2020L009234 |
| *Frantz v. Medline et al.* | 2022L008656 | FKA 2020L011700 |
| *Gaile v. Medline et al.* | 2022L008643 | FKA 2020L011700 |
| *Berner v. Medline et al.* | 2022L008583 | FKA 2020L008754 |
| *Brincks v. Medline et al.* | 2022L008587 | FKA 2020L008754 |
| *Zysk v. Medline et al.* | 2022L004891 | |
| *Lindberg v. Medline et al.* | 2022L006655 | |
| *Wilson, Vicki v. Medline et al.* | 2022L008658 | FKA 2022L007537 |
| *Baker v. Medline et al.* | 2022L008415 | FKA 2020L008754 |
| *Tarasiuk v. Medline et al.* | 2022L008595 | FKA 2020L008767 |
| *Weichmann v. Medline et al.* | 2022L008626 | |
| *Wicks v. Medline et al.* | 2022L008629 | |
| *Zuniga v. Medline et al.* | 2022L008636 | |
| *Johnson v. Medline et al.* | 2022L008640 | |
| *Martinez v. Medline et al.* | 2022L008638 | |
| *Moreno v. Medline et al.* | 2022L008633 | |
| *Brebner v. Medline et al.* | 2020L012798 | |
| *Torres v. Medline et al.* | 2020L009069 | |
| *Jovanovic v. Medline et al.* | 2020L009070 | |
| *Elloian v. Medline et al.* | 2020L009854 | |
| *Barnabee v. Medline et al.* | 2020L011571 | |
| *Moskowitz v. Medline et al.* | 2020L005596 | |
| *Rice v. Medline et al.* | 2020L009015 | |

# **Exhibit 23**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| KATHLEEN KOCH | |
| Plaintiff, | No. 2023-L-000686 |
| v. | *In Re: Medline ETO Release* |
| MEDLINE INDUSTRIES, INC. | Judge John H. Ehrlich |
| STERIS ISOMEDIX SERVICES, INC., | |
| COSMED GROUP, INC. and | The Third-Party Complaint Concerns the |
| VANTAGE SPECIALTY CHEMICALS, INC., | following cases: |
| Defendants. | 2024L001467 |
| | 2023L009454 |
| VANTAGE SPECIALTY CHEMICALS, INC. | 2023L009455 |
| | 2023L009562 |
| Third Party Plaintiff, | 2023L009586 |
| | 2023L009641 |
| v. | 2022L008582 |
| | 2023L009950 |
| PPG INDUSTRIES, INC. and | 2023L009456 |
| BASF CORPORATION | 2023L012048 |
| Third Party Defendants. | |

| | | | | |
|---|---|---|---|---|
| 2022L008415 | 2023L009479 | 2022L008597 | 2023L009579 | 2022L008567 |
| 2023L009563 | 2023L012051 | 2024L001586 | 2022L008594 | 2023L009508 |
| 2020L011571 | 2023L012039 | 2023L002119 | 2022L008602 | 2023L012805 |
| 2023L000684 | 2022L008656 | 2023L000686 | 2023L009570 | 2023L009511 |
| 2023L001372 | 2022L008643 | 2024L000088 | 2023L009583 | 2022L008688 |
| 2023L010329 | 2024L000255 | 2023L008149 | 2022L008612 | 2023L009572 |
| 2022L008646 | 2022L008577 | 2024L002125 | 2023L012288 | 2022L008570 |
| 2019L012798 | 2023L010069 | 2023L010827 | 2023L002112 | 2022L008572 |
| 2023L009464 | 2023L009752 | 2022L008657 | 2023L009581 | 2023L009507 |
| 2022L008587 | 2023L009469 | 2022L008615 | 2023L009493 | 2023L001646 |
| 2023L009757 | 2023L000898 | 2022L008608 | 2022L008559 | 2023L009596 |
| 2023L009463 | 2023L011677 | 2023L010146 | 2024L001527 | 2023L012614 |
| 2023L009587 | 2022L008584 | 2023L010147 | 2023L009491 | 2023L010828 |
| 2022L009380 | 2023L009475 | 2023L009951 | 2023L009488 | 2023L002124 |
| 2023L009566 | 2023L010145 | 2023L009565 | 2023L009462 | 2023L009653 |
| 2022L008619 | 2022L008571 | 2023L009584 | 2023L009564 | 2020L009069 |
| 2023L009460 | 2023L009580 | 2023L012124 | 2022L008611 | 2023L003427 |
| 2023L010355 | 2023L009658 | 2023L012821 | 2023L007590 | 2023L002199 |
| 2023L012667 | 2023L010093 | 2022L006655 | 2023L009482 | 2024L001175 |

319006329.2

| | | | | |
|---|---|---|---|---|
| 2024L001582 | 2023L009949 | 2023L009571 | 2022L008568 | 2023L009509 |
| 2023L009754 | 2023L009483 | 2023L002182 | 2023L009577 | 2023L009704 |
| 2023L009468 | 2022L008581 | 2023L009974 | 2020L009015 | 2024L001422 |
| 2023L009573 | 2023L008152 | 2023L010144 | 2022L008604 | 2024L001529 |
| 2022L008649 | 2023L010826 | 2024L001723 | 2022L008647 | 2023L012766 |
| 2024L001228 | 2023L009477 | 2023L012290 | 2023L012285 | 2023L000899 |
| 2023L009559 | 2022L008593 | 2023L002203 | 2022L008586 | 2023L009504 |
| 2024L001495 | 2023L010160 | 2023L009699 | 2023L009694 | 2023L009952 |
| 2022L008624 | 2023L010328 | 2024L001526 | 2023L013098 | 2022L008623 |
| 2022L008642 | 2023L005926 | 2024L001172 | 2022L008678 | 2023L009500 |
| 2024L000256 | 2023L009758 | 2023L002118 | 2023L012287 | 2023L009499 |
| 2023L009474 | 2023L009648 | 2023L009756 | 2023L009590 | 2022L008613 |
| 2022L008592 | 2022L008713 | 2023L009485 | 2023L012501 | 2023L010003 |
| 2023L009560 | 2023L010094 | 2023L009575 | 2023L010834 | 2022L008661 |
| 2023L010373 | 2022L008630 | 2023L011678 | 2023L009487 | 2023L009494 |
| 2024L001525 | 2024L001577 | 2023L012178 | 2023L009489 | 2023L012291 |
| 2023L010356 | 2022L008596 | 2021L009515 | 2023L010838 | 2022L004891 |
| 2024L001461 | 2023L012053 | 2022L008601 | 2023L012768 | 2023L009467 |
| 2023L009472 | 2024L001578 | 2023L009702 | 2023L009561 | 2023L012971 |
| 2024L001462 | 2023L010833 | 2023L010452 | 2022L008607 | 2023L009486 |
| 2024L002015 | 2022L008569 | 2023L009753 | 2023L009759 | 2024L000708 |
| 2023L001641 | 2022L008717 | 2023L009848 | 2023L012822 | 2023L009498 |
| 2022L008578 | 2023L009755 | 2024L001173 | 2023L009496 | 2022L008616 |
| 2023L012177 | 2023L001650 | 2024L001229 | 2024L001580 | 2022L008600 |
| 2023L009453 | 2023L009478 | 2024L002079 | 2023L012978 | 2021L007721 |
| 2024L001967 | 2023L009574 | 2022L008632 | 2023L009582 | |
| 2023L009592 | 2022L008591 | 2023L008151 | 2023L009503 | |
| 2023L009569 | 2022L008609 | 2022L008606 | 2024L000087 | |
| 2023L009647 | 2020L009070 | 2023L009490 | 2023L010354 | |

## ORDER

This matter having come before the Court on the stipulation as between third-party plaintiff, Vantage Specialty Chemicals, Inc. and third-party defendant, PPG Industries, Inc., due notice having been given and the Court being fully advised in the premises;

IT IS HEREBY ORDERED that PPG Industries, Inc. is granted an extension of time to file its answer or to otherwise plead in response to Vantage Specialty Chemicals, Inc.'s third-party complaint, on or before August 1, 2024.

DATE: _____          ENTERED: _Sdwll Ehrlich_

                                                              JUDGE

Vincenzo R. Chimera #6320435

319006329.2

                              **Judge John H. Ehrlich**

                              **JUL 09 2024**

                              Circuit Court 2075

K&L GATES LLP – #45515
70 West Madison Street, Suite 3100
Chicago, IL 60602
Telephone: (312) 807-4200
E-mail: vincenzo.chimera@klgates.com
Attorneys for Defendant, *PPG Industries, Inc.*

319006329.2

# Exhibit 24

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

Kathleen Koch,

Plaintiff,

v.

Medline Industries, Inc., et al.,

Defendants.

Vantage Specialty Chemicals, Inc.,

Third-Party Plaintiff,

v.

PPG Industries, Inc., and BASF Corporation,

Third-Party Defendants.

Case No. 2023 L 000686

*In Re: Medline EtO Release*

Judge John H. Ehrlich

This Proposed Order concerns all third-party complaints filed by Vantage Specialty Chemicals, Inc.:

| | |
|---|---|
| 2024L001467 | 2023L009641 |
| 2023L009454 | 2022L008582 |
| 2023L009455 | 2023L009950 |
| 2023L009562 | 2023L009456 |
| 2023L009586 | 2023L012048 |

| | | | | |
|---|---|---|---|---|
| 2022L008415 | 2024L001228 | 2023L009479 | 2023L009477 | 2022L008597 |
| 2023L009563 | 2023L009559 | 2023L012051 | 2022L008593 | 2024L001586 |
| 2020L011571 | 2024L001495 | 2023L012039 | 2023L010160 | 2023L002119 |
| 2023L000684 | 2022L008624 | 2022L008656 | 2023L010328 | 2023L000686 |
| 2023L001372 | 2022L008642 | 2022L008643 | 2023L005926 | 2024L000088 |
| 2023L010329 | 2024L000256 | 2024L000255 | 2023L009758 | 2023L008149 |
| 2022L008646 | 2023L009474 | 2022L008577 | 2023L009648 | 2024L002125 |
| 2019L012798 | 2022L008592 | 2023L010069 | 2022L008713 | 2023L010827 |
| 2023L009464 | 2023L009560 | 2023L009752 | 2023L010094 | 2022L008657 |
| 2022L008587 | 2023L010373 | 2023L009469 | 2022L008630 | 2022L008615 |
| 2023L009757 | 2024L001525 | 2023L000898 | 2024L001577 | 2022L008608 |
| 2023L009463 | 2023L010356 | 2023L011677 | 2022L008596 | 2023L010146 |
| 2023L009587 | 2024L001461 | 2022L008584 | 2023L012053 | 2023L010147 |
| 2022L009380 | 2023L009472 | 2023L009475 | 2024L001578 | 2023L009951 |
| 2023L009566 | 2024L001462 | 2023L010145 | 2023L010833 | 2023L009565 |
| 2022L008619 | 2024L002015 | 2022L008571 | 2022L008569 | 2023L009584 |
| 2023L009460 | 2023L001641 | 2023L009580 | 2022L008717 | 2023L012124 |
| 2023L010355 | 2022L008578 | 2023L009658 | 2023L009755 | 2023L012821 |
| 2023L012667 | 2023L012177 | 2023L010093 | 2023L001650 | 2022L006655 |
| 2024L001582 | 2023L009453 | 2023L009949 | 2023L009478 | 2023L009571 |
| 2023L009754 | 2024L001967 | 2023L009483 | 2023L009574 | 2023L002182 |
| 2023L009468 | 2023L009592 | 2022L008581 | 2022L008591 | 2023L009974 |
| 2023L009573 | 2023L009569 | 2023L008152 | 2022L008609 | 2023L010144 |

23L000686

| | | | | |
|---|---|---|---|---|
| 2022L008649 | 2023L009647 | 2023L010826 | 2020L009070 | 2024L001723 |
| 2023L012290 | 2023L009579 | 2023L012285 | 2022L008567 | 2023L000899 |
| 2023L002203 | 2022L008594 | 2022L008586 | 2023L009508 | 2023L009504 |
| 2023L009699 | 2022L008602 | 2023L009694 | 2023L012805 | 2023L009952 |
| 2024L001526 | 2023L009570 | 2023L013098 | 2023L009511 | 2022L008623 |
| 2024L001172 | 2023L009583 | 2022L008678 | 2022L008688 | 2023L009500 |
| 2023L002118 | 2022L008612 | 2023L012287 | 2023L009572 | 2023L009499 |
| 2023L009756 | 2023L012288 | 2023L009590 | 2022L008570 | 2022L008613 |
| 2023L009485 | 2023L002112 | 2023L012501 | 2022L008572 | 2023L010003 |
| 2023L009575 | 2023L009581 | 2023L010834 | 2023L009507 | 2022L008661 |
| 2023L011678 | 2023L009493 | 2023L009487 | 2023L001646 | 2023L009494 |
| 2023L012178 | 2022L008559 | 2023L009489 | 2023L009596 | 2023L012291 |
| 2021L009515 | 2024L001527 | 2023L010838 | 2023L012614 | 2022L004891 |
| 2022L008601 | 2023L009491 | 2023L012768 | 2023L010828 | 2023L009467 |
| 2023L009702 | 2023L009488 | 2023L009561 | 2023L002124 | 2023L012971 |
| 2023L010452 | 2023L009462 | 2022L008607 | 2023L009653 | 2023L009486 |
| 2023L009753 | 2023L009564 | 2023L009759 | 2020L009069 | 2024L000708 |
| 2023L009848 | 2022L008611 | 2023L012822 | 2023L003427 | 2023L009498 |
| 2024L001173 | 2023L007590 | 2023L009496 | 2023L002199 | 2022L008616 |
| 2024L001229 | 2023L009482 | 2024L001580 | 2024L001175 | 2022L008600 |
| 2024L002079 | 2022L008568 | 2023L012978 | 2023L009509 | 2021L007721 |
| 2022L008632 | 2023L009577 | 2023L009582 | 2023L009704 | |
| 2023L008151 | 2020L009015 | 2023L009503 | 2024L001422 | |
| 2022L008606 | 2022L008604 | 2024L000087 | 2024L001529 | |
| 2023L009490 | 2022L008647 | 2023L010354 | 2023L012766 | |

## ~~[PROPOSED]~~ ORDER

This cause coming before the Court on the Stipulation between Vantage Specialty Chemicals, Inc. and BASF Corporation, and the Court being fully advised in the premises, IT IS HEREBY ORDERED THAT:

A 4│23A The Stipulation is GRANTED and ENTERED. BASF Corporation shall have until August 1, 2024 to answer or to otherwise plead in response to Vantage Specialty Chemicals, Inc.'s Third-Party Complaint.

ENTERED

*John H. Ehrlich*

Hon. John H. Ehrlich

Judge John H. Ehrlich

JUL 09 2024

Circuit Court 2075

2

231000686

Prepared By:

Joseph A. Roselius (IL-6300703)
DLA Piper LLP (US) | Firm ID: 43034
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: (312) 368-7034
joseph.roselius@us.dlapiper.com

*Attorney for BASF Corporation*

3

# Exhibit 25

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

KATHLEEN KOCH

           *Plaintiff,*

v.

VANTAGE SPECIALTY CHEMICALS,
INC., et al.,

           *Defendants.*

Case No. 2023-L-000686

*In Re Medline ETO Release Litigation*

Judge John H. Ehrlich

Courtroom 2306

### ~~[PROPOSED]~~ ORDER

This matter coming before the Court on Plaintiffs' Counsel's Unopposed Motion to Appoint Cathy Yanni of JAMS as Allocation Neutral of the Medline Settlement due and adequate notice having been given and the Court being fully advised on the premises:

1.    Plaintiffs' Counsel's Unopposed Motion to Appoint Cathy Yanni of JAMS as Allocation Neutral of the Medline Settlement is **GRANTED**.

                               **IT IS SO ORDERED.**

                              Judge John H. Ehrlich

Order prepared by:
Brandt Silver-Korn/EDELSON PC
bsilverkorn@edelson.com@edelson.com
350 N. LaSalle Street, 14th Floor
Chicago, IL 60654
Tel: 872-268-7642
Firm ID: 62075

*Judge John H Ehrlich*
**JUL 17 2024**
*Circuit Court - 2075*

1

# Exhibit 26

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

KATHLEEN KOCH

                *Plaintiff,*

v.

VANTAGE SPECIALTY CHEMICALS,
INC., et al.,

                *Defendants.*

Case No. 2023-L-000686

*In Re: Medline EtO Release Litigation*

Judge John H. Ehrlich

Courtroom 2306

### ~~[PROPOSED]~~ ORDER

This matter coming before the Court on Plaintiffs' Counsel's Motion for Leave to File Motion to Appoint Cathy Yanni of JAMS as Allocation Neutral of the Vantage Settlement Under Seal, due and adequate notice having been given and the Court being fully advised on the premises:

1.    Plaintiffs' Counsel's Motion for Leave to File Motion to Appoint Cathy Yanni of JAMS as Allocation Neutral of the Vantage Settlement Under Seal is **GRANTED.**

2.    Plaintiffs' Counsel shall file a redacted version of their motion on the public docket.

π 4245
4251

**IT IS SO ORDERED**.

*John H Ehrlich*
Judge John H. Ehrlich

Order prepared by:
Brandt Silver-Korn/EDELSON PC
bsilverkorn@edelson.com
350 N. LaSalle Street, 14th Floor
Chicago, IL 60654

Judge John H Ehrlich
**JUL 17 2024**
Circuit Court - 2075

1

23L000686

Tel: 872-268-7642
Firm ID: 62075

2

# Exhibit 27

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 38

FILED DATE: 3/12/2024 8:55 PM    2023L000686

FILED
3/12/2024 8:55 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L000686
Calendar, 38
26792562

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

|  |  |
|---|---|
| **KATHLEEN KOCH**<br><br>*Plaintiff*,<br><br>v.<br><br>**MEDLINE INDUSTRIES, INC., STERIS ISOMEDIX SERVICES, INC., COSMED GROUP, INC. and VANTAGE SPECIALTY CHEMICALS, INC.,**<br><br>*Defendants*. | **Case No. 2023 L 000686**<br><br>***In Re: Medline EtO Release***<br><br>Judge John H. Ehrlich<br><br>This Third-Party Complaint concerns the following cases:<br><br>2024L001467  2023L009641<br>2023L009454  2022L008582<br>2023L009455  2023L009950<br>2023L009562  2023L009456<br>2023L009586  2023L012048 |

| | | | | |
|---|---|---|---|---|
| 2022L008415 | 2024L001228 | 2023L009479 | 2023L009477 | 2022L008597 |
| 2023L009563 | 2023L009559 | 2023L012051 | 2022L008593 | 2024L001586 |
| 2020L011571 | 2024L001495 | 2023L012039 | 2023L010160 | 2023L002119 |
| 2023L000684 | 2022L008624 | 2022L008656 | 2023L010328 | 2023L000686 |
| 2023L001372 | 2022L008642 | 2022L008643 | 2023L005926 | 2024L000088 |
| 2023L010329 | 2024L000256 | 2024L000255 | 2023L009758 | 2023L008149 |
| 2022L008646 | 2023L009474 | 2022L008577 | 2023L009648 | 2024L002125 |
| 2019L012798 | 2022L008592 | 2023L010069 | 2022L008713 | 2023L010827 |
| 2023L009464 | 2023L009560 | 2023L009752 | 2023L010094 | 2022L008657 |
| 2022L008587 | 2023L010373 | 2023L009469 | 2022L008630 | 2022L008615 |
| 2023L009757 | 2024L001525 | 2023L000898 | 2024L001577 | 2022L008608 |
| 2023L009463 | 2023L010356 | 2023L011677 | 2022L008596 | 2023L010146 |
| 2023L009587 | 2024L001461 | 2022L008584 | 2023L012053 | 2023L010147 |
| 2022L009380 | 2023L009472 | 2023L009475 | 2024L001578 | 2023L009951 |
| 2023L009566 | 2024L001462 | 2023L010145 | 2023L010833 | 2023L009565 |
| 2022L008619 | 2024L002015 | 2022L008571 | 2022L008569 | 2023L009584 |
| 2023L009460 | 2023L001641 | 2023L009580 | 2022L008717 | 2023L012124 |
| 2023L010355 | 2022L008578 | 2023L009658 | 2023L009755 | 2023L012821 |
| 2023L012667 | 2023L012177 | 2023L010093 | 2023L001650 | 2022L006655 |
| 2024L001582 | 2023L009453 | 2023L009949 | 2023L009478 | 2023L009571 |
| 2023L009754 | 2024L001967 | 2023L009483 | 2023L009574 | 2023L002182 |
| 2023L009468 | 2023L009592 | 2022L008581 | 2022L008591 | 2023L009974 |
| 2023L009573 | 2023L009569 | 2023L008152 | 2022L008609 | 2023L010144 |
| 2022L008649 | 2023L009647 | 2023L010826 | 2020L009070 | 2024L001723 |

FILED DATE: 3/12/2024 8:55 PM    2023L000886

| | | | | |
|---|---|---|---|---|
| 2023L012290 | 2023L009579 | 2023L012285 | 2022L008567 | 2023L000899 |
| 2023L002203 | 2022L008594 | 2022L008586 | 2023L009508 | 2023L009504 |
| 2023L009699 | 2022L008602 | 2023L009694 | 2023L012805 | 2023L009952 |
| 2024L001526 | 2023L009570 | 2023L013098 | 2023L009511 | 2022L008623 |
| 2024L001172 | 2023L009583 | 2022L008678 | 2022L008688 | 2023L009500 |
| 2023L002118 | 2022L008612 | 2023L012287 | 2023L009572 | 2023L009499 |
| 2023L009756 | 2023L012288 | 2023L009590 | 2022L008570 | 2022L008613 |
| 2023L009485 | 2023L002112 | 2023L012501 | 2022L008572 | 2023L010003 |
| 2023L009575 | 2023L009581 | 2023L010834 | 2023L009507 | 2022L008661 |
| 2023L011678 | 2023L009493 | 2023L009487 | 2023L001646 | 2023L009494 |
| 2023L012178 | 2022L008559 | 2023L009489 | 2023L009596 | 2023L012291 |
| 2021L009515 | 2024L001527 | 2023L010838 | 2023L012614 | 2022L004891 |
| 2022L008601 | 2023L009491 | 2023L012768 | 2023L010828 | 2023L009467 |
| 2023L009702 | 2023L009488 | 2023L009561 | 2023L002124 | 2023L012971 |
| 2023L010452 | 2023L009462 | 2022L008607 | 2023L009653 | 2023L009486 |
| 2023L009753 | 2023L009564 | 2023L009759 | 2020L009069 | 2024L000708 |
| 2023L009848 | 2022L008611 | 2023L012822 | 2023L003427 | 2023L009498 |
| 2024L001173 | 2023L007590 | 2023L009496 | 2023L002199 | 2022L008616 |
| 2024L001229 | 2023L009482 | 2024L001580 | 2024L001175 | 2022L008600 |
| 2024L002079 | 2022L008568 | 2023L012978 | 2023L009509 | 2021L007721 |
| 2022L008632 | 2023L009577 | 2023L009582 | 2023L009704 | |
| 2023L008151 | 2020L009015 | 2023L009503 | 2024L001422 | |
| 2022L008606 | 2022L008604 | 2024L000087 | 2024L001529 | |
| 2023L009490 | 2022L008647 | 2023L010354 | 2023L012766 | |

## DEFENDANT AND THIRD-PARTY PLAINTIFF
## VANTAGE SPECIALTY CHEMICALS, INC.'S COMPLAINT AGAINST
## THIRD-PARTY DEFENDANTS BASF CORPORATION AND PPG INDUSTRIES, INC.

Defendant Vantage Specialty Chemicals, Inc. brings this Third-Party Complaint and Demand for Jury Trial against third-party defendants BASF Corporation ("BASF") and PPG Industries, Inc. ("PPG") pursuant to 735 ILCS 5/2-406 for contribution under Illinois, Delaware, and Pennsylvania law. This Third-Party Complaint pertains to the actions filed by Plaintiffs listed in Appendix A to this filing ("Plaintiffs"), all of which are consolidated for pre-trial and discovery purposes only.

As relevant to this Third-Party Complaint, Plaintiffs have alleged that air emissions from a manufacturing facility located in Gurnee, Illinois (the "Gurnee Facility")—which Vantage Specialty Chemicals, Inc. and its affiliates ("Vantage") owned and operated for only a portion of

FILED DATE: 3/12/2024 8:55 PM   2023L000686

the time period relevant to each Plaintiff's complaint—caused them to develop certain health conditions. Vantage has denied, and continues to deny, the allegations contained in Plaintiffs' complaints. However, in the event that Plaintiffs, whether collectively or individually, establish liability against Vantage for the injuries alleged in their complaints, such liability would exceed Vantage's *pro rata* responsibility for Plaintiffs' injuries in light of the fact that: (1) at least some of the conduct alleged by Plaintiffs to have caused their injuries occurred before Vantage owned or operated the Gurnee Facility and during the time when BASF or PPG owned and operated the Gurnee Facility; and (2) BASF and PPG have not been named as defendants by Plaintiffs. Accordingly, Vantage brings this Third-Party Complaint to assert its right of contribution in such a scenario against BASF and PPG.

## **INTRODUCTION**

1.  Vantage has owned and operated the Gurnee Facility since June 30, 2003. Prior to Vantage, BASF owned and operated the Gurnee Facility from in or around 1998 until Vantage assumed ownership on June 30, 2003. Prior to BASF, PPG owned and operated the Gurnee facility from in or around 1987—when it wholly acquired Mazer Chemicals, Inc., which had owned and operated the Facility previously—until BASF assumed ownership in or around 1998.

2.  Plaintiffs listed in Appendix A have filed individual actions against Vantage, alleging in relevant part that emissions resulting from the use of ethylene oxide ("EtO") at the Gurnee Facility caused them to develop certain health conditions.

3.  Plaintiffs listed in Appendix A have alleged that they were exposed to EtO emissions or that they developed health conditions as a result of such exposure to EtO emissions *before* 2003. But Vantage did not own, operate, or have any other involvement with the Gurnee Facility prior to 2003; BASF and PPG owned and operated the Gurnee Facility during that period.

4.  Plaintiffs have not named BASF or PPG as defendants in their actions.

FILED DATE: 3/12/2024 8:55 PM   2023L000686

5.      Vantage has denied, and continues to deny, any liability to any of the Plaintiffs as a result of their alleged injuries. However, in the event that Vantage is determined to have any liability to any of the Plaintiffs from their exposure to EtO via operation of the Gurnee Facility, whether pursuant to judgment, settlement, or otherwise, Vantage is entitled to contribution from BASF and PPG for the *pro rata* portion of such liability that is attributable to any conduct that occurred at the Gurnee Facility prior to June 30, 2003.

6.      Vantage has a right of contribution arising under Illinois and Delaware law against BASF for the *pro rata* share of any liability to Plaintiffs for, at least, any injury to Plaintiffs that occurred during the time that BASF owned and operated the Gurnee Facility.

7.      Vantage has a right of contribution arising under Illinois and Pennsylvania law against PPG for the *pro rata* share of any liability to Plaintiffs for, at least, any injury to Plaintiffs that occurred during the time that BASF owned and operated the Gurnee Facility.

8.      If Vantage pays one-hundred percent of any liability to Plaintiffs, Vantage will pay more than its *pro rata* share of the common liability with BASF and PPG.

9.      Accordingly, Vantage seeks contribution for BASF's and PPG's *pro rata* shares of Plaintiffs' alleged injuries, if any.

## **PARTIES**

### A.      **Plaintiffs**

10.      Plaintiffs have alleged that they are individuals who lived or worked near the Gurnee Facility and have been diagnosed with health conditions as a result of alleged exposure to EtO emissions from the Gurnee Facility that occurred, at least in part, before June 30, 2003. The cases in which this Third-Party Complaint is filed are listed in Appendix A. Appendix A also includes the name of each Plaintiff and the date on which each Plaintiff alleges he or she began living or working in an area near the Gurnee Facility, thereby allegedly becoming exposed to and

FILED DATE: 3/12/2024 8:55 PM    2023L000686

harmed by EtO emitted from the Gurnee Facility. Appendix A is incorporated into this Paragraph 10 as if fully set forth herein.

**B.** **Defendant and Third-Party Plaintiff**

11.     Vantage is a Delaware corporation with its principal place of business at 4650 South Racine Avenue in Chicago, Illinois.  Vantage has operated the Gurnee Facility since acquiring it from BASF on June 30, 2003.

**C.** **Third-Party Defendants**

12.     BASF is a Delaware corporation with its principal place of business at 100 Park Avenue in Florham Park, New Jersey.  BASF owned and operated the Gurnee Facility from in or around 1998 until June 30, 2003.

13.     PPG is a Pennsylvania corporation with its principal place of business at One PPG Place in Pittsburg, Pennsylvania.  PPG owned and operated the Gurnee Facility from in or around 1987 until in or around 1998.

**JURISDICTION & VENUE**

14.     This Court has subject-matter jurisdiction over this Third-Party Complaint under ILCS Const. Art. 6, § 9 and 735 ILCS 5/2-406.

15.     This Court has personal jurisdiction over BASF because BASF has transacted business in Illinois through at least its ownership and operation of the Gurnee Facility, *see* 735 ILCS 5/2-209(a)(1), and because the allegedly tortious acts described in Plaintiffs' complaints occurred in Illinois, *see* 735 ILCS 5/2-209(a)(2).

16.     This Court has personal jurisdiction over PPG because PPG has transacted business in Illinois through at least its ownership and operation of the Gurnee Facility, *see* 735 ILCS 5/2-209(a)(1), and because the allegedly tortious acts described in Plaintiffs' complaints occurred in Illinois, *see* 735 ILCS 5/2-209(a)(2).

FILED DATE: 3/12/2024 8:55 PM   2023L000686

17.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101, *et seq.*, because BASF and PPG do business in Cook County, Illinois, and because a substantial part of the events giving rise to this Third-Party Complaint occurred in Cook County, Illinois.

## STATEMENT OF FACTS

18.     Since 2003, Vantage has owned and operated the Gurnee Facility, which manufactures ingredients for everyday products such as packaged foods, cosmetics, shampoo, and clothing by converting EtO into other useful compounds.

19.     Vantage acquired the Gurnee Facility from BASF on June 30, 2003.

20.     From in or around 1998 until in or around June 30, 2003, BASF owned and operated the Gurnee Facility.

21.     From in or around 1987 until in or around 1998, PPG owned and operated the Gurnee Facility following its acquisition of Mazer Chemicals, Inc., which had owned and operated the Facility previously.

22.     Prior to its acquisition of the Gurnee Facility on June 30, 2003, Vantage did not have any ownership interest in the Gurnee Facility nor any involvement in its operations.

23.     Plaintiffs allege that they have been diagnosed with certain health conditions as a result of exposure to EtO emissions from the Gurnee Facility. Plaintiffs further allege that at least some of their exposure to EtO emissions and/or the diagnosis of the health conditions allegedly connected to those EtO emissions occurred prior to the time that Vantage began its ownership and/or operation of the Gurnee Facility. Accordingly, to the extent that Vantage is determined to have any liability to Plaintiffs—which, Vantage does not concede, and specifically denies, it should or will—such liability would be a common liability shared with BASF and/or PPG with respect to at least any injury occurring during the time BASF and/or PPG owned and operated the Gurnee Facility.

FILED DATE: 3/12/2024 8:55 PM   2023L000686

24.     In the event that Vantage is determined to have any liability to any of the Plaintiffs, whether arising pursuant to judgment, settlement, or otherwise, for harm arising as a result of conduct at the Gurnee Facility that occurred before Vantage owned or operated the Gurnee Facility, Vantage will be required to pay more than its *pro rata* share of such recovery in the absence of contribution from BASF and/or PPG.

### Count I: Contribution (740 ILCS 100/2)
*(Against BASF)*

25.     Vantage incorporates and repeats the allegations in Paragraphs 1 through 24 above as if fully set forth herein.

26.     Under the Illinois Joint Tortfeasor Contribution Act, "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property . . . there is a right of contribution among them . . . ." 740 ILCS 100/2(a).

27.     Plaintiffs have brought tort claims against Vantage alleging negligence, willful and wanton conduct, public nuisance, and ultrahazardous activity/strict liability.

28.     To the extent that Vantage is determined to have any liability to Plaintiffs arising from conduct that pre-dated Vantage's acquisition of the Gurnee Facility, such conduct is attributable to BASF, which, if such liability was to be established, would render BASF a joint tortfeasor with Vantage under the Illinois Joint Tortfeasor Contribution Act.

29.     Any such liability would constitute a common liability under the Illinois Joint Tortfeasor Contribution Act.

30.     In the event that such liability was to be established, and in the event that Vantage was to be required to pay for one-hundred percent of any such liability, Vantage would pay more than its *pro rata* share of the common liability with BASF.

FILED DATE: 3/12/2024 8:55 PM    2023L000686

### Count II: Contribution (740 ILCS 100/2)
*(Against PPG)*

31.    Vantage incorporates and repeats the allegations in Paragraphs 1 through 24 above as if fully set forth herein.

32.    Under the Illinois Joint Tortfeasor Contribution Act, "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property . . . there is a right of contribution among them . . . ." 740 ILCS 100/2(a).

33.    Plaintiffs have brought tort claims against Vantage alleging negligence, willful and wanton conduct, public nuisance, and ultrahazardous activity/strict liability.

34.    To the extent that Vantage is determined to have any liability to Plaintiffs arising from conduct that pre-dated Vantage's acquisition of the Gurnee Facility, such conduct is attributable to PPG, which, if such liability was to be established, would render PPG a joint tortfeasor with Vantage under the Illinois Joint Tortfeasor Contribution Act.

35.    Any such liability would constitute a common liability under the Illinois Joint Tortfeasor Contribution Act.

36.    In the event that such liability was to be established, and in the event that Vantage was to be required to pay for one-hundred percent of any such liability, Vantage would pay more than its *pro rata* share of the common liability with PPG.

### Count III: Contribution (10 Del. Code Ann. §§ 6301 *et seq.*)
*(Against BASF)*

37.    Vantage incorporates and repeats the allegations in Paragraphs 1 through 24 above as if fully set forth herein.

38.    Under Delaware's Uniform Contribution Among Tortfeasors Law, "[t]he right of contribution exists among joint tortfeasors." 10 Del. Code Ann. § 6302(a).

FILED DATE: 3/12/2024 8:55 PM    2023L000686

39.     Plaintiffs have brought tort claims against Vantage alleging negligence, willful and wanton conduct, public nuisance, and ultrahazardous activity/strict liability.

40.     To the extent that Vantage is determined to have any liability to Plaintiffs arising from conduct that pre-dated Vantage's acquisition of the Gurnee Facility, such conduct is attributable to BASF, which, if such liability was to be established, would constitute a common liability and render BASF a joint tortfeasor with Vantage under Delaware's Uniform Contribution Among Tortfeasors Law.

41.     In the event that such liability was to be established, and in the event that Vantage was to be required to pay for one-hundred percent of any such liability, Vantage would pay more than its *pro rata* share of the common liability with BASF.

### Count IV: Contribution (42 Pa. Cons. Stat. § 8324)
(*Against PPG*)

42.     Vantage incorporates and repeats the allegations in Paragraphs 1 through 24 above as if fully set forth herein.

43.     Under Pennsylvania's Uniform Contribution Among Tort-feasors Act, "[t]he right of contribution exists among joint tort-feasors." 42 Pa. Cons. Stat. § 8324(a).

44.     Plaintiffs have brought tort claims against Vantage alleging negligence, willful and wanton conduct, public nuisance, and ultrahazardous activity/strict liability.

45.     To the extent that Vantage is determined to have any liability to Plaintiffs arising from conduct that pre-dated Vantage's acquisition of the Gurnee Facility, such conduct is attributable to PPG, which, if such liability was to be established, would constitute a common liability and render PPG a joint tortfeasor with Vantage under Pennsylvania's Uniform Contribution Among Tort-feasors Act.

46.     In the event that such liability was to be established, and in the event that Vantage was to be required to pay for one-hundred percent of any such liability, Vantage would pay more than its *pro rata* share of the common liability with PPG.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant and Third-Party Plaintiff Vantage respectfully requests that the Court:

47.     <u>As to Count I</u>, if Plaintiffs establish any liability as to Vantage, enter judgment for contribution in favor of Vantage and against BASF in an amount equal to the *pro rata* share of Plaintiffs' damages attributable to BASF and in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois; and

48.     <u>As to Count II</u>, if Plaintiffs establish any liability as to Vantage, enter judgment for contribution in favor of Vantage and against PPG in an amount equal to the *pro rata* share of Plaintiffs' damages attributable to PPG and in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois; and

49.     <u>As to Count III</u>, if Plaintiffs establish any liability as to Vantage, enter judgment for contribution in favor of Vantage and against BASF in an amount equal to the *pro rata* share of Plaintiffs' damages attributable to BASF in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois; and

50.     <u>As to Count IV</u>, if Plaintiffs establish any liability as to Vantage, enter judgment for contribution in favor of Vantage and against PPG in an amount equal to the *pro rata* share of Plaintiffs' damages attributable to PPG in excess of the minimum amount required for jurisdiction in the Law Division of the Circuit Court of Cook County, Illinois; and

51.     Award attorneys' fees and costs, to the extent provided by law; and

52.     Award such other relief as the Court deems just and proper.

FILED DATE: 3/12/2024 8:55 PM   2023L000686

FILED DATE: 3/12/2024 8:55 PM   2023L000686

## JURY DEMAND

Vantage demands a jury for all issues so triable.


Dated: March 12, 2024                           Respectfully submitted,

                                                */s/ Jeffrey J. Bushofsky__*
                                                Jeffrey J. Bushofsky
                                                Nicholas Berg
                                                **ROPES & GRAY LLP**
                                                191 North Wacker Drive, 32nd Floor
                                                Chicago, Illinois 60606
                                                T: 312.845.1200
                                                F: 312.845.5522
                                                Jeffrey.Bushofsky@ropesgray.com
                                                Nicholas.Berg@ropesgray.com

                                                David B. Hennes (*pro hac vice forthcoming*)
                                                **ROPES & GRAY LLP**
                                                1211 Avenue of the Americas
                                                New York, New York 10036
                                                T: 212.596.9000
                                                F: 212.596.9090
                                                David.Hennes@ropesgray.com

                                                *Attorneys for Defendant / Third-Party Plaintiff*
                                                *Vantage Specialty Chemicals, Inc.*

                                                Firm ID: 47644

FILED DATE: 3/12/2024 8:55 PM    2023L000686

**APPENDIX A TO THIRD-PARTY COMPLAINT OF
DEFENDANT VANTAGE SPECIALTY CHEMICALS, INC.
<u>AGAINST BASF CORPORATION AND PPG INDUSTRIES, INC.</u>**

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| Abell, James | 2024L001467 | 1994 | Compl. ¶ 76 |
| Adams, Susan | 2023L009454 | 1992 | Compl. ¶ 77 |
| Akins, Carol | 2023L009455 | 1949 | Compl. ¶ 77 |
| Alcay, Blanca | 2023L009562 | 2002 | Compl. ¶ 77 |
| Anderson, Martin | 2023L009586 | 1987 | Compl. ¶ 78 |
| Arive, Denise | 2023L009641 | 1952 | Compl. ¶ 77 |
| Arroyo, Vanessa | 2022L008582 | 1989 | Plaintiff Fact Sheet ("PFS") p. 14 |
| Auth, Stephen | 2023L009950 | 1993 | Compl. ¶ 77 |
| Baartz, Dawn | 2023L009456 | 1978 | Compl. ¶ 77 |
| Baker, Curtis | 2023L012048 | 1995 | Compl. ¶ 77 |
| Baker, Jennifer | 2022L008415 | 1999 | Compl. ¶ 68 |
| Barber, Dawn | 2023L009563 | 2000 | Compl. ¶ 77 |
| Barnabee, Elissa | 2020L011571 | 2000 | Compl. ¶ 59 |
| Bennett, Patty | 2023L000684 | 1992 | Compl. ¶ 67 |
| Bertucci, Tammy | 2023L001372 | 1996 | Compl. ¶ 68 |
| Bolden, Hallie | 2023L010329 | 1991 | Compl. ¶ 77 |

---

[1] Where the plaintiff has brought the relevant action as a representative of another individual, the date in this column corresponds to the date that the individual on whose behalf the action is brought alleges to have begun living or working in the relevant area.

FILED DATE: 3/12/2024 8:55 PM    2023L000686

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| Boyer, Pamela | 2022L008646 | 1979 | Compl. ¶ 67 |
| Brebner, Dennis | 2019L012798 | 1953 | Compl. ¶ 52 |
| Brewton, Marcus | 2023L009464 | 1981 | Compl. ¶ 77 |
| Brincks, Heather | 2022L008587 | 1995 | Compl. ¶ 68 |
| Brooks, Claude | 2023L009757 | 2002 | Compl. ¶ 77 |
| Brown, Irene | 2023L009463 | 1999 | Compl. ¶ 77 |
| Brown, Kathy | 2023L009587 | 1982 | Compl. ¶ 77 |
| Bruger, Stacy | 2022L009380 | 1991 | Compl. ¶ 68 |
| Bunnell, Paul Richard | 2023L009566 | 1974 | Compl. ¶ 67 |
| Butera, Tom | 2022L008619 | 1987 | Compl. ¶ 68 |
| Carney, Frank | 2023L009460 | 2003 | Compl. ¶ 77 |
| Carrillo, Amy | 2023L010355 | 1986 | Compl. ¶ 80 |
| Castanos, Marjolein | 2023L012667 | 1985 | Compl. ¶ 75 |
| Castillo, Eddie | 2024L001582 | 1984 | Compl. ¶ 79 |
| Castro, Daniel | 2023L009754 | 2001 | Compl. ¶ 77 |
| Chapman, Levon | 2023L009468 | 1992 | Compl. ¶ 77 |
| Chase, Steven | 2023L009573 | 1987 | Compl. ¶ 78 |
| Christian, Michael | 2022L008649 | 1981 | Compl. ¶ 68 |
| Clayborne, Loretta | 2024L001228 | 1978 | Compl. ¶ 77 |
| Cokley, Lucille | 2023L009467 | 1990 | Compl. ¶ 77 |
| Colin, Aurora | 2023L009559 | 1991 | Compl. ¶ 77 |

FILED DATE: 3/12/2024 8:55 PM    2023L000686

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| Connor, Shawn | 2024L001495 | 1991 | Compl. ¶ 78 |
| Cooper, James | 2023L012971 | 1994 | Compl. ¶ 80 |
| Copeland, Melanie | 2022L008624 | 1962 | Compl. ¶ 68 |
| Corder, Susan | 2022L008642 | 1962 | Compl. ¶ 68 |
| Cornell, Francis | 2024L000256 | 1955 | Compl. ¶ 76 |
| Coughlin, Dan Coughlin, Jo Anne | 2023L009474 | 1988 1966 | Compl. ¶ 80 Compl. ¶ 80 |
| Counts, Diane | 2022L008592 | 1960 | Compl. ¶ 68 |
| Cress, Dennis | 2022L008600 | 1982 | Compl. ¶ 68 |
| Cruz Jr., Miguel | 2023L009560 | 1984 | Compl. ¶ 77 |
| Czerwinski, Diane | 2023L010373 | 1998 | Compl. ¶ 77 |
| Daniels, Deborah | 2024L001525 | 1994 | Compl. ¶ 77 |
| Danyo, Robin | 2023L010356 | 1986 | Compl. ¶ 77 |
| DeVost, Melvin | 2024L001461 | 1981 | Compl. ¶ 77 |
| Dixon, Norman | 2023L009472 | 1993 | Compl. ¶ 77 |
| Domanski, Peter | 2024L001462 | 1992 | Compl. ¶ 81 |
| Draper, Andrea | 2024L002015 | 1969 | Compl. ¶ 77 |
| Draper, Trudy | 2023L001641 | 1968 | Compl. ¶ 68 |
| Durling, Darlene | 2022L008578 | 1990 | Compl. ¶ 68 |
| Ennis, John | 2023L012177 | 1996 | Compl. ¶ 77 |
| Farrell, Talona | 2023L009453 | 2002 | Compl. ¶ 77 |
| Figueroa, Grace | 2024L001967 | 1998 | Compl. ¶ 75 |

FILED DATE: 3/12/2024 8:55 PM    2023L000686

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| Fitzgerald, Nancy | 2023L009592 | 1996 | Compl. ¶ 77 |
| Flament, Christopher | 2023L009569 | 1974 | Compl. ¶ 67 |
| Florkow, Glenn | 2023L009647 | 1990 | Compl. ¶ 77 |
| Flowers, Linda | 2023L009479 | 1961 | Compl. ¶ 77 |
| Fortunato, Joseph | 2023L012051 | 2000 | Compl. ¶ 77 |
| Foster, Ilene | 2023L012039 | 1992 | Compl. ¶ 77 |
| Frantz, Amy | 2022L008656 | 2002 | Compl. ¶ 68 |
| Gaile, Tammy | 2022L008643 | 1981 | Compl. ¶ 68 |
| Gallas, Michele | 2024L000255 | 1995 | Compl. ¶ 77 |
| Garcia, Connie | 2022L008577 | 1961 | Compl. ¶ 66 |
| Garcia, Patricia | 2023L010069 | 1976 | Compl. ¶ 77 |
| Garkova, Mima | 2023L009752 | 1991 | Compl. ¶ 77 |
| Gayden, Schereka | 2023L009469 | 1979 | Compl. ¶ 80 |
| Gedde, Jon | 2023L000898 | 1997 | Compl. ¶ 68 |
| Gentes, William | 2023L011677 | 1994 | Compl. ¶ 77 |
| Gerberi, Elizabeth | 2022L008584 | 1993 | Compl. ¶ 68 |
| Goldman, Martin | 2023L009475 | 1979 | Compl. ¶ 77 |
| Goldsby, Jeanetta | 2023L010145 | 1971 | Compl. ¶ 77 |
| Gonyo, Rose | 2022L008571 | 1958 | Compl. ¶ 68 |
| Gorczynski, Boleslaw | 2023L009580 | 1987 | Compl. ¶ 77 |
| Green, James | 2023L009658 | 1984 | Compl. ¶ 77 |

FILED DATE: 3/12/2024 8:55 PM    2023L000686

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| Griffin, Keith | 2023L010093 | 1969 | Compl. ¶ 80 |
| Griffiths, Bonnie | 2023L009949 | 1979 | Compl. ¶ 77 |
| Grove, Gary | 2023L009483 | 1982 | Compl. ¶ 77 |
| Gunter, Raymond | 2022L008581 | 2000 | Compl. ¶ 68 |
| Hacke, Rebecca | 2023L008152 | 1962 | Compl. ¶ 68 |
| Hamann, Jori | 2021L007721 | 1985 | Compl. ¶ 67 |
| Hamann, Lois | 2023L010826 | 1961 | Compl. ¶ 77 |
| Harkim, Valerie | 2023L009477 | 1987 | Compl. ¶ 77 |
| Hayden, Harmon | 2022L008593 | 1976 | PFS pp. 14, 16 |
| Hedlund, Ronald | 2023L010160 | 1998 | Compl. ¶ 77 |
| Heibner, Brian | 2023L010328 | 1969 | Compl. ¶ 77 |
| Henton, Nikki | 2023L005926 | 1961 | Compl. ¶ 70 |
| Herchenbach, Donald | 2023L009758 | 1982 | Compl. ¶ 77 |
| Hill, Christine | 2023L009648 | 1986 | Compl. ¶ 77 |
| Hobbs, Tamika | 2022L008713 | 1960 | Compl. ¶ 66 |
| Hogan, Crystal | 2023L010094 | 1997 | Compl. ¶ 77 |
| Horn, Christine | 2022L008630 | 2001 | Compl. ¶ 68 |
| Hornung, Marion | 2024L001577 | 1994 | Compl. ¶ 80 |
| Howe-Orusa, Vicky | 2022L008596 | 1998 | Compl. ¶ 68 |
| Humo, Barry | 2023L012053 | 1972 | Compl. ¶ 77 |
| Hutchison, Elizabeth | 2024L001578 | 1965 | Compl. ¶ 77 |
| Incardona, Ann | 2023L010833 | 1995 | Compl. ¶ 77 |

FILED DATE: 3/12/2024 8:55 PM    2023L000686

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| Innes, Peggy Ann | 2022L008569 | 1972 | Compl. ¶ 68 |
| Jackson, Norman | 2022L008717 | 1949 | Compl. ¶ 68 |
| Jacobsen, Christa | 2023L009755 | 1983 | Compl. ¶ 80 |
| Jasso, Melissa | 2023L001650 | 2003 | PFS pp. 2, 13 |
| Jeffries, Pamela | 2023L009478 | 1971 | Compl. ¶ 77 |
| Johnson, Sarah | 2023L009574 | 1998 | Compl. ¶ 77 |
| Jones, Ronald | 2022L008591 | 1988 | Compl. ¶ 68 |
| Joseph, Sunny | 2022L008609 | 1997 | Compl. ¶ 68 |
| Jovanovich, Danijla | 2020L009070 | 2000 | Compl. ¶ 52 |
| Jurek, Jennifer | 2022L008597 | 1990 | Compl. ¶ 68 |
| Kachurick, Michael | 2024L001586 | 1973 | Compl. ¶ 77 |
| Kallieris, Robert | 2023L002119 | Unclear[2] | Compl. ¶ 68 |
| Keller, Amy | 2024L000088 | 1992 | Compl. ¶ 78 |
| Kennedy, Lona | 2023L008149 | 2001 | Compl. ¶ 68 |
| Kennedy, Tasha | 2024L002125 | 1977 | Compl. ¶ 80 |
| Kimble, Mary | 2023L010827 | 1990 | Compl. ¶ 77 |
| Knuth, Alisa | 2022L008657 | Early 1980s | Compl. ¶ 68 |
| Koch, Kathleen | 2023L000686 | 1984 | PFS p. 15 |
| Koehler, Alison | 2022L008615 | 1999 | Compl. ¶ 68 |
| Kraemer, Theresa | 2022L008608 | 1987 | Compl. ¶ 68 |

[2] Plaintiff Robert Kallieris alleges in his complaint that he "has been a resident of Lake County his entire life"; the exact year is unclear.  Kallieris Compl. ¶ 68, Case No. 2023 L 002119 (Mar. 1, 2023).

FILED DATE: 3/12/2024 8:55 PM    2023L000686

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| Lagunas, Alexander | 2023L010146 | 1993 | Compl. ¶ 77 |
| Lahey, Elidia | 2023L010147 | 1973 | Compl. ¶ 77 |
| Landgrebe, Jon | 2023L009951 | 1999 | Compl. ¶ 77 |
| Laracuente, Juan | 2023L009565 | 1987 | Compl. ¶ 77 |
| Lathan, Gregory | 2023L009584 | 1988 | Compl. ¶ 77 |
| Lefevers, Gayle | 2023L012124 | 1992 | Compl. ¶ 77 |
| Lempa, Robert | 2023L012821 | 1986 | Compl. ¶ 77 |
| Lindberg, Barbara | 2022L006655 | 2001 | Compl. ¶ 69 |
| Lipczynski, Darlene | 2023L009571 | 1999 | Compl. ¶ 77 |
| Lis, Preston | 2023L002182 | 2002 | Compl. ¶ 68 |
| LoBue, Mary | 2023L009974 | 1984 | Compl. ¶ 77 |
| Locher, Mary | 2023L010144 | 1997 | Compl. ¶ 67 |
| Luka, Mary Grace | 2024L001723 | 1986 | Compl. ¶ 77 |
| MacDonald, Kelly | 2023L012290 | 1991 | Compl. ¶ 80 |
| Mack, Susan | 2023L002203 | Unclear[3] | Compl. ¶ 65 |
| Margolis, Colleen | 2023L009699 | 1984 | Compl. ¶ 80 |
| Martin, James | 2024L001526 | 1961 | Compl. ¶ 77 |
| May, Juliann | 2024L001172 | 1966 | Compl. ¶ 77 |
| Mayberry, James | 2023L002118 | 1973 | Compl. ¶ 70 |
| McClintock, Dennis | 2023L009756 | 1999 | Compl. ¶ 77 |

[3] Plaintiff Susan Mack alleges in her complaint that she "has lived in Lake County her entire life"; the exact year is unclear. Mack Compl. ¶ 65, Case No. 2023 L 002203 (Mar. 3, 2023).

FILED DATE: 3/12/2024 8:55 PM    2023L000686

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| McFeggan, Cara | 2023L009485 | 1966 | Compl. ¶ 77 |
| McRae, Jeana | 2023L009486 | 2002 | Compl. ¶ 77 |
| Meincke, Josephine | 2023L011678 | 1980 | Compl. ¶ 77 |
| Merrill, Hope | 2023L009575 | 1986 | Compl. ¶ 77 |
| Meyers, Therese | 2023L012178 | 1987 | Compl. ¶ 76 |
| Miller, Alex | 2021L009515 | 2002 | Compl. ¶ 69 |
| Miller, Don | 2022L008601 | 1979 | Compl. ¶ 68 |
| Miller, Lillie | 2023L009702 | 1997 | Compl. ¶ 77 |
| Mistele, Barbara | 2023L010452 | 1983 | Compl. ¶ 80 |
| Moosa, Ibrahim | 2023L009753 | 2002 | Compl. ¶ 77 |
| Morales Ramirez, Margarita | 2023L009848 | 2000 | Compl. ¶ 77 |
| Moreno, Maria | 2024L001173 | 1997 | Compl. ¶ 77 |
| Myers Jr., Louie | 2024L001229 | 1979 | Compl. ¶ 80 |
| Nicketakis, Nicholas | 2024L002079 | 1976 | Compl. ¶ 77 |
| Nieves, Carmen | 2022L008632 | 1979 | Compl. ¶ 68 |
| Nikolich, Marina | 2023L008151 | 1972 | Compl. ¶ 68 |
| Nudelman, Paul | 2022L008606 | 1994 | Compl. ¶ 68 |
| Ochoa, Fabian | 2023L009490 | 1956 | Compl. ¶ 77 |
| Olk, Tracie | 2022L008616 | 1999 | Compl. ¶ 68 |
| Parsons, Doretta | 2023L009579 | 1979 | Compl. ¶ 77 |
| Pate, Susan | 2022L008594 | 1998 | Compl. ¶ 66 |

FILED DATE: 3/12/2024 8:55 PM    2023L000686

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| Payne, Dean | 2022L008602 | 1998 | Compl. ¶ 68 |
| Pennella, DeAnn | 2023L009570 | 1965 | Compl. ¶ 77 |
| Pereira, Marty | 2023L009583 | 1986 | Compl. ¶ 77 |
| Perez, Irma | 2022L008612 | 1997 | Compl. ¶ 68 |
| Pesic, Dragica | 2023L012288 | 1983 | Compl. ¶ 77 |
| Peterson-Cooper, Jodi | 2024L000708 | 1997 | Compl. ¶ 80 |
| Petrovic, Jacqueline | 2023L002112 | 1974 | Compl. ¶ 70 |
| Phelps, Hattie | 2023L009581 | 1975 | Compl. ¶ 77 |
| Phelps, Johnie | 2023L009493 | 1976 | Compl. ¶ 77 |
| Plencer, Cheryl | 2022L008559 | 1998 | Compl. ¶ 66 |
| Pohlman, Dawne | 2024L001527 | 1993 | Compl. ¶ 80 |
| Polson, Linda | 2023L009491 | 1988 | Compl. ¶ 77 |
| Poole, Rickey | 2023L009488 | 1983 | Compl. ¶ 77 |
| Pope, Angelo | 2023L009462 | 1995 | Compl. ¶ 77 |
| Porter, Dena | 2023L009564 | 2002 | Compl. ¶ 77 |
| Ramirez, Angela | 2022L008611 | 2002 | Compl. ¶ 68 |
| Raupp, Julie | 2023L007590 | 1988 | Compl. ¶ 68 |
| Ray, Donna | 2023L009482 | 1985 | Compl. ¶ 77 |
| Rewis, Nicholas | 2022L008568 | 1993 | Compl. ¶ 68 |
| Rhodes, Pamela | 2023L009577 | 1978 | Compl. ¶ 77 |
| Rice, Wallace | 2020L009015 | 1998 | Compl. ¶ 97 |

FILED DATE: 3/12/2024 8:55 PM    2023L000686

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| Richter, Erin | 2022L008604 | 1999 | Compl. ¶ 68 |
| Rivera, Ana | 2022L008647 | 1999 | Compl. ¶ 68 |
| Rodriguez, Jaquelyn | 2023L012285 | 2002 | Compl. ¶ 77 |
| Rohr, Gretchen | 2022L008586 | 1990 | Compl. ¶ 68 |
| Rossi, Kathleen | 2023L009694 | 1962 | Compl. ¶ 77 |
| Rostan, Debra | 2023L013098 | 1977 | Compl. ¶ 84 |
| Rozek, Patricia | 2022L008678 | 1986 | Compl. ¶ 67 |
| Sambrano, Learvin | 2023L012287 | 1996 | Compl. ¶ 77 |
| Sanders, Lyn | 2023L009590 | 1995 | Compl. ¶ 77 |
| Sanfelippo, Michael | 2023L012501 | 1995 | Compl. ¶ 77 |
| Santowski, Sara | 2023L010834 | 1994 | Compl. ¶ 77 |
| Saturno, Michelle | 2023L009487 | 1976 | Compl. ¶ 77 |
| Scheffler, Don | 2023L009489 | 1980 | Compl. ¶ 77 |
| Schmitz, Todd | 2023L010838 | 1967 | Compl. ¶ 77 |
| Schrader, Jeanne | 2023L012768 | 1988 | Compl. ¶ 79 |
| Schwalbach, Leonard | 2023L009561 | 1957 | Compl. ¶ 77 |
| Scott, Deborah | 2022L008607 | 1972 | Compl. ¶ 68 |
| Sefton, Abbey | 2023L009759 | 1984 | Compl. ¶ 67 |
| Shinners, Kathy | 2023L012822 | 1979 | Compl. ¶ 81 |
| Shulman, Benjamin | 2023L009496 | 2000 | Compl. ¶ 77 |
| Silva, Sylvia | 2024L001580 | 1979 | Compl. ¶ 84 |
| Simmons, Gary | 2023L012978 | 1954 | Compl. ¶ 77 |

FILED DATE: 3/12/2024 8:55 PM   2023L000686

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| Simpson, Shirley | 2023L009582 | 1968 | Compl. ¶ 77 |
| Sinkovitz, Daniel | 2023L009498 | 1994 | Compl. ¶ 77 |
| Sivia, Kathleen | 2023L009503 | 1962 | Compl. ¶ 77 |
| Skaramagos, Christine | 2024L000087 | 1987 | Compl. ¶ 77 |
| Slotowski, Christine | 2023L010354 | 1969 | Compl. ¶ 76 |
| Sokal, Tom | 2022L008567 | 1987 | Compl. ¶ 68 |
| Spadaro, John | 2023L009508 | 1981 | Compl. ¶ 77 |
| Spiegle, Nina | 2023L012805 | 1971 | Compl. ¶ 81 |
| Springs, Aljean | 2023L009511 | 1973 | Compl. ¶ 77 |
| Stewart, Jasmine | 2022L008688 | 2002 | PFS pp. 11, 12 |
| Stuebe, William | 2023L009572 | 1996 | Compl. ¶ 77 |
| Sullivan, Marilynn | 2022L008570 | 1999 | Compl. ¶ 68 |
| Sullivan, Susan | 2022L008572 | 1979 | Compl. ¶ 68 |
| Swanson, Julie Ann | 2023L009507 | 1965 | Compl. ¶ 77 |
| Swoboda, Elisabeth | 2023L001646 | 1970 | Compl. ¶ 68 |
| Taylor, Alan | 2023L009596 | 1986 | Compl. ¶ 77 |
| Tellez, Esperanza | 2023L012614 | 1977 | Compl. ¶ 76 |
| Temkin, Carol | 2023L010828 | 1979 | Compl. ¶ 77 |
| Thompson, Randell | 2023L002124 | 2002 | PFS p. 4 |
| Torres, Carmelita | 2023L009653 | 1993 | Compl. ¶ 77 |
| Torres, Lazarus | 2020L009069 | 2000 | Compl. ¶ 52 |

FILED DATE: 3/12/2024 8:55 PM   2023L000686

| Plaintiff | Case Number | Year Plaintiff[1] Began Living or Working in Claimed Exposure Area | Location of Allegation Regarding Potential Pre-2003 Exposure |
|---|---|---|---|
| Trigsted, Kimberly | 2023L003427 | 1982 | Compl. ¶ 70 |
| Troy, Michael | 2023L002199 | 2001 | Compl. ¶ 69 |
| Vaitkus, Paul | 2024L001175 | 1998 | Compl. ¶ 77 |
| Vasquez, Kimberly | 2023L009509 | 1992 | Compl. ¶ 77 |
| Vice, Mark | 2023L009704 | 1983 | Compl. ¶ 77 |
| Vogler, Erika | 2024L001422 | 1977 | Compl. ¶ 77 |
| Voit, Bernard | 2024L001529 | 1989 | Compl. ¶ 80 |
| Wallace Sr., Michael | 2023L012766 | 1958 | Compl. ¶ 75 |
| Walsh, Laureen | 2023L000899 | 1997 | Compl. ¶ 68 |
| Weber, Adam | 2023L009504 | 1975 | Compl. ¶ 77 |
| Welch, Kelly | 2023L009952 | 1976 | Compl. ¶ 77 |
| Wells, Ann | 2022L008623 | 1990 | Compl. ¶ 68 |
| Werner, Cathy | 2023L009500 | 1962 | Compl. ¶ 77 |
| Williams, Billy | 2023L009499 | 1992 | Compl. ¶ 77 |
| Wilson, Dave | 2022L008613 | 2002 | Compl. ¶ 68 |
| Wiltberger II, Jon | 2023L010003 | 1960 | Compl. ¶ 69 |
| Wilvert, Laura Kathleen | 2022L008661 | 1987 | Compl. ¶ 66 |
| Wynn, William | 2023L009494 | 1974 | Compl. ¶ 77 |
| Zeck, Brenda | 2023L012291 | 1993 | Compl. ¶ 77 |
| Zysk, Esther | 2022L004891 | 1996 | Compl. ¶ 69 |

FILED DATE: 3/12/2024 8:55 PM   2023L000686

### CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March, 2024, copies of the **foregoing Third-Party**

**Complaint** were served on counsel of record by electronic mail, at the following addresses:

Jay Edelson
Benjamin H. Richman
Angela Reilly
Amy Hausmann
Hannah Hilligoss
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
jedelson@edelson.com
brichman@edelson.com
areilly@edelson.com
abhausmann@edelson.com
hhilligoss@edelson.com

Brandt Silver-Korn
Todd Logan
Lauren Blazing
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
bsilverkorn@edelson.com
tlogan@edelson.com
lblazing@edelson.com

Gregory Dovel
Julien Adams
Alexander Erwig
DOVEL & LUNER
201 Santa Monica Boulevard, Suite 600
Santa Monica, CA 90401
greg@dovel.com
julien@dovel.com
alexander@dovel.com

Kenneth T. Lumb
Corboy & Demetrio, P.C.
33 North Dearborn Street, 21st Floor Chicago,
Illinois 60602
(312) 346-3191
ccfiling@corboydemetrio.com
gus@corboydemetrio.com

Daniel Kotin
Shawn Kasserman
Loren Leogorreta
Tomasik Kotin & Kasserman LLC
161 N. Clark Street, Suite 3050
Chicago, IL 60601
dan@tkklaw.com
shawn@tkklaw.com
loren@tkklaw.com

Antonio M. Romanucci
Bryce T. Hensley
ROMANUCCI & BLANDIN, LLC
321 N. Clark St., Ste. 900
Chicago, IL 60654
(312) 458-1000
(312) 458-1004
aromanucci@rblaw.net
bhensley@rblaw.net

Steven A. Hart
Brian H. Eldridge
John S. Marrese
HART MCLAUGHLIN & ELDRIDGE,
LLC 22 W. Washington St., Ste. 1600
Chicago, IL 60602
(312) 955-0545
(312) 971-9243
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com

Anthony M. Klytta
1645 Birchwood Ave.
Des Plaines, IL 60016
klyttaj@gmail.com
Tel: 773-727-2225

FILED DATE: 3/12/2024 8:55 PM    2023L000686

Paula S. Quist
Erica E. Duff
JONES DAY
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
pquist@jonesday.com
eduff@jonesday.com

*Counsel for Isomedix Operations, Inc.*

H. Patrick Morris
David F. Fanning
Danielle Austriaco
Johnson & Bell, Ltd.
33 W Monroe Street - Suite 2700
Chicago, Illinois 60603
morrisp@jbltd.com
fanningd@jbltd.com
austriacod@jbltd.com

Robert P. Scott
Marquel S. Jordan
Blank Rome LLP
717 Texas Avenue
Suite 1400
Houston, Texas 77002
bob.scott@blankrome.com
marquel.jordan@blankrome.com

*Counsel for Medline Industries Inc.*

*Counsel for Plaintiffs*
Charles M. Gering
Anthony Pesce
Jeremy Kogan
Pedersen & Houpt, P.C.
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
cgering@pedersenhoupt.com
apesce@pedersenhoupt.com
jkogan@pedersenhoupt.com

*Counsel for Cosmed Group Inc.*

Brenton Rogers
Bradley Weidenhammer
Brendan Ryan
Jenna Stupar
Meghan Guzaitis
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000
brenton.rogers@kirkland.com
bradley.weidenhammer@kirkland.com
brendan.ryan@kirkland.com
jenna.stupar@kirkland.com
meghan.guzaitis@kirkland.com

*Counsel for Vantage Specialty Chemicals, Inc.*

Respectfully submitted,

*/s/ Jeffrey J. Bushofsky*
Jeffrey J. Bushofsky
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522

*Attorney for Defendant / Third-Party Plaintiff Vantage Specialty Chemicals, Inc.*